UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088-WGY

JULIANNE MARIE EVANS,

    Plaintiff,

vs.

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,

    Defendant.
_____/

**NOTICE OF DEFENSE
COUNSEL'S WILLFUL NON-
COMPLIANCE WITH THE
COURT'S SCHEDULING
ORDER and REQUEST FOR
IMPOSITION OF SANCTIONS**

Because defense counsel willfully failed to confer with plaintiff's counsel, as required by the scheduling order (dated February, 3, 2005), which made it quite clear that compliance with the applicable rules is "to be of the utmost importance", sanctions should be imposed.

<u>Basis for Imposition of Sanctions</u>

Upon receipt of the Notice of Scheduling Order, we faxed a letter to defendant's lawyer on February 8, a copy of which is attached hereto as Exhibit "A", requesting that a conference be scheduled so as to timely comply (by Monday, February 14) with the court's order ["We need to confer to comply with the court's scheduling order on or before this coming Monday (February 14)."]. A proposed agenda was laid out in the letter ["In our earlier discussions you never mentioned either the Mass. charitable

immunity or section 183 limitation of liability defenses. I think it would be helpful if we talk about them now when we discuss settlement. And if we can't find common settlement ground, it looks like these will be the focus of our discovery efforts, so either way, we should probably be prepared to talk about them and a discovery schedule when we do confer."]. There was no response to the letter. Repeated phone calls and messages from Steven Miller to Thomas Muzyka and Terence Kenneally's office trying to schedule a conference were ignored.

    Not until February 23 did Thomas Muzyka finally call Steven Miller. However, instead of having or agreeing to have a meaningful dialogue, as contemplated by both the letter and spirit of the rules and the order, Mr. Muzyka refused to do so. Instead, he said he would forward a proposed scheduling statement to Miller and for him to provide dates. Steven Miller reminded Mr. Muzyka, again, of the order and rules and that a conference was necessary before dates could be intelligently discussed.

    After lunch that day, undersigned counsel faxed Mr. Muzyka a letter, a copy of which is attached hereto as Exhibit "B", requesting, yet again, that the order be complied with and asking that he schedule a conference ["We need to actually confer to comply with the letter and spirit of the order. Please let me know your availability to do that. How about tomorrow morning at 10:00?"]. There has been no response by Mr. Muzyka or Mr. Kenneally. However, at about 4:30 that afternoon, Terence Kenneally faxed a note to Steven Miller with the proposed scheduling statement Mr. Muzyka mentioned that morning. A copy of the note and draft statement is attached hereto as Exhibit "C" (he completely ignored the requests for a conference).

The next day, undersigned counsel faxed a letter to Mr. Kenneally, a copy of which is attached hereto and marked Exhibit "D", complaining that he and Mr. Muzyka continue to refuse to comply with Judge Young's order, among other things. Additionally, an informal "cooperative" discovery request was included in the letter, pursuant to L.R. 26.1. The significance of that discovery and the speed with which defendant provides it will have a significant impact on scheduling. Immediate production of the information will greatly assist plaintiff and will govern <u>whether any formal discovery will be needed and whether the case will be trial ready in 60 days</u>, as plaintiff believes, or next year, as defendant suggests. With cooperation from defense counsel, or, more likely, assistance from the court in ordering "cooperation", we will be in a position to intelligently propose a discovery/trial schedule. Consideration of the nature of the case, what the parties already know and what formal discovery they will need, if any, to be ready to try the case, will help the court in fashioning a sanctions order (which really isn't a sanction at all, but more like a judicial nudge).

## Nature of the Case

Plaintiff rented a house on Nantucket for a summer vacation. Once there, she responded to an ad in a local Nantucket paper placed by defendant, Nantucket Sailing Club, offering suppertime beachfront sails. She went to Jettie's Beach and on a sail. During the sail the boat she was in crashed into another of the sailing club's boats and the boom of the other boat smashed into the back of her head/neck causing her to be seriously injured. Both boats were captained by employees of the defendant, Irish nationals who, upon information and belief, were college students from Ireland working summer jobs at the club (this took place in July, 2002). Plaintiff knows the boys only by

their first names, to wit: Ronan and Darragh (there may have been another employee in the other boat whose name plaintiff does not recall).

