UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088-WGY

JULIANNE MARIE EVANS,

    Plaintiff,

vs.

**STATUS REPORT**

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,

    Defendant.
_____/

    Plaintiff files this status report in advance of the upcoming status conference in order that the court may understand where we are presently and what we believe it will take to get this case ready for trial.

    With a little cooperation from defense counsel, Mr. Muzyka, or encouragement to him from the court (a judicial nudge, perhaps), this case could be ready for trial in 45 days, although we would prefer sometime in the summer (for no reason other than it's a nice time of year to be in Boston and undersigned counsel's children are in camp in the area). Right now we need 2 things: a copy of the insurance policy and the names and whereabouts of the captains of the 2 sailboats that were involved in the accident, both of whom were and still may be employees of the defendant. Truth is, if the policy covers the acts and/or omissions of employees and we get the employees served (with an amended complaint that names them as defendants), there is no, or very little, discovery that either party will need to be ready to try the case. It's that simple.

<u>Nature of the Case</u>

Plaintiff, Julianne Evans, rented a house on Nantucket for a summer vacation in 2002. Once there, she responded to an ad in a local Nantucket paper placed by defendant, Nantucket Sailing Club, offering suppertime beachfront sails. She called the club and was told to go to Jettie's Beach. She did and went on a sail. During the sail the boat she was in crashed into another of the sailing club's boats, because the captains were horsing around, and the boom of the other boat smashed into the back of her head/neck causing her to be seriously injured. Both boats were captained by employees of the defendant, Irish nationals who, upon information and belief, were college students working summer jobs at the club (this took place in July, 2002). Plaintiff knows the boys only by their first names, to wit: Ronan LNU and Darragh LNU (there may have been another employee in the other boat whose name plaintiff does not recall).

Plaintiff suffered injuries to her neck and back. Most significant, the trauma caused the permanent loss of Ms. Evans' sense of both taste and smell.

<u>What's Been Going On With The Claim?</u>

The accident happened back in July 2002, yet the suit was only just filed. Throughout, plaintiff has cooperated fully with defendant's insurance company, St. Paul, and St. Paul's investigators and lawyers, Clinton & Muzyka, and believed that if we did the claim would be settled, thus avoiding a suit. When it became apparent that St. Paul had no interest in negotiating in good faith, we sued. However, what went on for the 2 ½ years between when the accident occurred and when suit was filed is important. The extent of the investigation undertaken by St. Paul and its lawyers underscores why not much discovery is needed.

Ms. Evans gave a sworn statement to St. Paul's investigator and has stood ready, willing and able to supplement that statement if asked. Further, she voluntarily submitted to a medical

examination by a St. Paul doctor in Fort Lauderdale, near where she lives, in June 2003 (Paul Flatten, M.D., confirmed the permanent loss of Ms. Evans' ability to taste and smell anything). Not satisfied with its own doctor's finding, St. Paul requested Ms. Evans to fly to Connecticut to be examined by UConn's highly regarded Taste and Smell Center (yes, such a thing exists). On October 29, 2004 UConn's Dr. Norman M. Mann, MD, wrote an opinion letter confirming the diagnosis and that "[the findings] are no doubt due to the head injury [from the Nantucket sailboat accident] that the patient sustained." Upon learning of Dr. Mann's report, we believed that St. Paul would begin negotiating a settlement in good faith. We were wrong. A demand of policy limits of $1 million was made. No offers were forthcoming and no willingness to negotiate was communicated from St. Paul, so we sued. Even now, after Mr. Muzyka claims that no offer will be forthcoming until after he deposes plaintiff, he refuses our offer to depose her. We even offered a telephonic deposition, without prejudice to depose her again after that, if that is what was needed to start the negotiation process.

The Claim and Defenses Raised

In order to understand what, if any, discovery will be needed by the parties and, as a corollary, when the case can be tried, the court needs to understand the claim and defenses which have been raised.

Plaintiff's case sounds in simple negligence against the sailing club. Its employees were horsing around on its sailboats during a club sponsored event and, as a result, an innocent person was severely injured. Not much more to it than that. Proof at trial need only be plaintiff, Dr. Mann and medical records.

