UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088-WGY

JULIANNE MARIE EVANS,

    Plaintiff,

**NOTICE OF DEFENSE COUNSEL'S WILLFUL NON-COMPLIANCE WITH THE COURT'S SCHEDULING ORDER and REQUEST FOR IMPOSITION OF SANCTIONS**

vs.

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,

    Defendant.
_____/

Because defense counsel willfully failed to confer with plaintiff's counsel, as required by the scheduling order (dated February, 3, 2005), which made it quite clear that compliance with the applicable rules is "to be of the utmost importance", sanctions should be imposed.

Basis for Imposition of Sanctions

Upon receipt of the Notice of Scheduling Order, we faxed a letter to defendant's lawyer on February 8, a copy of which is attached hereto as Exhibit "A", requesting that a conference be scheduled so as to timely comply (by Monday, February 14) with the court's order ["We need to confer to comply with the court's scheduling order on or before this coming Monday (February 14)."]. A proposed agenda was laid out in the letter ["In our earlier discussions you never mentioned either the Mass. charitable

immunity or section 183 limitation of liability defenses. I think it would be helpful if we talk about them now when we discuss settlement. And if we can't find common settlement ground, it looks like these will be the focus of our discovery efforts, so either way, we should probably be prepared to talk about them and a discovery schedule when we do confer."]. There was no response to the letter. Repeated phone calls and messages from Steven Miller to Thomas Muzyka and Terence Kenneally's office trying to schedule a conference were ignored.

Not until February 23 did Thomas Muzyka finally call Steven Miller. However, instead of having or agreeing to have a meaningful dialogue, as contemplated by both the letter and spirit of the rules and the order, Mr. Muzyka refused to do so. Instead, he said he would forward a proposed scheduling statement to Miller and for him to provide dates. Steven Miller reminded Mr. Muzyka, again, of the order and rules and that a conference was necessary before dates could be intelligently discussed.

After lunch that day, undersigned counsel faxed Mr. Muzyka a letter, a copy of which is attached hereto as Exhibit "B", requesting, yet again, that the order be complied with and asking that he schedule a conference ["We need to actually confer to comply with the letter and spirit of the order. Please let me know your availability to do that. How about tomorrow morning at 10:00?"]. There has been no response by Mr. Muzyka or Mr. Kenneally. However, at about 4:30 that afternoon, Terence Kenneally faxed a note to Steven Miller with the proposed scheduling statement Mr. Muzyka mentioned that morning. A copy of the note and draft statement is attached hereto as Exhibit "C" (he completely ignored the requests for a conference).

The next day, undersigned counsel faxed a letter to Mr. Kenneally, a copy of which is attached hereto and marked Exhibit "D", complaining that he and Mr. Muzyka continue to refuse to comply with Judge Young's order, among other things. Additionally, an informal "cooperative" discovery request was included in the letter, pursuant to L.R. 26.1. The significance of that discovery and the speed with which defendant provides it will have a significant impact on scheduling. Immediate production of the information will greatly assist plaintiff and will govern <u>whether any formal discovery will be needed and whether the case will be trial ready in 60 days</u>, as plaintiff believes, or next year, as defendant suggests. With cooperation from defense counsel, or, more likely, assistance from the court in ordering "cooperation", we will be in a position to intelligently propose a discovery/trial schedule. Consideration of the nature of the case, what the parties already know and what formal discovery they will need, if any, to be ready to try the case, will help the court in fashioning a sanctions order (which really isn't a sanction at all, but more like a judicial nudge).

Nature of the Case

Plaintiff rented a house on Nantucket for a summer vacation. Once there, she responded to an ad in a local Nantucket paper placed by defendant, Nantucket Sailing Club, offering suppertime beachfront sails. She went to Jettie's Beach and on a sail. During the sail the boat she was in crashed into another of the sailing club's boats and the boom of the other boat smashed into the back of her head/neck causing her to be seriously injured. Both boats were captained by employees of the defendant, Irish nationals who, upon information and belief, were college students from Ireland working summer jobs at the club (this took place in July, 2002). Plaintiff knows the boys only by

their first names, to wit: Ronan and Darragh (there may have been another employee in the other boat whose name plaintiff does not recall).

Plaintiff suffered injuries to her neck and back. Additionally, the trauma caused the permanent loss of her sense of both taste and smell.

