UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088 MBB

JULIANNE MARIE EVANS,

    Plaintiff,

vs.

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts
corporation, RONAN O'SIOCHRU and
DONNCHA KIELY,
Defendants.
_____/

**Plaintiff's Response to Defendants' Motion for Protective Order (Dr. Mann's deposition)**

Plaintiff files this response to the defendants' motion for protective order concerning Dr. Mann's deposition. The issue is not really whether Dr. Mann can be deposed at his winter residence in Florida, so much as why the defendants continue to drag their feet and what can be done to bring the case to a conclusion.

The court will recall the November 4 status conference where plaintiff announced ready for trial and requested the soonest possible mediation/trial dates. Plaintiff announced that her damages claim would be limited to her loss of taste and smell, thus cutting out much of the medical evidence regarding neck/back injuries she also suffered. The defendants, on prodding from the court, conceded that the issue left to be tried was plaintiff's damages.

Plaintiff's case is simple and the evidence brief. Plaintiff will offer herself, taped statements of the defendants (only if liability is not conceded) and Dr. Norman

Mann's opinion, the UConn expert who believes plaintiff's loss of her senses of taste and smell is both permanent and caused by the Nantucket boat accident.

Plaintiff was in the process of scheduling Dr. Mann's deposition, solely to perpetuate it, by videotape[1], at the time of the November status conference and had dates from him of November 10, 11 or 15, <u>to be taken at UConn</u>, only waiting on a word from the defendants as to which date was best for them. The defendants complained that they needed to depose the plaintiff first, before the Dr. Mann deposition took place.[2] The court ordered that plaintiff's deposition be taken in early December and that Dr. Mann's deposition (by plaintiff) be put off until January, thus giving the defendants sufficient time to do any follow-up before Dr. Mann's deposition.[3]

Plaintiff traveled from her home in Florida to Boston to be deposed on December 8. She was asked and testified about x-rays and films she had. An informal discovery request was made for plaintiff to produce what she had. Plaintiff agreed that on her return home she would retrieve out of storage whatever she had, which she did, and it was promptly FedEx'd to Mr. Muzyka.

These films are totally irrelevant to plaintiff's claim or any defense and should not be allowed as a basis to delay resolution of this case any longer. This will be made very

---

[1] Undersigned counsel mistakenly believed that a jury demand had been made by Plaintiff, so felt a video of Dr. Mann would be helpful to the jury. As it turns out, a jury demand has not been made.
[2] Another bone of contention, since defendants sat on their hands and never asked for plaintiff's deposition. Besides, defendants had plaintiff's sworn statement taken by St. Paul's investigators, all of her medical records (obtained as early as 2002), HIPPA authorizations and the reports from UConn, where Ms. Evans went to be examined at St. Paul's request.
[3] The electronic clerk's notes docketed on 11/04/2005 reflect this.

clear to the court. Regarding these records the defendants state in their motion for protection that

> **Dr. Mann requires sufficient time to review recently obtained medical records, x-rays and CAT scans and for defense counsel to meet with him before his deposition.**

Plaintiff doubts whether any are "recently obtained" in the sense that they were not previously available. They were. Defendants next suggest that this process, Dr Mann's review and a conference with defense counsel, is both necessary (it isn't) and will take until mid-late February to accomplish (it shouldn't). Dr. Mann is very accessible. Just call him and he calls back, usually within minutes. He is available to the defendants. They need only try. As for Dr. Mann needing to review anything further, he does not.

### Plaintiff's Efforts to Schedule Dr. Mann's Deposition and the Many Courtesies Extended by Plaintiff to the Defendants

Before walking down the "recently obtained" records road, plaintiff would like to take a short detour to make the court aware of the considerable efforts made to schedule Dr. Mann's deposition in January, as directed by the court at the November 4 status conference.

On November 7 an email was sent to Tom Muzyka (attached as Exhibit "A")

> On Dr. Mann, we have been in contact with him to let him know that this month in Connecticut is not good and that we needed dates in January [per the order of the Court]. Turns out he spends half his time here, in Boca Raton, during the winter months, so we would like to do his deposition here. He gave us the following dates: January 2 – 9 or 16 – 24. Let me know which date is best for you (a winter trip to Florida can't be all bad, right?)

On November 8 an email was sent to Tom Muzyka and Terry Kenneally (attached as Exhibit "B")

> Dr. Mann is anxious about his schedule and has asked us to firm up the date for his depo.

We still have received no response to either email. We did not want to upset or antagonize the doctor, who was waiting to hear from us and was an important witness, so once again we wrote to Messrs. Muzyka and Kenneally on November 16 (Exhibit "C")

> Before you get out of town [Tom had said he was going on an elk hunting trip], can we firm up a date for Dr. Mann? Call me. Thanks. Jeff

There was no reply by either of them to that email, or to the 3 phone messages to each of them by the undersigned about setting Dr. Mann's deposition.

The undersigned tried once more, on November 17, by email to Messrs. Muzyka and Kenneally (Exhibit "D")

> I hate to trouble you, but we need to get back to Dr. Mann with dates for his depo. I have emailed and called you and Terry a few times but no one has gotten back to me. Dr. Mann has asked us to firm this up and I do not want to upset him. Would you please let me know where you are with this.

