**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CIVIL ACTION**
**NO. 05-10088-MBB**

**JULIANNE MARIE EVANS**
**Plaintiff,**

**VS.**

**NANTUCKET COMMUNITY SAILING, INC.,**
**RONAN O'SIOCHRU and DONNCHA KIELY**
**Defendants.**

**DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL FROM FURTHER REPRESENTATION OF THE PLAINTIFF**

Now come the defendants, Nantucket Community Sailing, Inc., Ronan O'Siochru and Donncha Kiely, in the above captioned action, by and through their undersigned counsel, and respectfully move this Honorable Court to disqualify plaintiff's counsel from further representing the plaintiff and prosecuting this matter pursuant to the provisions of the Local Rules of the United States District Court for the District of Massachusetts and the Massachusetts Rules of Professional Responsibility.

As grounds in support of this motion, the defendants submit the following.

**BACKGROUND**

After receiving a claim that the plaintiff had lost her taste and smell as a result of the underlying incident in this action, defense counsel engaged Norman Mann, M.D. as the

defendants' medical expert to examine the plaintiff and determine the nature, extent, and cause of her alleged loss of taste and smell.[1] Dr. Mann was formally retained in May 2004. Thereafter, an agreement was reached with plaintiff's counsel to produce his client for a medical examination, which was conducted before the commencement of this action.[2]

Before the plaintiff's medical examination, defense counsel attended a meeting with Dr. Mann in Farmington, Connecticut on September 22, 2004. At that meeting, Dr. Mann explained the nature of the proposed examination, the extent of the subjective/objective findings, and responded to counsel's inquiry about the scientific certainty of his methodology and areas which may be addressed in cross-examination at trial. During the one [1] hour meeting with Dr. Mann, defense counsel provided his trial strategy and substantive concerns of the plaintiff's claim. Dr. Mann advised that he testified on several occasions for both plaintiffs and defendants. He explained that he was experienced in both State and Federal Courts and was qualified as an expert in this field.

---

[1] Dr. Mann is the Director of the Chemosensory Clinic at the University of Connecticut Health Center in Farmington, Connecticut. Dr. Mann's clinic is also known as the UCONN Taste and Smell Center, which is one of the prominent chemosensory clinics located in the United States.

[2] The plaintiff's examination was initially scheduled to be conducted on October 20, 2004. The examination lasted for three [3] consecutive days. The examination required that the plaintiff travel from Florida to the UCONN Taste and Smell Clinic in Farmington, Connecticut.

Dr. Mann and his colleagues examined the plaintiff at the UCONN Taste and Smell Clinic from October 27, 2004 through October 29, 2004. The defendant paid for all of the testing and services at the UCONN Taste and Smell Clinic, including reimbursing the plaintiff for incurred out of pocket and travel expenses.[3] At the conclusion of the examination, Dr. Mann authored three [3] reports concerning the examination. The reports disclosed his opinions concerning the plaintiff's medical complaints and condition. Copies of Dr. Mann's reports were subsequently provided to plaintiff's counsel on April 1, 2005.[4]

On January 13, 2005, plaintiff's counsel filed a Complaint along with a Motion for Leave to Appear Pro Hac Vice with this Court. On January 28, 2005, this Honorable Court allowed the plaintiff's Motion for Leave to Appear Pro Hac Vice. On February 2, 2005, defense counsel filed a Notice of Appearance and Answer on behalf of the defendant, Nantucket Community Sailing, Inc., resulting in the joining of issues.

---

[3] A check in the amount of $1,383.95 was sent to the plaintiff's counsel on November 29, 2004.

[4] A copy of Dr. Mann's initial report, dated October 29, 2004, concerning the plaintiff's examination and related opinions was mailed to the plaintiff's counsel on December 20, 2004. Copies of Dr. Mann's subsequent reports, dated November 10, 2004 and November 12, 2004, concerning his opinions and medical records review were produced to the plaintiff's counsel in defendant's Automatic Disclosure on April 1, 2005.

At the last Status Conference, conducted on November 4, 2005, it was proposed by the parties and approved by this Honorable Court that the defendant would obtained the plaintiff’s deposition in December 2005 and that the plaintiff would obtain Dr. Mann’s expert deposition in January 2006. The Court also scheduled a Status Conference for February 1, 2006.

