UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088MBB

JULIANNE MARIE EVANS,

    Plaintiff,

v.

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,
RONAN O'SICOHRU and DONNCHA
KIELY,

    Defendants.
_____/

**Response to Motion for Clarification**

Undersigned counsel files this response to the plaintiff's motion for clarification and states the following:

The undersigned's contact with Dr. Mann did not violate any rule of procedure, evidence, ethics or otherwise as discussed in the plaintiff's response to the defendants' motion for disqualification (docket entry 41, exhibit A) and the March 16th order of disqualification made no such finding[1]; rather, Dr. Mann was disqualified based upon the court's "inherent power to disqualify an expert to preserve the public confidence in the fairness and integrity of the judicial proceedings." citing, LaCroix v. BIC Corp., 339 F.Supp. 196, 199-200 (D.Mass. 2004) and Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 277-278 (S.D. Ohio 1988).

---

[1] As the court recalls, no testimony was taken at the March 15 hearing as the plaintiff agreed (following disclosure of the court's concern regarding the "relationship" with Constance Rudnick, Esq.) to allow the court to rule on the motions for disqualification based solely upon the motions and argument of counsel.

### Communications with plaintiff regarding contact with Dr. Mann and responsibility for payment of the costs

Mr. Cantor's belief that the undersigned's position regarding plaintiff's responsibility for the Dr. Mann costs is based solely upon the Florida Bar's standard contingency fee retainer agreement is misplaced.

To properly respond to the controversy between the plaintiff and the undersigned, the undersigned reasonably believes that is necessary to reveal confidential communications pursuant to Rule 1.6 of the Massachusetts Rules of Professional Conduct and Rule 4-1.6 of the Florida Rules of Professional Responsibility. Further, plaintiff has waived the attorney/client privilege regarding "ANY and ALL communications . . . ." [2]

During the plaintiff's deposition in December 2005, issues arose regarding the examination at UCONN.[3] Following the deposition, plaintiff and the undersigned discussed how to address these issues in light of the fact that we had been trying, albeit unsuccessfully, to schedule the deposition of Dr. Mann since the November 2005 status conference. Dr. Mann was accessible, we were trying to schedule his deposition to perpetuate his testimony and we needed answers to questions, which in the opinion of the undersigned and the plaintiff were red herrings. We discussed whether it was appropriate for the undersigned to talk to Dr. Mann, an IME retained by the insurance company before litigation, about substantive matters. In that regard, plaintiff was advised as follows:

    (1) that in prior cases, the undersigned had contacted and discussed substantive matters with IME's and retained experts;

---

[2] Despite the complete waiver, the emails referenced herein are not attached (they were sent to plaintiff's new counsel) as the undersigned has been advised that doing so would, under the circumstances, be a violation of the Florida Rules of Professional Responsibility.

[3] The issues included, but were not limited to, x-rays, medical records and medical history of the plaintiff.

    (2) that there is no rule of procedure, evidence or ethics which prohibits such contact, but that Dr. Mann could simply refuse to talk about anything other than the scheduling of his deposition;

    (3) that defense counsel may not like the fact that the IME was contacted, assuming he agreed to talk, and may seek some type of relief with the court.

Plaintiff wanted the deposition "loose ends" tied up as quickly as possible and endorsed the undersigned's contact with Dr. Mann, both on the phone and at his home.

Defense counsel's objection to the undersigned's January 6, 2006 meeting with Dr. Mann[4] was discussed at the January 17 hearing on the defendants' motion for protective order. Following that hearing, plaintiff advised that she spoke with her friend, Steven Moody, a "past president of the Florida Bar"[5] regarding the undersigned's contact with Dr. Mann. She advised that Mr. Moody told her "it's the sign of a good lawyer and shows that he knows what he's doing." She was confident in her case and lawyer:

    **"I highly doubt they (Bowler or C&M) will ax Mann as an expert.... 3 docs all say the same thing and like they're going to pay another $10k to get the same answer somewhere else?"**

    **"I think what you did was clever and a sign of being a good lawyer [for me]."**

<u>January 17, 2006 email from Julianne Evans</u>.

Defendants' motions to disqualify counsel and Dr. Mann were filed on February 24, 2006. The motions were sent to and discussed with the plaintiff and she was well aware of the relief being sought.

By order dated March 16, 2006 the court disqualified Dr. Mann and ordered that "plaintiff will make the defendants whole by paying the costs incurred to date in retaining Dr. Mann . . . ." Plaintiff was not troubled by the order of disqualification:

---

[4] A copy of Dr. Mann's supplemental report received on January 12 was attached to plaintiff's January 13, 2006 response to defendants' motion for protective order.
[5] Plaintiff later advised that Mr. Moody was past president of the Broward County Bar Association, not the Florida Bar.

"I don't think losing Mann is such a big deal . . . I think it's a big deal to all of our egos that we 'lost.'"

"P.S. Just because what you did was unconventional to Bostonians doesn't make it as egregious as this judgement implies."

March 17, 2006 email from Julianne Evans.

Plaintiff had 2 choices: appeal or not. On March 17 plaintiff advised the undersigned that she wanted to appeal the order of disqualification. Over the next several days, we discussed the pros and cons of an appeal. Plaintiff was advised that if she chose not to appeal, she would be responsible for the Dr. Mann costs and would not be able to call him as a witness.[6] On March 21, 2006 plaintiff knowingly and voluntarily executed a written waiver of her right to appeal.

## Conclusion

Plaintiff went "into" the Dr. Mann meetings with eyes wide open. She knew and accepted the potential risks associated with authorizing her lawyer to contact Dr. Mann, the IME. She knowingly and voluntarily waived her right to appeal the order of disqualification in its entirety. The motion for clarification should be denied.

Respectfully submitted,

/s/ Steven D. Miller
Steven D. Miller, Esq.
817 S. University Drive, Suite 122
Plantation, Florida 33324
(954) 472-0776
(954) 472-0875 (fax)
Florida Bar No. 508187
B.B.O. # 560862

---

[6] Whether she would have been allowed to call Dr. Mann, the IME, as a witness in her case in chief, is an issue that was not reached; although, at the March 15 hearing Mr. Muzyka alluded to the fact that he would not have agreed to it.

/s/ Jeffrey A. Miller (sdm)
Jeffrey A. Miller, Esq.
2424 N. Federal Highway, Suite 314
Boca Raton, Florida 33431
(561) 392-4300
(561) 347–7588 (fax)
Florida Bar No. 308358

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through ECF on Thomas J. Muzyka, Esq., One Washington Mall, Suite 1400, Boston, Massachusetts 02108; Alan Cantor, Esq., David Angueira, Esq. and Edward Swartz, Esq., Number 10 Marshall Street, Boston, MA 02108.

Dated: May 18, 2006        /s/Steven D. Miller
                           Steven D. Miller, Esq.