Plaintiff suffered injuries to her neck and back. Additionally, the trauma caused the permanent loss of her sense of both taste and smell.

## Plaintiff's Cooperation

Plaintiff has cooperated fully with the defendant's insurance company, St. Paul, and its lawyers, Clinton & Muzyka, the attorneys appointed to represent the defendant sailing club. That cooperation has included plaintiff making herself available to the insurance company's investigator and giving a sworn statement. It also included plaintiff voluntarily submitting herself to be examined by the insurance company's neurologist, Paul Flatten, M.D., in Fort Lauderdale, Florida in June, 2003. Dr. Patten's opinion confirmed the permanent loss of Ms. Evans' sense of taste and smell, inter alia. Thereafter, St. Paul, unsatisfied with its own doctor's evaluation, requested that Ms. Evans be examined by Uconn's Taste and Smell Center. Ms. Evans agreed and voluntarily flew from her south Florida home to Connecticut to be examined by the UConn Medical Group's Taste and Smell Center doctors. On October 29, 2004 UConn's Dr. Norman M. Mann, MD, wrote an opinion letter confirming the diagnosis and that "[the findings] are no doubt due to the head injury that the patient sustained." A copy of the letter is attached hereto and marked Exhibit "E". Plaintiff has cooperated fully and refused the insurance company and its lawyers nothing in their investigation and evaluation of the case. All of plaintiff's medical records have been made available to St. Paul and the Muzyka law firm. Further, Ms. Evans has executed and provided medical authorization release forms to them should any additional records be desired.

## The Reality

St. Paul and its lawyers are faced with an accident caused by its insured's employees, which occurred during the course of their employment, during a sailing event it's insured sponsored and advertised, which its own hand-picked doctors believe caused permanent loss of taste and smell in plaintiff.  On that backdrop plaintiff has demanded the policy limits of $1 million to settle.  Nothing has been offered.  Mr. Kenneally suggested to Steven Miller that an offer would be forthcoming as soon as certain forms were filled out by him and forwarded to the insurance carrier for assessment.  The Irish employees were not named as defendants since they were not necessary to a settlement, which seemed imminent, and there did not appear to be any reason to go to the trouble or additional expense (at no time were the statutory limitations mentioned before suit), until now.

Only two of the affirmative defenses raised merit discussion, to wit:  (1) the Mass. charitable organizations statutory $20,000 limitation and (2) the admiralty statutory limitation of liability benefiting ship owners and capping their liability at the value of their vessel; **however, neither of those affects the liability of defendant's employees. So, if the $1 million policy covers the negligent actions of defendant's employees, the limitations, as a practical matter, simply don't matter.**  And, since St. Paul has acted in bad faith by failing to make any settlement offers, an excess judgment, which we will be seeking, will ultimately be paid by St. Paul (and this gives defendant the benefit of the doubt on whether it can prove the defenses, which it may or may not be able to do, or whether, as a practical matter, plaintiff even cares).

In order for plaintiff to go forward at this point, given the two aforedescribed affirmative defenses, we need to add the Irish employees, and in order for us to do that we need the cooperation of the defendant or help from the court. **We need to know the names and whereabouts of the Irish employees**.