Honestly, we believed that when we filed the suit, St. Paul would be prompted to negotiate. We were wrong.

In defense, a slew of denials and litany of affirmative defenses were raised, such as: plaintiff failed to state a cause of action, plaintiff sustained no personal injuries as alleged, the accident was caused by an "Act of God", plaintiff caused the accident and it was "not due to any negligence or fault on the part of the defendant nor any person or persons for whom the defendant may be legally responsible", plaintiff assumed the "risks associated with sailing", that "plaintiff has failed to mitigate her damages and our favorite "the defendant states that the post injury actions and vessel navigation were pursuant to plaintiff's authorization and request and not in violation of any applicable law and/or regulation, whatever *that* means (Ms. Evans was knocked unconscious and lay in the bilge of the little Laser sailboat she was a passenger in as the kids in charge freaked out).  Mr. Muzyka has conceded that these defenses are boilerplate, raised in every case he defends and that he has no proof to support any of them.  He should strike them, they should not be part of the case and we should not be forced to waste time and money chasing ghosts.  Mr. Muzyka is a seasoned trial attorney and mariner and should know better than to raise defenses made up out of whole cloth.  It bogs down the process.  The fact that they are "boilerplate" and "raised in every case" are hardly justification.

Two of defenses are legitimate and worth mentioning; however, neither will have much relevance to trial preparation, as will be explained.  They are (1) the admiralty statutory limitation of liability of a ship owner to the value of the vessel when it is involved in an accident, under 46 U.S.C. section 183 (b).  The limitation does not apply to the liability of employees of the ship owner as to their negligence; and (2) the Massachusetts charitable organization immunity statute, which caps charitable organization liability to $20,000, under M.G.L. c. 2321, section 85K.  Again, like the admiralty statute, this does not affect the liability of any negligent employee of an organization.  Which brings us to the insurance policy.  We suspect that St. Paul

issued coverage to $1 million to defendant that covers the acts and/or omissions of its employees. If so, we aren't concerned with these statutory defenses and won't spend much, if any, time fooling with them (we aren't ready to concede them, but certainly our efforts will not be focused there). We have still not gotten a copy of the insurance policy, although the rules require it and Mr. Muzyka did promise to get it to us.

Which brings us to Ronan LNU and Darragh LNU. Who are they and where can they be found? Mr. Muzyka knows, St. Paul knows and certainly Nantucket Sailing knows, yet nobody's talking. We have asked for their full names, addresses, email addresses, schools attended and basically any place and/or any person who knows the whereabouts of these boys, so we can serve them with an amended complaint. St. Paul will provide a defense and Mr. Muzyka will likely represent them. We won't miss a beat in keeping the case on track for a summertime trial. Who knows, the boys may be planning on working in Nantucket this summer and can be around for trial. Either way, the rules require a disclosure and it's past due. Judge Young issued a very clear directive to counsel in this case on February 3 in his Notice of Scheduling Conference, which provided, in part, "The Court considers…compliance with sections (B), (C) and (D) of L.R. 16.1 to be of the utmost importance." Mr. Muzyka refused to confer with us, refused to discuss the defenses he raised, discovery he might need, discovery plaintiff might need and settlement, which conference needed to be held no later than 21 days prior to the March 7 scheduling conference (as a result we were forced to file a notice of noncompliance and motion for sanctions. Mr. Muzyka filed a proposed scheduling order setting the case for trial off, for no good reason, other than, we submit, St. Paul wants the case further delayed, until 2006). Both sides consented to trial by a magistrate judge at the March 7 conference and Judge Young ordered that all further proceedings be conducted by Magistrate Bowler. It was immediately

after that scheduling conference that Mr. Muzyka and the undersigned conferred. The affirmative defenses were discussed and there was a renewed request from the undersigned, and promises made by Mr. Muzyka, about getting the policy, names and whereabouts of the Irish employees. Still nothing has been provided.

Rule 26 (a)(1), Fed. R. Civ. P. provides, in part:

(a) Required Disclosures; Methods to Discover Additional Matter.