## Plaintiff's Cooperation

Plaintiff has cooperated fully with the defendant's insurance company, St. Paul, and its lawyers, Clinton & Muzyka, the attorneys appointed to represent the defendant sailing club. That cooperation has included plaintiff making herself available to the insurance company's investigator and giving a sworn statement. It also included plaintiff voluntarily submitting herself to be examined by the insurance company's neurologist, Paul Flatten, M.D., in Fort Lauderdale, Florida in June, 2003. Dr. Patten's opinion confirmed the permanent loss of Ms. Evans' sense of taste and smell, inter alia. Thereafter, St. Paul, unsatisfied with its own doctor's evaluation, requested that Ms. Evans be examined by Uconn's Taste and Smell Center. Ms. Evans agreed and voluntarily flew from her south Florida home to Connecticut to be examined by the UConn Medical Group's Taste and Smell Center doctors. On October 29, 2004 UConn's Dr. Norman M. Mann, MD, wrote an opinion letter confirming the diagnosis and that "[the findings] are no doubt due to the head injury that the patient sustained." A copy of the letter is attached hereto and marked Exhibit "E". Plaintiff has cooperated fully and refused the insurance company and its lawyers nothing in their investigation and evaluation of the case. All of plaintiff's medical records have been made available to St. Paul and the Muzyka law firm. Further, Ms. Evans has executed and provided medical authorization release forms to them should any additional records be desired.

## The Reality

St. Paul and its lawyers are faced with an accident caused by its insured's employees, which occurred during the course of their employment, during a sailing event it's insured sponsored and advertised, which its own hand-picked doctors believe caused permanent loss of taste and smell in plaintiff. On that backdrop plaintiff has demanded the policy limits of $1 million to settle. Nothing has been offered. Mr. Kenneally suggested to Steven Miller that an offer would be forthcoming as soon as certain forms were filled out by him and forwarded to the insurance carrier for assessment. The Irish employees were not named as defendants since they were not necessary to a settlement, which seemed imminent, and there did not appear to be any reason to go to the trouble or additional expense (at no time were the statutory limitations mentioned before suit), until now.

Only two of the affirmative defenses raised merit discussion, to wit: (1) the Mass. charitable organizations statutory $20,000 limitation and (2) the admiralty statutory limitation of liability benefiting ship owners and capping their liability at the value of their vessel; **however, neither of those affects the liability of defendant's employees. So, if the $1 million policy covers the negligent actions of defendant's employees, the limitations, as a practical matter, simply don't matter.** And, since St. Paul has acted in bad faith by failing to make any settlement offers, an excess judgment, which we will be seeking, will ultimately be paid by St. Paul (and this gives defendant the benefit of the doubt on whether it can prove the defenses, which it may or may not be able to do, or whether, as a practical matter, plaintiff even cares).

In order for plaintiff to go forward at this point, given the two aforedescribed affirmative defenses, we need to add the Irish employees, and in order for us to do that we need the cooperation of the defendant or help from the court. **We need to know the names and whereabouts of the Irish employees.**

This case can be about gamesmanship, or it can be about getting to the nub of it and getting it settled or tried. We believe that there is a very good chance that not much of anything will be needed, by either side, in order to be trial ready other than amending the complaint to add the Irish employees and getting them served, assuming that the $1 million policy covers the negligent acts of these employees (which is why we must see the policy now). So, merely filling in the blanks on Mr. Muzyka's proposed scheduling form, as he wants, is really putting the cart before the horse. The rules recognize this, which is why before schedules are discussed the lawyers must confer and cooperate. Ironically, Mr. Muzyka's form acknowledges the obligation: "Now comes the parties…by and through their undersigned counsel, <u>after conferencing</u> pursuant to Local Rule 16.1 (B)…hereby file this proposed Joint Scheduling Statement." (emphasis added). To sign and file such form, when there has been no conference and no cooperation, would be a fraud on the court. We need the assistance of the court[1].

---

[1] Rule 16, Fed.R.Civ.P., provides in pertinent part:

(a) Pretrial Conferences; Objectives. In any action, the court may in its discretion direct the attorneys for the parties … to appear before it for a conference or conferences before trial for such purposes as

(1) expediting the disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pretrial activities;

(4) improving the quality of the trial through more thorough preparation, and;

<u>Sanctions</u>

If the court gets proactive now we can be assured of a just, speedy and inexpensive disposition of the action. Plaintiff suggests the following as "sanctions":

---

(5) facilitating the settlement of the case.