Still no response. No dates, no comments about the location. Nothing. So we set the deposition to accommodate Dr. Mann and our schedules and sent a notice on December 28 along with another email (attached as Exhibit "E").

Then they complained. And they complain about an unanswered phone call to the undersigned made to him when they knew he was out of the country and unreachable.

<u>The Real Deal on the "New" Records and How Much Time Will it Take Dr. Mann to Review them</u>

We knew the records were meaningless. At the same time we did not want to be accused of denying these defendants a full opportunity to test their doctor's opinion. However, we also wanted to complete the Dr. Mann exercise before the upcoming status conference so that we could announce ready knowing all loose ends had been tied. So we sent the "recently obtained" records[4] to Dr. Mann to review. We agreed to pay him for his time and for a supplemental report. It did not take him long to do it, either. He told us he does not read films and relies on reports only, so he did not want to see them. Dr. Mann sent us his final supplemental report yesterday (attached as Exhibit "F").

---

[4] We believe they are not recently obtained, as St. Paul either had them or had the ability to have them and did not pursue them until just now. St. Paul should not be allowed to sit on its hands and then complain that it needs more time.

He sums up, as follows

> I did not interpret the x-rays as I am not a radiologist.
>
> My impression remains the same as originally stated, that the patient sustained right-sided anosmia and left-sided hyposmia due to her head injury. It is my feeling that the losses are permanent.

Further on the Dr. Mann issue. The reason we wanted to depose him was to perpetuate his testimony for use at trial. We wanted a videotape because we mistakenly believed that this was a jury trial[5]. When we realized our error we conferred with the client to see if she wanted us to make a jury trial demand and she has agreed to waive that right, so this will be a non jury trial. On Dr. Mann there really is no reason to go to the time and expense to depose him. He was hired by the defendants and they disclosed him as a trial witness. His report should be all that is needed on the medical issue and we request the court to inquire of the defendants if they will stipulate to his reports as proof of the injury and causation. Alternatively, we have asked the defendants if they would agree to allow Dr. Mann to testify by telephone, to explain to the court the tests he performed and his diagnosis/opinion. We have received no response to that request and ask the court to inquire of the defendants, as well.

As far as Dr. Mann's review, it is done. Unless the defendants have anything else to show the doctor that might be relevant to his opinion, there is no need to delay this

---

[5] The notice scheduled the deposition on a Saturday and as soon as that was brought to our attention we apologized and agreed to reset it for any day the prior week. The defendants never responded with a date. Rather, they filed this motion.

matter further on account of Dr. Mann. And if they do, they should tell us what it is. We asked by email yesterday, but have received no response.

Plaintiff requests the court schedule mediation for early February (this is a non-jury trial and plaintiff is willing to allow this court to conduct the mediation) and, if mediation is unsuccessful, to proceed right to trial. If the Dr. Mann issue is resolved and liability stipulated to, the trial will simply be plaintiff's testimony, which might take an hour.

For the record, plaintiff withdraws and cancels the Dr. Mann deposition that is now scheduled and awaits a ruling from the court before acting on it further.

Respectfully submitted,

"/s/ *Jeffrey A. Miller*"

Jeffrey A. Miller, Esq.

CERTIFICATE OF **SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S. Mail and facsimile to Thomas J. Muzyka, Esq., One Washington Mall, Suite 1400 Boston, Massachusetts 02108 on January 13, 2006.

"/s/ *Jeffrey A. Miller*"

Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300

Fax 561.347.7588
Florida Bar No. 308358

and

Steven D. Miller, Esq.
817 S. University Drive, Suite 122
Plantation, Florida 33324
Tel. 954-472-0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862

and

Michael Ascher, Esq. (local counsel)
P.O. Box 667
Hampden, MA 01036
Tel. 413.566.3878
Fax 413.566.3437

Page 1 of 1

Subj: Re: EVANS vs. NANTUCKET SAILING et. al.
Date: 11/7/2005
To: tmuzyka@clinmuzyka.com
CC: sdm1059

Dear Tom,

December 8 at 10 a.m. at your office is good for Ms. Evans' depo. You needn't send a formal notice.

On Dr. Mann, we have been in contact with him to let him know that this month in Connecticut is not good and that we needed dates in January. Turns out that he spends half his time here, in Boca Raton, during the winter months, so we would like to do his deposition here. He gave us the following dates: January 2 - 9 or 16 - 24. Let me know which date is best for you (a winter trip to Florida can't be all bad, right?).

One last thing. I have been thinking about an alternative dispute resolution process and would like to know if you would consider letting Judge Bowler mediate and, if unsuccessful, going right into a binding arbitration/non-jury trial with her presiding. We could probably do the whole thing in half a day. We have not spoken to the client about this, yet, but are prepared to recommend it, and would like to hear your thoughts.

jeff

"A"

Page 1 of 1

Subj:   Re: EVANS vs. NANTUCKET SAILING et. al.
Date:   11/8/2005
To:     tmuzyka@clinmuzyka.com, tkenneally@clinmuzyka.com

Brother Tom,

Dr. Mann is anxious about his schedule and has asked us to firm up the date for his depo.