The parties continued with discovery and the plaintiff’s deposition was obtained on December 8, 2005. During that deposition, it was learned that the plaintiff had collected various CT Scans, MRI’s, X-rays and other films of her treatment at various facilities from the time of the incident to the present. Defense counsel requested that the plaintiff produce the films as soon as possible. Defense counsel intended to provide the films to Dr. Mann for his review and evaluation since they were not disclosed and considered during the plaintiff’s examination on October 27 through October 29, 2004.[5]

Following the plaintiff’s deposition, plaintiff’s counsel inquired about obtaining Dr. Mann’s deposition. Defense counsel suggested that plaintiff’s counsel contact Dr. Mann’s staff and obtain dates that were available and revert back for a mutually convenient time. During the

[5] Dr. Mann requested that the plaintiff produce the films following his examination.

early part of January 2006, the parties were unable to schedule Dr. Mann's deposition because it was learned that he would be vacationing in Florida in January and February 2006.

On December 28, 2005, a Notice of Video Deposition of Dr. Mann to be conducted at his rental home in Boca Raton, Florida on Saturday, January 21, 2006 was received from plaintiff's counsel without any further consultation with defense counsel. The deposition conflicted with defense counsel's preparation for trial in another matter, which was scheduled to commence on Monday, January 23, 2006. Accordingly, defense counsel filed a Motion for a Protective Order, which was heard by the Court on January 17, 2006, and subsequently granted.

During the Motion for a Protective Order hearing, it was brought to the Court's attention that plaintiff's counsel contacted Dr. Mann in Florida without the knowledge or consent of the defendants or their counsel. The plaintiff's Opposition to the Motion for a Protective Order states the following:

> "…we sent the 'recently obtained' records to Dr. Mann to review. We agreed to pay him for his time and for a supplemental report. It did not take him long to do it either. He told us he does not read films and relies on reports only, so he did not want to see them. Dr. Mann sent us his final supplemental reports yesterday (attached as Exhibit 'F".)"

Upon learning of plaintiff's counsel ex parte contact(s) with the defendants' expert witness, defense counsel moved for an extension of time to contact Dr. Mann and to investigate the extent of his contact and communications with plaintiff's counsel. The Court granted the defendant's motion.

After attending the January 17th hearing, defense counsel met with Dr. Mann at his office in Farmington, Connecticut on February 9, 2006. During the meeting, Dr. Mann reviewed his medical opinions and confirmed that he expresses an opinion in his supplemental report that he did not previously submit to defense counsel. Dr. Mann also disclosed that plaintiff's co-counsel, Attorney Steven Miller, initially left a telephone message for him on January 1, 2006. Attorney Steven Miller then proceeded to call Dr. Mann on January 2nd and January 3rd and spoke with him at that time. On January 5, 2006, Dr. Mann reviewed the plaintiff's case materials in anticipation of a personal visit from Attorney Steven Miller. On January 6, 2006, Attorney Steven Miller visited Dr. Mann at his rental home in Boca Raton, Florida. <u>The meeting lasted approximately two [2] hours</u>. Dr. Mann discussed his examination of the plaintiff, responded to questions and reviewed his opinions.

Dr. Mann stated that Attorney Steven Miller pressed him on the issue concerning the permanency of the plaintiff's alleged injuries.

Dr. Mann also reported that he drafted his supplemental report, as requested by Attorney Steven Miller, after reviewing additional medical records provided by plaintiff's counsel. Following this meeting, Dr. Mann spoke with plaintiff's counsel by telephone on January 12th and January 13th addressing the content of his supplemental report. Defense counsel was not aware that Attorney Steven Miller was contacting and meeting with Dr. Mann at any time during this time period.

After meeting with Dr. Mann and discovering plaintiff's counsel's blatant violations of the Rules of Professional Responsibility and the Federal Rules of Civil Procedure, the defendants now seek relief to remove the inequitable and irreparable effects of the conduct by plaintiff's counsel.

## ARGUMENT

Rule 83.6(8)(A) of the Local Rules of the United States District Court for the District of Massachusetts states:

> Whenever an attorney applies to be admitted or is admitted to this court for purposes of a particular proceeding (pro hac vice), the attorney shall be deemed thereby to have conferred disciplinary jurisdiction upon this court for any alleged misconduct of that

> attorney arising in the course of or in preparation for such proceeding.