This case can be about gamesmanship, or it can be about getting to the nub of it and getting it settled or tried. We believe that there is a very good chance that not much of anything will be needed, by either side, in order to be trial ready other than amending the complaint to add the Irish employees and getting them served, assuming that the $1 million policy covers the negligent acts of these employees (which is why we must see the policy now). So, merely filling in the blanks on Mr. Muzyka's proposed scheduling form, as he wants, is really putting the cart before the horse. The rules recognize this, which is why before schedules are discussed the lawyers must confer and cooperate. Ironically, Mr. Muzyka's form acknowledges the obligation: "Now comes the parties…by and through their undersigned counsel, <u>after conferencing</u> pursuant to Local Rule 16.1 (B)…hereby file this proposed Joint Scheduling Statement." (emphasis added). To sign and file such form, when there has been no conference and no cooperation, would be a fraud on the court. We need the assistance of the court[1].

---

[1] Rule 16, Fed.R.Civ.P., provides in pertinent part:

(a) Pretrial Conferences; Objectives. In any action, the court may in its discretion direct the attorneys for the parties … to appear before it for a conference or conferences before trial for such purposes as

(1) expediting the disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pretrial activities;

(4) improving the quality of the trial through more thorough preparation, and;

Sanctions

If the court gets proactive now we can be assured of a just, speedy and inexpensive disposition of the action. Plaintiff suggests the following as "sanctions":

---

(5) facilitating the settlement of the case.

\* \* \*

(c) Subjects for Consideration at Pretrial Conferences. At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to

**(1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses;**

**(2) the necessity or desirability of amendments to the pleadings;**

\* \* \*

**(9) settlement and the use of special procedures to assist in resolving the dispute when authorized by statute or local rule;**

\* \* \*

**(16) such other matters as may facilitate the just, speedy, and inexpensive disposition of the action**.

At least one of the attorneys for each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed. **If appropriate, the court may require that a party or its representative be present or reasonably available by telephone in order to consider possible settlement of the dispute.**

\* \* \*

**(f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.**

(emphasis added)

1. Order the defendant to produce the informal "cooperative" discovery requested (Exhibit "D"), including providing the policy of insurance and statement of limits, forthwith;

2. Require Mr. Muzyka at the upcoming scheduling conference to make a proffer of the good faith basis for the defenses he raised in the answer and affirmative defenses and to answer questions the court or undersigned may have about them at that time; and

3. Order Mr. Muzyka and the defendant to provide the names and whereabouts of Ronan LNU and Darragh LNU **forthwith** (meaning at the hearing…if he doesn't have the information, the sailing club and/or insurance company surely do) and of any other employee they know about who was involved, and to provide copies of their employee files and any statements made by them concerning the accident.

If the court approves these suggestions, with that information we will be in a good position to suggest a workable discovery schedule and trial date. We believe that if there is coverage and if we get the Irish employees served right away (we have already been making inquiry of process servers in Ireland and believe we can accomplish that quickly if we can find them) and if the basis of the defenses are explained, that little or no additional formal discovery will be needed (for either party) and that trial can be set for late spring or this summer. We are willing to have the case tried to a magistrate judge if that means a sooner trial date, but are happy to have the district judge try it if available.

Wherefore, it is requested that the court order the relief requested herein as well as any other relief it deems appropriate.

Respectfully submitted,

_____
Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300
Fax 561.347.7588
Florida Bar No. 308358

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel. 954.472.0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

and

Michael P. Ascher, Esq. (local counsel)
80 Rockadundee Road
P.O. Box 667
Hampden, MA 01036
Tel. 413.566.3878
Fax 413.566.3437
Massachusetts Bar No. 022695

Certificate of Service

I hereby certify that a copy of the foregoing has been served by U.S. mail and by fax on counsel for the defendant, Thomas Muzyka, One Washington Mall, Suite 1400, Boston, Massachusetts, 02108 fax 617.720.3489 as well as to co-counsel for plaintiff, Steven Miller, Suite 122, 817 South University Drive, Plantation, Florida 33324 fax 954.472.0875 and Michael P. Ascher (local counsel) 80 Rockadundee Road, 74 Market Place, 4th Floor, P.O. Box 667, Hampden, Massachusetts 01103 fax 413.566.3437 this 28th day of February, 2005.

_____
Jeffrey A. Miller