(1) Initial Disclosures. Except to the extent otherwise stipulated or directed by order or local rule, a party shall, without awaiting a discovery request, provide to the other parties:
(A) the name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularity in the pleadings, identifying the subjects of the information;

(B) a copy of, or a description by category and location of, all documents, data compilation, and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings;
*   *   *
(D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Unless otherwise stipulated or directed by the court, these disclosures shall be made at or within 10 days after the meeting of the parties under subdivision (f) [which shall held as local rules provide or as ordered, but at least 14 days before a scheduling conference]. A party shall make its initial disclosures based on the information then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case of because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

Local Rule 26.1 provides, in part:

(a) **Cooperative Discovery.** The judicial officer should encourage cost effective discovery by means of voluntary exchange of information among litigants and their attorneys [the nudge]. This may be accomplished through the use of:

(1) informal, cooperative discovery practices in which counsel provide information to opposing counsel without resort to formal discovery procedures; or

(2) stipulations…

(b) **Disclosure Orders.** The judicial officer may order to submit at the scheduling conference, or at any subsequent time the officer deems appropriate, sworn statements disclosing certain information to every other party.  At the discretion of the judicial officer, this order may direct the submission of:

\*   \*   \*

(2)  a sworn statement from a defendant…that identifies:

(a)  all persons then known to the defendant or the defendant's attorneys who witnessed the transaction or occurrence giving rise to the claim or otherwise is known or believed to have substantial discoverable information about the claims or defenses, together with a statement of the subject and a brief summary of that information;

(b)  all opposing parties, and all officers, directors, and employees of opposing parties, from whom statements have been obtained by or on behalf of the defendant regarding the subject matter of the claims or defenses; and

(c)  all government agencies or official then known to the defendant or the defendant's attorneys to have investigated the transaction or occurrence giving rise to the claims or defenses.

Judge Young's scheduling order and the rules mandate production of the policy and not only the names and whereabouts of the Irish employees (they are witnesses), but sworn statements from the defendant, as set forth above.  Compliance with Rule 16 and Local Rule 16.1, stressed by Judge Young to be "of the utmost importance", has all but been ignored by Mr. Muzyka and the defendant.  Rule 16's objectives include expediting the disposition of the action, discouraging wasteful pretrial activities and facilitating settlement.  The court may take any appropriate action "as may facilitate the just, speedy and inexpensive disposition of the action." Rule 16 (c)(16), and, "if appropriate, the court may require that a party or its representative be present or reasonably available by telephone in order to consider possible settlement of the dispute."  Sanctions are available for non-compliance under section (f).  It sure seems that Mr. Muzyka and St. Paul are most interested in delaying this case and making it an expensive proposition to get tried, which is not what the rules or the court has in mind.

As a result, plaintiff requests an order, ahead of the upcoming status conference, directing that a representative of the defendant either appear in court at the status conference or be available by telephone and have with him/her the employee files of the Irish employees and any other document the defendant, its counsel or St. Paul, its insurance carrier, might have that sheds light on the subject, as well as any other witnesses, a summary of what they know and the other information required by these rules. The same for a representative of St. Paul, which can explain to the court why we don't yet have a copy of the policy and what information it has in its files that is discoverable. Inquiry by the court will be taken seriously. Only then, it seems, will we get the case moving towards disposition. This could have been avoided had Mr. Muzyka made any effort to follow the rules and Judge Young's order. A phone call or two, or maybe even 3, from Mr. Muzyka to his clients, St. Paul and Nantucket Sailing, is all it would have taken. Plaintiff requests that these issues be considered by the court at the status conference. Perhaps a word from the court will help.

Respectfully submitted,

PLAINTIFF
JEFFREY A. MILLER, ESQ.,

"/s/ Jeffrey A. Miller"_____
Jeffrey A. Miller, Esq.
Florida Bar No. 308358
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel.  561.392.4300
Fax  561.347.7588

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel.  954.472.0776
Fax  954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

and

Michael P. Ascher, Esq. (local counsel)
P.O. Box 667
Hampden, MA 01036
Tel.  413.566.3878
Fax  413.566.3437
Massachusetts Bar No. 022695

Dated:  March 16, 2005

Case 1:05-cv-10088-MBB    Document 14    Filed 03/16/2005    Page 9 of 9