\* \* \*

(c) Subjects for Consideration at Pretrial Conferences. At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to

(1) the formulation and simplification of the issues, including the elimination of frivolous claims or defenses;

(2) the necessity or desirability of amendments to the pleadings;

\* \* \*

(9) settlement and the use of special procedures to assist in resolving the dispute when authorized by statute or local rule;

\* \* \*

(16) such other matters as may facilitate the just, speedy, and inexpensive disposition of the action.

At least one of the attorneys for each party participating in any conference before trial shall have authority to enter into stipulations and to make admissions regarding all matters that the participants may reasonably anticipate may be discussed. If appropriate, the court may require that a party or its representative be present or reasonably available by telephone in order to consider possible settlement of the dispute.

\* \* \*

(f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

(emphasis added)

1. Order the defendant to produce the informal "cooperative" discovery requested (Exhibit "D"), including providing the policy of insurance and statement of limits, forthwith;

2. Require Mr. Muzyka at the upcoming scheduling conference to make a proffer of the good faith basis for the defenses he raised in the answer and affirmative defenses and to answer questions the court or undersigned may have about them at that time; and

3. Order Mr. Muzyka and the defendant to provide the names and whereabouts of Ronan LNU and Darragh LNU **forthwith** (meaning at the hearing...if he doesn't have the information, the sailing club and/or insurance company surely do) and of any other employee they know about who was involved, and to provide copies of their employee files and any statements made by them concerning the accident.

If the court approves these suggestions, with that information we will be in a good position to suggest a workable discovery schedule and trial date. We believe that if there is coverage and if we get the Irish employees served right away (we have already been making inquiry of process servers in Ireland and believe we can accomplish that quickly if we can find them) and if the basis of the defenses are explained, that little or no additional formal discovery will be needed (for either party) and that trial can be set for late spring or this summer. We are willing to have the case tried to a magistrate judge if that means a sooner trial date, but are happy to have the district judge try it if available.

Wherefore, it is requested that the court order the relief requested herein as well as any other relief it deems appropriate.

Respectfully submitted,

*/s/ Jeffrey A. Miller*

Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300
Fax 561.347.7588
Florida Bar No. 308358

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel. 954.472.0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

and

Michael P. Ascher, Esq. (local counsel)
80 Rockadundee Road
P.O. Box 667
Hampden, MA 01036
Tel. 413.566.3878
Fax 413.566.3437
Massachusetts Bar No. 022695

Certificate of Service

I hereby certify that a copy of the foregoing has been served by U.S. mail and by fax on counsel for the defendant, Thomas Muzyka, One Washington Mall, Suite 1400, Boston, Massachusetts, 02108 fax 617.720.3489 as well as to co-counsel for plaintiff, Steven Miller, Suite 122, 817 South University Drive, Plantation, Florida 33324 fax 954.472.0875 and Michael P. Ascher (local counsel) 80 Rockadundee Road, 74 Market Place, 4th Floor, P.O. Box 667, Hampden, Massachusetts 01103 fax 413.566.3437 this 28th day of February, 2005.

*/s/ Jeffrey A. Miller*

Jeffrey A. Miller

## LAW OFFICE
## STEVEN D. MILLER, P.A.
SUITE 122
817 SOUTH UNIVERSITY DRIVE
PLANTATION, FLORIDA 33324
TELEPHONE (954) 472-0776

STEVEN D. MILLER
ADMITTED MASSACHUSETTS BAR

FAX (954) 472-0875
E-MAIL: SDM1059@AOL.COM

February 8, 2005

Terence Kenneally, Esq.
One Washington Mall
Suite 1400
Boston, Massachusetts  02108

by fax: (617) 720-3489

Re: Evans vs. Nantucket Community Sailing
    U.S. District Court, D. Mass.
    Civil Action No. 05-10088-WGY

Dear Terence,

   We need to confer to comply with the court's scheduling order on or before this coming Monday. When are you available to do that?