Jeff

"B"

Page 1 of 1

Subj: evans v. nantucket sailing
Date: 11/16/2005 9:03:32 AM Eastern Standard Time
From: BiteTheHook
To: tmuzyka@clinmuzyka.com, tkenneally@clinmuzyka.com
CC: Sdm1059

Hi Tom,

Before you get out of town, can we firm up a date for Dr. Mann?  Call me.

Thanks.

Jeff
561.445.6962

"C"

Page 1 of 1

Subj: evans v. nantucket sailing
Date: 11/17/2005 3:54:11 PM Eastern Standard Time
From: BiteTheHook
To: tmuzyka@clinmuzyka.com, tkenneally@clinmuzyka.com
CC: Sdm1059

Hi Tom and Terry,

I hate to trouble you, but we need to get back to Dr. Mann with dates for his depo. I have emailed and called you and Terry a few times but no one has gotten back to me. Dr. Mann has asked us to firm this up and I do not want to upset him. Would you please let me know where you are with this?

Tom, we are also talking to the client about the mediation/arbitration/non-jury trial idea and signing a waiver allowing Judge Bowler to preside. Is your carrier interested?

Jeff

"D"

Page 1 of 1

Subj: evans v. nantucket sailing
Date: 12/28/2005 1:20:10 PM Eastern Standard Time
From: BiteTheHook
To: tmuzyka@clinmuzyka.com, tkenneally@clinmuzyka.com
CC: Sdm1059

Dear Tom and Terry,

I noticed Dr. Mann's deposition for January 21, 2006 in Boca Raton.

I plan on announcing ready for trial at the upcoming status conference, as you know. Your carrier certainly knows all it needs to know to assess the case and for you to try it, so I will also be requesting expedited mediation and trial dates. Would you consider a mediation conference before Judge Bowler at the same time as the status conference, subject to the judge's availability, or shortly thereafter? I will prepare an agreed upon motion if you are willing. I assume you have rejected my suggestion for a bench trial, since I have not heard back from you on that, so I won't press the issue with Ms. Evans.

If there is anything else you need that I might be able to help you with, let me know and, as always, I will do my best to accomodate you.

Thanks guys. I hope you had a Merry Christmas and that the New Year is a healthy and prosperous one for you both and your families.

Best,

Jeff Miller

"E"



# UCONN MEDICAL GROUP
## TASTE AND SMELL CENTER

January 7, 2006

Attorney Steven Miller
817 South University Dr., Suite 122
Plantation, FL 33324

RE:  Julianne Evans
     200 Jaracanda Drive
     Plantation, FL 33324
MRN: T01156464
DOB: 12/31/1967

Dear Attorney Miller:

I have reviewed additional records sent to me in the case of Julianne Evans, injured on July 5, 2002. These include records from Matchett [NANTUCKET] Hospital on July 5, 2002, at which time radiologic views of the neck and head were done. No fractures were noted.

On August 8, 2002, the patient was also evaluated at Matchett [NANTUCKET] Hospital for a left ankle injury.

On August 28, 2002, the patient had an evaluation at that same hospital for a sore right wrist.

The patient was evaluated on September 18, 2002, by Ackland Sports Medicine for wrist, neck and ankle pain.

The patient had a neurosurgical consult with Dr. Hubert Rosomoff on April 9, 2003, regarding her head complaints and loss of smell.

On June 24, 2003, the patient was seen by Dr. E. Lugo at Westside Regional Medical Center for neck pain. On June 12, 2003, the patient was seen by Dr. Paul Flaten, a neurologic consultant, who noted that the patient had a cerebral contusion and permanent loss of smell and taste.

On July 9, 2003, the patient had a neurologic consultation with Dr. Ronald Wagner.

The patient also received physiotherapy from the offices of Dr. Jack Trainor in Florida in April and June of 2004.

On November 27, 2004, the patient was seen at Westside Regional Medical Center by Dr. William Campbell. The neurosurgical consult there was Dr. Juiliarno Pasarin. The complaint was neck pain.

On October 30, 2004, the patient was seen for physiotherapy for neck and left foot distress by Jan Chamberlain. Reports of radiologic views of the head, neck and ankle have been reviewed (including CAT scans and MRI studies).

University of Connecticut Health System * Kevin V. Dowling, M.D., Medical Office Building South
263 Farmington Avenue * Farmington, CT 06030-6228 * Tel: (860) 679-2804 * Fax: (860) 679-1848
* An Equal Opportunity Employer *

C: 01/10/2006 08:30

"F"

I did not interpret the x-rays myself as I am not a radiologist.

My impression remains the same as originally stated, that the patient sustained right-sided anosmia and left-sided hyposmia due to her head injury. It is my feeling that the losses are permanent.

Truly yours,

*[signature: Norman Mann]*

Norman M Mann, MD*

Dictated By: Norman M Mann, MD*
TRID: 200601080990966700   DP: 01/08/2006 16:32   DD: 01/08/2006 14:09   DT: 01/08/2006 16:30   TID: 14125