Attorney Steven Miller and Attorney Jeffrey Miller were admitted to appear before this Honorable Court on January 28, 2005 after this Honorable Court allowed the plaintiff's Motion for Leave to Appear Pro Hac Vice. Accordingly, under Rule 83.6(8)(A) this Honorable Court possesses disciplinary jurisdiction over plaintiff's counsel's repeated ex parte contact(s) with the defendants' disclosed medical expert, Dr. Norman Mann, from January 1 through January 13, 2006.

Rule 83.6(4)(B) of the Local Rules of the United States District Court for the District of Massachusetts states:

> Acts or omissions by an attorney admitted to practice before this court pursuant to this Rule 83.6, or appearing and practicing before this court pursuant to Rule 83.7, individually or in concert with any other person or persons, that violate the ethical requirements and rules concerning the practice of law of the Commonwealth of Massachusetts, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship. The ethical requirements and rules concerning the practice of law mean those canons and rules adopted by the Supreme Judicial Court of Massachusetts, embodied in Rules 3:05, 3:07 and 3:08 of said court, as they may be amended from time to time by said court, except as otherwise provided by specific rule of this court after consideration of comments by representatives of bar associations within the Commonwealth.

The Commonwealth of Massachusetts, like most States, adopted verbatim from the American Bar Association (ABA) Model Rules of Professional Conduct.[6] Rule 4.2 states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Comment 3 of Rule 4.2 provides some guidance for Courts in interpreting the Rule[7]:

> This rule applies to communications with any person, whether or not a party to a formal adjudicative proceeding, contract or negotiation, who is represented by counsel concerning the matter to which the communication relates. See the definition of "person" in Rule 9.1(h).

On May 28, 2004, defense counsel sent an email to plaintiff's counsel informing him that Dr. Mann was retained as a medical expert. In plaintiff's Opposition to defendant's Motion for a Protective Order, filed on January 13, 2006, plaintiff's counsel admits that the defendant disclosed Dr. Mann as its expert medical trial witness and "his report should be all that is needed on the medical issue."[8] Despite this knowledge concerning the undisputed legal relationship between Dr. Mann and the defendants,

---

[6] *See* ***Messing, Rudavsky & Weliky, P.C. v. President and Fellows of Harvard College***, 436 Mass. 347, 352, 764 N.E.2d 825, 829.
[7] *See* ***Wagner v. City of Holyoke***, 183 F. supp.2d 289, 291.
[8] *See* page 6 of plaintiff's Opposition to defendant's Motion for a Protective Order.

plaintiff’s counsel inexcusably and improperly telephoned Dr. Mann on several occasions and later met with him for some two [2] hours at his rental home in Florida to elicit his further opinions and impressions on the case.

Plaintiff’s counsel admitted in open court on January 16, 2006 that his firm solicited Dr. Mann’s opinions without informing the Court or the defendant’s counsel. The defendant submits that plaintiff’s counsel’s purposes were to adversely compromise and prejudicially influence the defendant’s medical expert’s testimony and opinions. Accordingly, the defendant submits that the plaintiff’s counsel’s admitted conduct is a blatant and undisputed violation of Local Rule 83.6 of this Honorable Court and Rule 4.2 of the Massachusetts Rules of Professional Responsibility. The plaintiff’s counsel’s firm and plaintiff’s local counsel, Michael Aschser, should properly be disqualified from further participation as plaintiff’s counsel in this action.

The Federal Courts possess the inherent power to disqualify counsel in certain circumstances. ***Cordy v. Sherwin Williams Co.,*** 156 F.R.D. 575 (D.N.J. 1994). *See also* ***North Pacifica, LLC v. City of Pacifica***, 335 F. Supp.2d 1045. This Honorable Court should adhere to the test

applicable to disqualification of counsel employing side-switching experts[9]: The applicable test is as follows:

1. Did Dr. Mann have confidential information pertaining to the defendant's trial preparation and strategy;

2. Did he disclose it to plaintiff’s counsel; and

3. If he did disclose it, does plaintiff’s counsel's continued representation of the plaintiff threaten to taint all further proceedings?

On September 22, 2004, defense counsel met with Dr. Mann in Farmington, Connecticut. During the one [1] hour meeting, defense counsel expressed instructions, views, impressions, testing issues and inquiries on the plaintiff’s allegations concerning her loss of smell and taste. It is also undisputed that defense counsel’s work product was disclosed to Dr. Mann through a review of the medical records, facts of the incident, the alleged physical complaints of the plaintiff’s incident, including the causes of such complaints as the loss of smell and taste.