   Thank you for getting me your answer. In our earlier discussions you never mentioned either the Mass. charitable immunity or section 183 limitation of liability defenses. I think it would be helpful if we talk about them now when we discuss settlement. And if we can't find common settlement ground, it looks like these will be the focus of our discovery efforts, so either way, we should probably be prepared to talk about them and a discovery schedule when we do confer.

   You already know our position on settlement. It seems to us that other than these 2 defenses, damages is the only issue for trial and that Ms. Evans' injuries, including, to wit: permanent loss of her senses of taste and smell, will not be contested by you given the findings by your experts at UCONN's Taste and Smell Center. Please let me know if I am correct on this point. We believe those damages are far in excess of the $1 million in coverage you have, so your client's exposure is great and that should be considered in our settlement talks, as we will consider the viability of your defenses.

   You already have all of the medical records. I don't know if you have any suggestions on alternate dispute resolutions, but we are certainly willing to listen. We are also willing to having the case tried to a jury by a magistrate judge. Please ask your client about that, too.

Very truly yours,

Steven D. Miller

EXHIBIT "A"

# JEFFREY A. MILLER
Lawyer

Peninsula Plaza
Suite 314
2424 North Federal Highway
Boca Raton, Florida 33431

Telephone (561) 392-4300
Facsimile (561) 347-7588

February 23, 2005

Thomas J. Muzyka, Esq.
One Washington Mall
Suite 1400
Boston, Massachusetts 02108

by fax: 617.720.3489

Re: <u>Evans vs. Nantucket Community Sailing</u>
    U.S. District Court, D. Mass.
    Civil Action No. 05-10088-WGY

Dear Mr. Muzyka,

We need to comply with the court's scheduling order. While you did call Steven today and emailed him a fill in the blank form, I don't think that completely does it. We need to actually confer to comply with the letter and spirit of the order. Please let me know your availability to do that. How about tomorrow morning at 10:00?

If you must depose Ms. Evans in order to make a settlement offer, as Steven reports, we will make her available to you right away (you already have the sworn statement she gave to your investigator and she has submitted to a comprehensive medical examination by your UConn doctors). You can depose her by phone or come here and enjoy the nice sunny South Florida weather (maybe I'll take you fishing). This offer is made without prejudice to your right to continue the deposition later if there are additional questions you feel you missed and need answered.

I am out of the office today and tomorrow, but you can reach me on my cell phone at 561.445.6962. Would you consider reciprocating and making the Nantucket Sailing folks available to me by phone for depositions? If we work together I think we will be able to identify the issues and either settle, have your dispositive motion considered or have the case tried to a magistrate judge. We do appreciate the fact that you filed an answer quickly and we, too, will promptly respond to requests you might make. I look forward to hearing from you and, if we can't settle, to meeting you in Boston.

Very truly yours,

Jeffrey A. Miller

EXHIBIT "B"

# CLINTON & MUZYKA, P.C.

ONE WASHINGTON MALL, SUITE 1400
BOSTON, MA 02108
617.723.9165 TEL
617.720.3489 FAX
TKENNEALLY@CLINMUZYKA.COM

---

## FACSIMILE TRANSMITTAL SHEET

| TO: Steven D. Miller | FROM: Terence G. Kenneally |
|---|---|
| COMPANY: Law Office Steven D. Miller, P.A. | DATE: February 23, 2005 |
| FAX NUMBER: (954) 472-0875 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
| PHONE NUMBER: | SENDERS REFERENCE NO: 177-019 |
| RE: Julianne Evans vs. Nantucket Community Sailing, Inc. Civil Action No. 05-10088 | YOUR REFERENCE NO: |

NOTES/COMMENTS:

Dear Attorney Miller:

   We refer to the above matter and your telephone conversation this morning with Attorney Muzyka and enclose herewith the proposed Joint Scheduling Statement.

   We also note that your client has not tendered a written settlement demand to the defendant. In order to complete the Joint Scheduling Statement, we request your client's submission of a written settlement demand to our office.

   Please advise with any corrections and/or additions. The Scheduling Statement must be filed with the Court on or before February 28, 2005.

Very truly yours,

*Terence G. Kenneally*

EXHIBIT "C"

FROM                                                    (WED)FEB 23 2005 16:34/ST.16:33/NO.6337455012 P  2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
NO. 05-10088-WGY

JULIANNE MARIE EVANS
    Plaintiff,

VS.