It can only be presumed that Dr. Mann disclosed confidential information pertaining to the defendant's trial preparation and strategy to plaintiff’s counsel because plaintiff’s counsel failed to inform this Honorable Court or defense counsel that Dr. Mann was contacted and a supplemental written report was solicited from him. At the

[9] *See* ***North Pacifica, LLC*** at 1051 *citing to* ***Cordy v. Sherwin Williams Co.***, 156 F.R.D. 575, 583 (D.N.J. 1994).

plaintiff's deposition, Attorney Steven Miller agreed to stipulate that the plaintiff was not pursuing any claims for past lost wages or future lost earning capacity; was not pursuing any claims for any other sustained physical injury; and was not seeking reimbursement for sustained and unrelated medical expenses. Accordingly, her claim is limited to the value of her alleged loss of taste and smell and any medical costs associated with this condition and/or treatment.

Dr. Mann's newly reported opinion concerning the plaintiff's prognosis, which plaintiff's counsel surreptitiously obtained, address precisely the remaining damage issues to be litigated before the Court. Therefore, the presumption should be that Dr. Mann did in fact disclose confidential information pertaining to the defendants' trial preparation and strategy and plaintiff's counsel's continued representation of the plaintiff does in fact threaten to taint and prejudice all further proceeding in this matter.

In assessing the possibility that the trial may be prejudiced by an attorney's unethical conduct, this Honorable Court must bear in mind the fact that:

> The preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. Recognizably important the [plaintiff's] right to counsel of [her] choice···T[his] consideration must yield, however, to considerations of

> ethics which run to the very integrity of our judicial process. ***MMR/Wallace Power & Indus., Inc. v. Thames Associates***, 764 F.Supp. 712, 718 (D. Conn. 1991) *citing to* ***Hull v. Celanese Corporation****,* 513 F.2d 568, 572 (2nd Cir.1975).

Since plaintiff's counsel failed to disclose the ex parte contact with Dr. Mann, including the two [2] hour meeting at Dr. Mann's home in Florida, it follows that further egregious conduct could continue in future proceedings in this matter. As eloquently and appropriately stated in ***Hull***, the integrity of the bar and the judicial process outweighs any other considerations in this regard. "Any doubt is to be resolved in favor of disqualification." ***Hull*** at 571. Further, an attorney's disqualification extends to the entire firm and any other associated attorneys, because when attorneys practice and work together, they presumptively share access to privileged and confidential matters. ***North Pacifica, LLC*** at 1051, *citing to* ***People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.****,* 20 Cal.4th 1135, 1146, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999). The disqualification rule "recognizes the everyday reality that attorneys, working together and practicing law in a professional association, share each other's, and their client's, confidential information." ***Id.*** Vicarious disqualification is necessary to preserve both the confidentiality of client information, as well as public

confidence in the legal profession and the judicial process by enforcing the attorney's duty of undivided loyalty. ***Id.*** *citing to* ***City of Santa Barbara v. Superior Court****,* 122 Cal.App.4th 17, 24, 18 Cal.Rptr.3d 403, 408 (2004). Accordingly, in the interest of justice and fairness, the defendants submit that Attorney Jeffery Miller, Attorney Steven Miller and plaintiff's local counsel, Michael Aschser, must be disqualified from further representing the plaintiff and prosecuting this matter.

**WHEREFORE**, the defendants pray that this Honorable Court grant its Motion to Disqualify the plaintiff's attorneys from further representing the plaintiff in this matter.

The defendants also request reasonable attorney's fees and costs associated with this motion.

Respectfully submitted by their attorneys,

**DEFENDANT**
**CLINTON & MUZYKA, P.C.,**

"/s/ Thomas J. Muzyka"
**Thomas J. Muzyka**
**BBO NO. 365540**
**Terence G. Kenneally**
**BBO NO. 642124**
One Washington Mall
Suite 1400
Boston, MA 02108
617-723-9165

**LOCAL RULE 7.1(A)(2) CERTIFICATE**

Boston, MA February 24, 2006

I, Terence G. Kenneally, hereby certify that I attempted to confer with plaintiff's counsel concerning the resolution of the circumstances surrounding plaintiff’s counsel’s ex parte contact with Norman Mann, M.D. as detailed herein. I telephoned plaintiff’s counsel, Jeffery Miller, but was unable to connect directly with him. When plaintiff’s counsel could not be reached by telephone, this Motion was filed with this Honorable Court.

“/s/ Terence G. Kenneally”
Terence G. Kenneally