NANTUCKET COMMUNITY SAILING, INC.
    Defendant.

## JOINT SCHEDULING STATEMENT

Now come the parties, in the above captioned action, by and through their undersigned counsel, after conferencing pursuant to Local Rule 16.1(B) of the United States District Court, District of Massachusetts, hereby file this proposed Joint Scheduling Statement.

I.    **DISCOVERY**

The parties propose the following discovery plan:

A.    All discovery and factual depositions to be completed by **September 30, 2005**.

B.    Plaintiff's designation of experts and disclosure of expert information and reports pursuant to the Federal Rules of Civil Procedure served on or before **October 31, 2005**.

FROM
Case 1:05-cv-10088-MBB   Document 15   Filed 03/18/2005   Page 14 of 20
(WED) FEB 23 2005 16:34/ST. 16:33/NO. 6337455012 P 3

2

C.  Defendant's designation of experts and disclosure of expert information and reports pursuant to the Federal Rules of Civil Procedure served on or before **November 30, 2005**.

D.  All expert depositions to be completed by **January 31, 2006**.

E.  Final Pretrial Conference to be scheduled after **February 1, 2006**.

II. **MOTION SCHEDULE**

In addition to the above, the parties propose the following motion schedule.

A.  Motions to amend the pleadings, to add parties or to set forth additional claims to be filed on or before **April 29, 2005**.

B.  Dispositive Motions to be filed by **January 31, 2006** with Oppositions filed within twenty-one (21) days as set forth in the Local Rules of this Court.

III. **CERTIFICATION**

The parties report that they have conferred with their clients pursuant to Local Rule 16.1(D)(3) and will independently file their Certificates of Compliance.

IV. **TRIAL BY MAGISTRATE JUDGE**

The parties consent to trial by Magistrate Judge Bowler.

V. **SETTLEMENT**

The plaintiff has / has not tendered a written settlement demand to the defendant.

**WHEREFORE**, the parties pray that this Honorable Court

FROM
Case 1:05-cv-10088-MBB   Document 15   Filed 03/18/2005   Page 15 of 20
(WED)FEB 23 2005 16:34/ST.16:33/NO.6337455012 P 4

3

approve the above proposed schedule.

Respectfully Submitted,

**PLAINTIFF**

**DEFENDANT**
**CLINTON & MUZYKA, P.C.,**

_____
Michael Ascher
BBO No. 022659
80 Rockadundee Road
74 Market Place  4th Floor
P.O.Box 667
Hampden, MA 01103
413-566-3878

_____
Thomas J. Muzyka
BBO NO. 365540
Terence G. Kenneally
BBO NO. 642124
One Washington Mall
Suite 1400
Boston, MA 02108
617-723-9165

Steven D. Miller
BBO NO. 560862
817 South University Drive
Suite 122
Plantation, FL. 33324
954-472-0776


Dated: February ___, 2005

# JEFFREY A. MILLER
Lawyer

Peninsula Plaza
Suite 314
2424 North Federal Highway
Boca Raton, Florida 33431

Telephone (561) 392-4300
Facsimile (561) 347-7588

February 24, 2005

Terence Kenneally, Esq.
One Washington Mall
Suite 1400
Boston, Massachusetts 02108

by fax: 617.720.3489

Re: Evans vs. Nantucket Community Sailing
U.S. District Court, D. Mass.
Civil Action No. 05-10088-WGY

Dear Terence,

    We continue to try to comply with Judge Young's scheduling order but you will not confer with us. Steven wrote you requesting a conference on February 8 and called numerous times thereafter. You simply ignored his requests. I wrote to Tom Muzyka yesterday asking for a conference today and he ignored my request, too. The order makes it clear that compliance with L.R. 16.1 is to be of "the utmost importance" and section (B) makes clear counsels' obligation "to confer". Please call to schedule a conference right away. We can do it today or tomorrow. But please call. The number you can reach me at (call me, not Steven, from now on) is 561.445.6962.

    Our settlement demand is for the policy limits, which you have represented to be $1 million. I thought you understood that. Sorry if there was any confusion. Would you please forward us a copy of the policy today?

    I feel that this is a case that should be settled and believed from my conversations with Steven before suit was filed that your carrier would be reasonable once we did (I was surprised that no offers were made after the results came back from Uconn). I think you even told Steven that you would have settlement authority after you sent off forms to your carrier that you had to fill out. Now, I think your carrier is acting in bad faith and that it and you are subjecting its insureds to substantial excess judgments.

    You never mentioned either the charitable organizations or admiralty limitations of liability in your earlier discussions with Steven. While you certainly are entitled to raise them in defense of the claims made, as a result of your having done so we have decided to amend our complaint to add the 2 captains, personally. That likely will still leave your carrier on the hook, notwithstanding the statutory limitations if you can prove entitlement to them, which is why it would be very helpful to the settlement discussions if you would provide the policy to us now.

EXHIBIT "D"

If, as I believe, the limitations do not inure to the benefit of these employees, if the coverage extends to their actions and if we are demanding no more than policy limits, what good are the statutory limitations to your carrier? Talk to me. If I'm wrong about the law or if I'm wrong about any facet of the case, talk to me, show me. I have no interest in wasting time and money on a lost cause. I think a dialogue like that is what the rule and Judge Young has in mind.

I am also including in this letter an informal discovery request as L.R. 26.1 contemplates. Your agreeing to provide this cooperative discovery should significantly narrow the scope and time required for formal discovery. Letting me know that you will or will not provide this cooperative discovery will also make a difference in the agenda of the upcoming discovery conference. Please agree to provide that which I am requesting below and let me know how much time you will need to do so. I do ask that the information on the captains be provided immediately so that I can do a proper amended complaint and get it served.

### Informal Discovery Request

1. Any insurance policy and statement of limits, which might cover the occurrence, the defendant and any of its officers, directors or employees;
2. The full names of each of the captains of the 2 vessels involved in the occurrence and, as to each of them:
    a. last known address, phone #, fax # and email address;
    b. every known address, phone #, fax # and email address, including schools attended;
    c. employment file, including applications, correspondence, emails, incident reports and any statements made concerning the occurrence or any other accidents he was involved in with a boat;
    d. whether you expect either of them to be in Nantucket or the U.S. in the future; and
    e. proof that he was at the time a safe sailor and any certificates of completion of any safe boating/sailing course he attended;
3. Identify all persons and their whereabouts who witnessed the occurrence giving rise to the claim or is otherwise known to have substantial discoverable information about the claims or defenses, together with a statement of the subject and a brief summary of that information;
4. Identify all opposing parties, and all officers, directors and employees of opposing parties from who statements have been obtained by or on behalf of the defendant regarding the subject matter of the occurrence or defenses and copies of those statements;
5. All government agencies or authorities known to the defendant or defendant's attorneys to have investigated the occurrence giving rise to the claims and defenses and copies of any of those statements you have;
6. We would like to look at photos of the boats taken at or near the time of the occurrence, if any, to inspect the boats involved now, and to see any written information you have regarding these boats, including registrations, titles and insurance policies;
7. Please produce all employee handbooks in effect immediately prior to the occurrence and any modifications since;

8. Each and every record evidencing entitlement to the charitable organizations limitation you have pled as a defense;

9 Each and every document evidencing entitlement to the admiralty limitation of liability you have pled as a defense;

10. Defendant's 501(c)(3) application and IRS returns (returns for the last 3 filed years);

11. Defendant's application to the Commonwealth of Massachusetts for charitable organization status and any certificate issued designating it as such and any returns filed with the Commonwealth for the 3 years preceding the occurence;

12. Copies of all advertisements and invoices for ads advertising what the defendant offered to the public for the 3 month period before the date of the occurrence at issue;

13. Books and records of income received from the public for the 3 month period prior to the occurrence at issue and any other evidence that might tend to show that defendant was engaged in commercial activity; and

14. Full doctors' reports from UCONN.

You see, if you will agree to produce these things and get me the names/whereabouts information about the captains right away so that I can amend the complaint to add them and have them served, the rest of the formal discovery will be very light and we can probably get this case in a trial ready mode by this summer or early fall (and if the captains are in town we might get it tried while they're here). I look forward to hearing back from you today. As you know, we need to file something with the court next week and I do not like filing unilateral statements, especially for something that should be a simple as this.

Very truly yours,

Jeffrey A. Miller

# UCONN MEDICAL GROUP

TASTE AND SMELL CENTER

*Nantucket Community/Evan*
*Med Exam*
*TM*

RECEIVED

NOV 1 5 2004

CLINTON & MUZYKA, P.C.

October 29, 2004

Attorney Kenneally
C/O Attorney Clinton & Muzyka
1 Washington Mall
Suite 1400
Boston, MA 02108

RE:    Julianne Evans
MRN:   T01156464
DOB:   10/23/1962

Chief complaint of the patient: Lack of smell since an accident that occurred on July 4th weekend in the year 2002 in Nantucket, Massachusetts.

The patient is a 42-year-old female who was on a boat when suddenly the boom of another boat hit her in the back of the head and neck, knocking her down, causing injuries to her head, neck and back. The patient states that she was unconscious for about 20 minutes. She was taken to a hospital and stayed there approximately nine hours. A CT scan of the head was done, and according to the patient, a concussion was diagnosed. She was then discharged to her home in Nantucket. The patient sustained lack of smell and it impaired taste since the accident.

It is of interest however that on August 18th of this year, the patient had a short episode of being able to smell.

In the weeks following the accident, the patient saw an orthopedic surgeon because of her neck and back pain and she also saw a neurologist. MRI scans were done in Florida and Massachusetts according to the patient. The patient still complains of neck and back pain and accept for the short episode of smelling on August 18th, she still has lack of smell.

Approximately three weeks ago, the patient stated that she had an incident in which she fell and sustained a broken left ankle and right wrist. These problems have been treated by an orthopedist. The patient has been going to a pain rehabilitation clinic in Miami.

The patient, aside from her difficulty in smell sensation, has also complained of impaired taste.

The patient is a writer and also a realtor. She does not smoke and takes no medication. She is allergic to cats. She does not smoke and does take an occasional drink of wine. She was formerly married in 1982 but this was annulled in the year 2000.

Past history: One; history of Charcot-Marie-Tooth disease. This has been for many years, and this disease is a hereditary neuropathy that involves distal motor and sensory deficits. This has

*University of Connecticut Health System* * Kevin V. Dowling, M.D., Medical Office Building South
263 Farmington Avenue * Farmington, CT 06030-6228 * Tel: (860) 679-2804 * Fax: (860) 679-1848
* An Equal Opportunity Employer *

C: 11/04/2004 06:57

EXHIBIT "E"

caused the patient to have difficulty with the calves in both feet. Two; the patient has had six surgeries on her feet. Three; she has had an appendectomy.

Systemic review: Eyes: The patient does not wear glasses. Lungs: The patient denies any chronic cough. Heart: The patient denies any chest pain or murmurs. Gastrointestinal system: The patient denies any indigestion. Her bowel movements are satisfactory. Genitourinary. The patient denies any difficulty in urination. Her menstrual periods occur every month.

Family history: The patient's mother died at 74 of emphysema. Her father is 77 and in fair health. She has one twin, who is in satisfactory condition.

Physical examination revealed an alert female whose blood pressure was 110/80. Examination of the head and eyes was satisfactory. The nose revealed no obstruction from an external point of view. The mouth revealed no ulcerations. The tongue was in the midline. The gums were in fair condition. The neck was supple but there were some slight restrictions in mobility of the neck because of distress. The lungs were clear. The heart was not enlarged. A normal rhythm was present. No murmurs were heard. The breasts were free of masses. The abdomen was soft. No masses were felt. The lower extremities revealed the presence of a cast support on the left ankle. Examination of the lower back revealed some slight restriction in mobility.

Final impression: One; anosmia involving the right side. Hyposmia, involving the left side. Two, hypogeusia. Both one and two findings are no doubt due to the head injury that the patient sustained. Three; arthralgia. Four; cervical myositis. Five; lumbar derangement. Six; left ankle fracture. Seven; rhinitis diagnosed by the ENT department. Eight, history of Charcot-Marie-Tooth disease.

The ENT depression recommended Flonase nasal spray to help her nasal condition.

*[signature]*

Norman M Mann, MD

Dictated By: Norman M Mann, MD
TRID: 200411010359190000  DP: 11/01/2004 09:49  DD: 11/01/2004 09:33  DT: 11/01/2004 10:47  TID: 18929