UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.:  05-10088 MBB

JULIANNE MARIE EVANS,          *
                               *
            Plaintiff,         *
                               *
                               *
vs.                            *
                               *
                               *
NANTUCKET COMMUNITY            *
SAILING, INC., a Massachusetts *
Corporation, RONAN O'SIOCHRU   *
and DONNCHA KIELY,             *
                               *
            Defendants.        *

**PLAINTIFF'S MOTION TO REVOKE STIPULATION
LIMITING CLAIMS FOR DAMAGES TO
THOSE RELATED TO LOSS OF TASTE AND SMELL**

        Now comes the plaintiff and moves that the court enter an order allowing her to

revoke her stipulation limiting her personal injury claims to those relating to her loss of

taste and smell.  As grounds therefor, plaintiff says as follows:

1.    This action arises out of an incident on July 5, 2002 when the plaintiff sustained
      serious injuries while on a sailboat operated by one of the defendants.

2.    From the initiation of this litigation, plaintiff claimed to have sustained injuries
      other than her loss of taste and smell.  Thus, in her original Complaint, filed on
      January 13, 2005, the plaintiff claimed to have sustained "serious and permanent
      injuries...including injuries to her neck and back and the permanent loss of her
      sense of smell and taste."  Similar allegations were contained in her Amended
      Complaint, filed on June 15, 2005.

3.    In addition, plaintiff produced even prior to the initiation of this litigation
      comprehensive and complete medical information relating to all her injuries.  She
      provided a statement to defendants' insurer and attended an independent medical
      examination scheduled by defendants' insurer.  Please see Plaintiff's Response To

Request For Production, Answers to Interrogatories and Comprehensive Medical History, attached as Exhibits "A", "B", "C" and "D".

4. However, based on advice given to her by her prior attorney (See Affidavit of Julianne Evans, attached as Exhibit "E"), Ms. Evans agreed to stipulate to limit her claims for personal injury to those relating to her loss of taste and smell. This position is set forth both in a Status Report filed by her prior attorney, attached as Exhibit "F" and in the transcript of Ms. Evans' deposition, the pertinent pages of which are attached as Exhibit "G".

5. In the course of the incident, Ms. Evans sustained serious injuries to her neck and back and other portions of her body, has had extensive and continuing medical treatment and continues to suffer from the effects of these injuries. She has recently been diagnosed with post-concussion syndrome. This diagnosis had not been made and could not have been anticipated prior to Ms. Evans agreeing to the waiver. Moreover, the advice given to the plaintiff by her prior attorney not to seek recovery for her other injuries was misguided and unwarranted.

6. For these reasons, Ms. Evans seeks relief from her stipulation to limit the injuries for which she seeks recovery. She will agree to reappear for deposition limited to questions relating to these injuries, produce any further medical records relating to these injuries and, if necessary, appear for a reasonable medical exam at the office of a physician selected by the defendant. Accordingly, the defendants will not be prejudiced by allowance of this motion.

7. In further support of her motion, Ms. Evans files a memorandum of law herewith.


Respectfully submitted,


   s/Alan L. Cantor
Edward M. Swartz
BBO #489540
Alan L. Cantor
BBO #072360
David P. Angueira
BBO #019610
Swartz & Swartz
10 Marshall Street
Boston, MA 02108
617-742-1900

2

## <u>CERTIFICATE OF SERVICE</u>

I, Alan L. Cantor, Esq. do hereby certify that the foregoing document was served on the following counsel on this date and in the manner specified herein:

Electronically Serviced Through ECF:

Steven D. Miller, Esq.   Richard A. Gargiulo, Esq.
817 S. University Drive, Suite 122  Gargiulo, Rudnick & Gargiulo
Plantation, FL 33324    66 Long Wharf
           Boston, MA 02110

Jeffrey A. Miller, Esq.    Thomas J. Muzyka, Esq.
2424 North Federal Highway, Suite 314 Clinton & Muzyka, P.C.
Boca Raton, FL 33431    One Washington Mall, Suite 1400
           Boston, MA 02108

This 31st day of August, 2006.

            s/Alan L. Cantor
          Alan L. Cantor

3



# NEUROLOGIC CONSULTANTS PA.

PAUL A. FLATEN, M.D.

H. MURRAY TODD, M.D.

THOMAS C. HAMMOND, M.D.

MARC A. SWERDLOFF, M.D.

JONATHAN O. HARRIS, M.D.

SETH C. TARRAS, M.D.

TODD A. ROSENZWEIG, M.D.

DONALD E. NORMAN, M.D.*
*EMERITUS

Neuropsychology:

MARK E. TODD, Ph.D.

AIMEE N. STALEY, Psy.D.

Research-Clinical Coordinator:

MARGARET SCOTT, R.N.

FORT LAUDERDALE
1641 N.E. 45th STREET
FORT LAUDERDALE, FLORIDA 33308
954 / 776-5010
FAX: 776-6055

POMPANO BEACH
MARIETTA BLDG., SUITE 200
50 EAST SAMPLE ROAD
POMPANO BEACH, FLORIDA 33064
954 / 942-3991
FAX: 941-4604

REPLY TO:

June 12, 2003


RE:  EVANS, JULIANNE
Chart. #: 183269IME          REF:  Brian G. Morrissey


### INDEPENDENT MEDICAL EXAMINATION

Julian Evans is a 40-year-old lady whose independent medical examination has been requested by Brian Morrissey.

Multiple medical records have been made available for this examination, which will be summarized chronologically in the body of this report.

On 07/05/02, Julian Evans was on a sailboat when another sailboat impacted the boat in which she was riding and the boom from this other sailboat swung in such a manner that it struck her in the back part of her neck and she was thrown forwards, headfirst into the bottom of the boat. She reports that she was rendered unconscious and remained unconscious for 20 minutes. She was taken to the Nantucket Cottage Hospital and reports that after she had regained consciousness and while still in the emergency room, she found herself unable to feel or to move her extremities. She was in and out of consciousness during this time of paralysis, of some 5 1/2 hours.

In the hospital, they kept asking her if she could move her arms or legs. She had a CT scan of her brain and was told that she had sustained a concussion. She recovered well enough so they would allow her to be discharged. She was given Percocet for pain. With subsequent headache and neck pain, she spent the next 10 days in bed. There were two young people that cared for her during this time. She even called the emergency room and advised them of her neck pain and headache. They told her that she just needed to take Percocet and to anticipate that her symptoms were all because of the concussion that she suffered.

Fort Lauderdale
Office

continued...          000785

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Two

Some 3 weeks later, she was out walking and twisted her ankle and
fell. She returned to the Nantucket Cottage Hospital, where x-rays
were taken and she was advised she had sustained a severe sprain of
her left foot. She was given crutches and put in a soft ankle
cast. She subsequently developed severe pain in her right wrist,
so, about 3 weeks later she went to the Nantucket Cottage Hospital
emergency room and had an x-ray and was said to have had a wrist
fracture. She was placed in a right wrist cast. Sometime during
this ordeal, she began to experience low back and sometimes midback
pain, along with her persistent pain in the left ankle and of her
right wrist. She went to see a neurologist in Cape Cod, on the
mainland, and was seen on 09/19/02. An MRI scan study of her neck
and of her right wrist were taken. She put back in her right wrist
splint. She was told she had bulging discs in her neck and that
she needed physical therapy.

She did not receive any physical therapy and left in the middle of
October and returned to Michigan. Having driven to Michigan, her
neck was much worse.

She was finally able to get here to South Florida and was finally
seen by an orthopedist, who told her that he primarily worked with
knees and he reportedly could not help her. Being very frustrated
at the inability to get medical care and especially the physical
therapy that was advised, she saw Dr. Rosomoff at the University
of Miami, where he too felt she needed extensive physical therapy.
To this date, this has not been possible. She has seen no other
doctors since April and she remains with her symptom complex. Her
only medications have been Ibuprofen.

Other then the flare-ups of her neck pain when she drove from Cape
Cod to Michigan, and then from Michigan to Florida, where she
transiently had increased neck discomfort, she has found that as
long as she does not bike ride or do any other strenuous activity
that her levels of pain are less severe.

Her symptoms are quite variable and tend to be dependent upon her
level of activity; but she does have chronic posterior cervical
neck pain, which when severe, causes her to develop her headaches
that seem to initially be occipital and radiate anteriorly
throughout her cranium. She will have periods of spasms of the mid
thoracic spine, about the level of her bra line. She will have
periods of low back pain, which when more severe will limit her
bending and lifting activity. Her inactivity has resulted in an 18
pound weight gain over this past year. There has been no radicular
pain in either her upper or lower extremities. She will, on
occasion, awaken at night with her arms and hands numb. She has to
move them quickly and as she does so, the feelings return. There
have been no arm or hand paresthesias that occur during the day.

Continued......                    000786

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Three

She has not had any shocks of pain or paresthesias in relationship to her head and neck movements.  Her lower extremities are without pain.  Her mild gait disturbance, related to her Charcot-Marie-Tooth disease and the multiple surgeries that she has had on her feet, do tend to cause some mild gait disturbance but basically are unchanged from that prior to her injury on 07/05/02.

Although there have been headaches associated with her episodes of severe neck pain, she feels that her overall thinking, her memory, her ability to concentrate, to speak, read, write and understand have been unaffected.  She has been aware that she has lost the sense of smell and taste since the accident of 07/05/02.  She denies symptoms of any visual disturbance, such as diplopia, blurring or scintillating scotomas.  There has been no vertigo, no lightheadedness, tinnitus, nor hearing loss.  Her speech and swallowing have been unaffected.

She has never been involved in any prior accidents, no prior head injuries.  She reports that her only other history includes that of six foot surgeries, five on the left and one on her right foot, done when she was at the ages of 15 to 20.  She otherwise feels that she is in excellent health.  There is no history of syncope or seizures.  She works in real-estate and goes to Nantucket, where she writes.

There is a familial history of two members of her family that have Charcot-Marie-Tooth disease.

REVIEW OF PROVIDED MEDICAL RECORDS:

o    07/05/02 - Emergency room, Nantucket Cottage Hospital, where the patient is recorded to have been struck on the back of her neck by a sailboat boom, some 30 minutes ago.  She was said to have been in and out of consciousness for 10 minutes.  She was awake and oriented during EMS transport.  She complained of pain in her neck and had no other injuries.  She had a known neurological problem involving her feet.  She was said to be alert and anxious.  The left side of her neck muscles were tender.  She was removed from the board and her collar.  Her neck exam was said to have been normal.  She remained alert times 3.

According to another emergency room note, she had been struck by the boom of a sailboat.  She had loss of consciousness for 10 to 15 seconds.  She remembered the events of the accident.  A head CT scan was performed.  She had been struck on the occiput by the sailboat boom.  There was no abnormality identified.

Continued.......            000787

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Four

**REVIEW OF PROVIDED MEDICAL RECORDS:** (continued ......)

o    07/05/02 - Emergency room, Nantucket Cottage Hospital
(continued)....

She had an x-ray of her cervical spine.  There was loss of normal
lordosis.  A 2mm anterolisthesis of C4 on C5 disc spaces, etcetera,
were well observed.  The impression was a 2mm anterolisthesis of C4
on C5, with no fracture identified.  She was to be discharged, to
apply ice and to use Percocet for pain.  She was discharged with a
diagnosis of neck contusion.

o    08/08/02 - Emergency room visit in Nantucket Cottage Hospital.
She reportedly presented with pain in her left foot and ankle,
which occurred just prior to her arrival.  She twisted this on the
sand and heard a pop and had pain in the ankle, which was
moderately severe.  She could not bear weight.  She had swelling of
the lateral aspect of the left ankle.  She was put in an air cast
and provided crutches.  She refused the need for pain medicine.
One other note indicated that she had slipped on the sand and felt
a snap in her left ankle and heel with swelling.  She complained of
numbness of her left foot and pain under her left heel.  An x-ray
of her left foot showed evidence of bony fusion of the first digit
interphalangeal joint.  Hallux valgus, metatarsus adductus was
present.  There was no displaced fracture seen.  X-ray of the left
ankle showed no displaced fracture.  After the air cast and
crutches were given, she was allowed to be discharged.

o    08/28/02 - Emergency room record, Nantucket Cottage Hospital.
Patient presented with pain in her right wrist.  She gave a history
of having fallen 3 weeks earlier and sustained an ankle sprain.
Over the past 10 days, she complained of pain in the wrist,
secondary to that fall.  An x-ray of the right wrist was read as
showing a small fracture involving the ulnar styloid process.  Soft
tissue swelling was seen.  The joint space was intact, etcetera.
The impression was an ulnar styloid fracture.  The patient was
placed in a cock-up wrist splint and was allowed to be discharged.

o 09/18/02 - At the Ackland Sports Medicine, Inc.  in Hyannis
Massachusetts.  The patient was seen by Michael K.  Ackland, M.D.
As dictated by Mark Colucci, PA-C, where they reported her
accident.  Subsequent to that time, she had continued to have pain
along her cervical spine, which had now gone into her lower back.
She gave a history that on 08/08/02, she slipped and injured her
left ankle and right wrist and at the Nantucket Cottage Hospital,
was told she had an ankle sprain.  She had been getting around on
the air cast boot with crutches, then began to develop a lot of
pain in her right wrist.  Back at Nantucket Cottage Hospital, an
x-ray of the wrist was said to show a fractured styloid process and
she was placed in a Velcro wrist splint.

Continued.......                **000788**

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Five

**REVIEW OF PROVIDED MEDICAL RECORDS:**   (continued ......)

o 09/18/02 - Ackland Sports Medicine, Inc.  (continued)....
At the same time she came out of the air cast boot, as she was
unable to get around in it.  Since that time, she continued to have
her right wrist pain.  Her ankle was still bothering her on a
regular basis, as well as still having neck and back pain.  Her
current medication included 1000mg of Ibuprofen daily.  On exam she
had right wrist pain with flexion and extension against resistance.
She also had pain with resistance to supination and pronation.  She
located this pain along the distal ulna.  She had tenderness along
the lateral aspect of the wrist, as well.  She had some swelling
involving the left ankle, with pain to palpation.  She had no pain
with movement of the ankle.  She did have a pes cavus deformity.
There was some pain along the plantar fascia with palpation.  On
cervical spine exam she had decreased range of motion on left
lateral rotation and tilt.  There was some notable crepitus, as
well.  She had some pain over the paralumbar musculature and had
pain with forward flexion.  There was absent deep tendon reflexes.

X-rays, as viewed from Nantucket Cottage Hospital showed a
fractured styloid of the right wrist.  They took x-rays on that
exam, which showed some healing.  The fracture site had not
changed.  The styloid was slightly angulated, with both films.
X-rays from Nantucket Cottage Hospital of the cervical spine,
showed some loss of normal lordotic curve, with some angulation
along C5 and C6.  X-rays of the left ankle were negative.  The
impression was:  1) right wrist styloid fracture;  2) cervical
spine and lower back pain and 3) ankle sprain.  At that point, they
felt she should have an MRI scan study of her cervical spine and to
keep the right wrist in a splint, to begin physical therapy for her
ankle, and she was to wear a soft Neoprene brace, as well.

o   09/21/02 - An MRI scan study of the cervical spine was
obtained.  The conclusion was a small right paracentral disc
protrusion at the C5-6 level.  Minimal effacement of the thecal
sac, but no significant mass effect on the cord or canal.  Tiny
protrusion centrally at C6-7.  Normal canal.  Normal spinal cord
morphology.

o   10/16/02 - An MRI scan study of the right wrist was read as
showing:  1) deformity of the distal radius, suggesting an old
healed colles fracture with associated ununited, slightly medially
displaced fracture through the distal ulnar styloid;  2) possible
slight widening of the scapholunate distance, suggesting a possible
injury of the scapholunate ligament.  Correlation with stress
x-rays with the wrist in ulnar and radial deviation was recommended
to assess for dorsal intercalated segmental instability;  3)
probable ulnar collateral ligament injury;  4) extensor carpi
ulnaris tendonopathy.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Six

## REVIEW OF PROVIDED MEDICAL RECORDS: (continued ......)

o   12/06/02 - Consultation with Alfred A. DeSimone, M.D./Matthew
Dovie, PA-C, where she presented with neck, back, right wrist and
left ankle pain.  They reported again, the history of her present
illness, but reported that there was a questionable initial loss of
consciousness.  She reported the injury of her left wrist and her
left ankle.  The MRI scan study had been done.  Her right wrist
bothered her with grasping, lifting and reaching.  It would
occasionally swell.  She noted ankle pain with walking.  She
continued to have neck and back pain, with headaches, stiffness and
spasms.  Physical exam revealed positive bilateral paracervical
spasm and tenderness.  Positive bilateral trapezius spasm and
tenderness.  Mild restriction to lateral side bending.  There was
positive bilateral paralumbar spasm and tenderness.  Positive
bilateral upper gluteal spasm and tenderness.  Negative straight
leg raising.  Exam of the wrist showed positive TFCC tenderness.
Mild restriction to plantar flexion.  X-rays of the right wrist
showed questionable old non-union of the ulnar styloid.  MRI of the
right wrist showed an old healed Colles' fracture with non-united,
slightly medially displaced fracture of the distal ulnar styloid
and a widened scapholunate interval.  Assessment was:  1) post
traumatic cervicalgia/lumbago;  2) ankle pain, deferred to Dr.
Sheinberg;  3) post traumatic right wrist pain, question acute or
chronic injury, deferred to Dr.  Gellman.  He was to send her for
an MRI scan study of her lumbar spine.  She was to be referred to
Dr.  Bodner for evaluation of her cervical and lumbar spine.

o   04/09/03 - Neurosurgical consultation with Herbert Rosomoff,
M.D., in which her chief complaint was that of neck pain.  She
related the accident of 07/05/02, where she reported her being
unconscious for 20 minutes and when she awakened, she could not
talk or move her legs or arms.  She did recover and was told she
had a cerebral concussion but, in fact, because she sustained a
loss of smell, which had persisted, he felt she had a closed head
injury, cerebral contusion.  He reported her fall, her injury to
the right wrist and left ankle.  Her MRI scan study, her gain of
weight, her taking of Ibuprofen, her ability to return to work in
January of 2003, but limited.  Her general neurological examination
revealed she had difficulty with heel and toe walking.  Her
coordination and equilibrium were impaired in both lower
extremities but her motor system was intact.  Sensory showed
absence of vibratory sense in the feet and hypesthesia through the
foot up into the lower one third of her leg.  Reflexes were absent
throughout.  Examination of the head and neck showed a slight
decrease in range of motion with tenderness over both bicipital
tendons and the right levator scapulae.  In the lumbar area, there
was a slight decrease range of motion without tender/trigger
points.  The hip rotators were tight.  she had pes cavum
bilaterally with the high arch.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Seven

**REVIEW OF PROVIDED MEDICAL RECORDS:**  (continued ......)

He reviewed the CT scan of the brain, said to be unremarkable.  She had x-rays of the feet, showing high arches and a cervical spine x-ray, which was unremarkable and the right wrist, which showed a chipped fracture involving the right ulnar styloid.

The impression was that Ms.  Evans had sustained an injury in which she had a closed head injury with cerebral contusion and loss of smell, which is likely permanent.  She further has myofacial syndromes in both the cervical lumbar areas, which are competent causes of her type of painful complaints.  She did not have any signs of active nerve root, spinal cord compression or instability and was felt to be a candidate for the pain and back rehabilitation program, which could be managed on an outpatient basis.

**REVIEW OF IMAGING STUDIES:**

The studies were brought in by the patient, were reviewed and were returned back to her.  The studies included:

o    07/05/02 - X-rays of the cervical spine showed straightening of the cervical lordotic curve.

o    07/05/02 - A CT scan of the brain included bone and soft structure exam, which were all within normal limits.

o    08/08/02 - An x-ray of the left ankle.

o    08/20/02 - An x-ray of the right wrist.

o 09/21/02 - An MRI scan study of the cervical spine included multi-slice mid and parasagittal T1 and T2-weighted sequence, along with T2 transaxial images, which showed mild disc bulging at C4-5, C5-6 and C6-7, creating a slight ventral impression on the thecal sac with no extension or involvement of the cervical spinal cord. There was no evidence of transaxial images showing central cervical canal stenosis or lateral extension into the nerve roots or neural foramina.

o    10/16/02 - An MRI scan study of the right wrist.

**PHYSICAL EXAMINATION:**
GENERAL:  Well-developed, well-nourished, pleasant, and cooperative patient who is in no acute distress.
VITAL SIGNS:  Blood pressure was 118/70 in the right and left arms. Pulse was 80 and regular.

Continued.......                    000791

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Eight

**PHYSICAL EXAMINATION**: (continued).......
**HEENT**: Her head was atraumatic and normocephalic. She had no
orbital nor cranial bruits. Tympanic membranes and oral pharynx
were benign.
**NECK**: She had full mobility and range of motion movements of her
neck, except for a questionable degree of mild limitation of full
hyperextension but she did have full forward flexion, rotational
and side to side flexion movements without limitation. She had no
tenderness in her posterior cervical paraspinal muscles nor was
there spasm. There was no tenderness in the cervical spinous
process areas
**BACK/EXTREMITIES**: but she had mild tenderness involving the upper
thoracic paraspinal muscles but with no obvious spasm. There was
no tenderness involving the spinous processes or the paraspinal
muscles of her lumbar spine. She also had full side to side
flexion, hyperextension, as well as forward flexion in her back.
Her straight leg raising was sitting and recumbent at 90 degrees
without pain. She had full thigh flexion onto the abdomen. She
also exhibited full shoulder shrugs and scapular abduction and
adduction movements. There is marked pes cavus deformity of her
feet with marked high arches. She had well-healed scars involving
both of her feet and ankle areas. There was no edema or
tenderness. She had movements and performed them without pain
equally. The only area of discomfort of the right wrist was
immediately lateral to the distal thyroid area and she exhibited
full wrist extension and flexion, as well as pronation and
supination at the wrist level.
**VASCULAR STATUS**: Her peripheral pulses were all present and
palpable. She had no carotid or supraclavicular artery bruits.

**NEUROLOGICAL EXAMINATION**
**MENTAL STATUS**: She is right-handed, alert, awake, and fully oriented
with seemingly intact intellect and symbolic function.
**CRANIAL NERVES**: Pupils were equal and reactive. Discs and fundi
were benign. Extraocular eye movements were full. There was no
nystagmus. Visual fields were full to finger counting. There was
no focal facial hypalgesia nor facial paresis. Gag reflex was
present. Uvula was in the midline. She had no tongue deviation or
fasciculations.
**MOTOR**: She exhibited no arm drift. There was no focal motor
weakness involving proximal and distal muscles of the upper
extremities. Of her lower extremities, she had mild limitation of
dorsiflexion of her feet and atrophy of the foot muscles, but in
reality her motor strength of the feet seemed intact. There was no
atrophy nor fasciculations involving her distal leg muscles.
**SENSORY**: She had mild loss of vibratory but intact position sense
in the feet with a mild stocking hypalgesia to pinprick and to
light touch.
**COORDINATION**: Rapid alternating and repetitive movements were
performed without dysmetria or ataxia.

Continued.......

000792

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Nine

**NEUROLOGICAL EXAMINATION**: (continued).......
**DEEP TENDON REFLEXES**: Absent throughout. Her plantar responses were none the less flexor.
**GAIT**: She walked with a mild broad based component to her gait. There was equal swing and she could perform the ability to get up on her heels and on her tiptoes. Her tandem was intact, as was her Romberg.

**IMPRESSION**: Subsequent the trauma to the neck and posterior head area, on 07/05/02, the patient had prolonged loss of consciousness, according to her history; but at the Nantucket Cottage Hospital, she had very brief loss of consciousness. Her only subsequent symptoms and findings are her historical loss of taste and smell, which would indicate shearing disruption of the olfactory filaments of the olfactory nerve.

She has had persistent symptoms, consistent with variable sprain and strain of the cervical, thoracic and lower back. She had no evidence of spinal cord injury or of cervical, lumbar or thoracic radiculopathy.

She had mild Charcot-Marie-Tooth disease and inherited polyneuropathy of mixed sensorimotor dysfunction to her feet. This polyneuropathy was unaffected by the accident of 07/05/02, as was the fall that occurred and the subsequent injury to her left ankle and right wrist.

In response to the questions, as posed by Brian Morrissey.

1. Ms. Evans sustained a cerebral contusion injury with disruption of the filaments of her olfactory nerves and thereby shearing the nerve filaments causing her the loss of smell and taste. She also sustained a cervical strain and sprain with subsequent muscular pains in the mid and lower lumbar areas of her back.

2. She should have no permanent physical restrictions, as a result of the 07/05/02 accident.

3. The patient's unrelated Charcot-Marie-Tooth disease with its mild peripheral neuropathy and deformity of her feet does and will have mild impairment of her gait.

4. The patient's failure to receive therapy treatment has delayed her recovery of the cervical midthoracic and lumbar musculoskeletal involvement.

5. I would agree with Dr. Rosomoff's conclusion that the patient has sustained a permanent loss of smell and taste.

Continued.......                    000793

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Ten

6.  Recommendation for future treatment should include a course of physical therapy, which can be performed on an outpatient basis.

7.  Diagnosis is stated above.  Prognosis should be one of full recovery, except for her loss of smell and taste.


PAUL A. FLATEN, M.D.                    Signed in my absence
PAF:jlr                                 Without Review
T: 06/26/03                             to avoid delay

cc:     Marine Safety consultants, Inc.
        10 Mazzeo Drive
        Suite 217
        Randolph, MA 02368-3433

Attn:   Brian G. Morrissey

000794

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
NO. 05-10088-MBB

JULIANNE MARIE EVANS
    Plaintiff,

VS.

NANTUCKET COMMUNITY SAILING, INC.
    Defendant.

## INTERROGATORIES PROPOUNDED BY THE DEFENDANT TO BE ANSWERED UNDER OATH BY THE PLAINTIFF

PLEASE TAKE NOTICE that the following are Interrogatories by the defendant, Nantucket Community Sailing, Inc., to be answered in writing and under oath by the plaintiff within thirty (30) days. These Interrogatories are to be deemed continuing in nature; therefore, any further information received by the plaintiff subsequent to the service of her responses to these Interrogatories, shall be supplied to the defendant as supplementary responses without delay.

Throughout these Interrogatories, whenever you are requested to "identify" a communication of any type, and such communication was oral, the following information should be furnished:

    (a) By whom it was made and to whom it was directed;

    (b) Its specific subject;

    (c) The date upon which it was made;

    (d) Who else was present when it was made, and;

000490

2

    (e)  Whether it was recorded, described or
summarized in any writing of any type; if so,
identify each such writing in the manner
indicated below.

Whenever you are requested to "identify" a

communication, memorandum or record of any type, and such

communication was written, the following information is to be

furnished:

    (a)  Its nature, e.g., letter, memorandum,
telegram, drawing, notes, etc.;

    (b)  Its specific subject;

    (c)  By whom it was made and to whom it was
directed;

    (d)  The date upon which it was made, and;

    (e)  Who has possession of the original and any
copies.

Whenever a person is to be "identified", you should

furnish except as otherwise noted:

    (a)  Name and present or last known address, and;

    (b)  If a corporation, its present or last known
address and the state of incorporation.

Where knowledge or information of a party is requested,

such request includes knowledge of the party's agents,

representatives and, unless privileged, her attorneys.  When

answer is made by corporate defendant, state the name,

address and title of the person supplying the information and

making the affidavit.

000491

3

Whenever the words "incident" or "accident" are used, it refers to the alleged incident described in Plaintiff's Complaint and Demand for Jury Trial.

### INTERROGATORIES

1.  Please state your full name, date of birth, social security number, present residential address, present employer, occupation and business address, and the date you commenced employment with said employer.

2.  Please state your occupation at the time of the incident and the name and address of your employer at that time.

3.  Please state your hourly and weekly wages at the time of the incident, and your hourly and weekly wages at the present time.

4.  Please state the exact hour and date of the incident.

5.  Please describe the weather and the sea conditions at the time the incident occurred and whether the those conditions played any part in causing the injuries you sustained as a result of the incident.

6.  Please state in complete detail exactly how the incident occurred, describing everything you did and everything that happened to you in the period from three (3) hours before your injury until thirty (30) minutes after.

7.  Please describe the particular task or action you were attempting to perform at the moment the incident occurred, and the stage in that task or action you had reached at the moment the incident occurred.

8.  If you claim that any of the defendant's personnel failed to exercise reasonable care, please describe the name, title, or other identification of the personnel concerned, and the act or omission of the personnel which caused your injury.

9.  Please state the nature and extent of the injuries that you sustained as a result of the incident, and the date in which you first experienced those injuries.

4

10. If you reported your injury or illness to any of the
    defendant's personnel, please state the name and title
    of the person to whom you reported it and the time and
    date of said report.

11. Please describe all medical treatment which you received
    by any of the defendant's personnel while onboard the
    sailboat and the names and titles of the persons by whom
    you were treated.

12. If you received any type of medical treatment for the
    injuries you sustained as a result of the incident,
    please state the history of your treatment, including
    the dates within which you received medical treatment,
    the name and address of each hospital, doctor, nurse
    practitioner, chiropractor, physical therapist or any
    other medical facility or healthcare practitioner that
    provided the treatment on those dates, describe in
    detail the medical treatment that was rendered on each
    of those dates, each and every diagnosis that was
    provided to you on those dates, and an itemized list of
    all expenses incurred as a result of said treatment.

13. Please state whether you have ever received any type of
    medical treatment to the parts or area of your body
    injured as a result of the incident at any time before
    said incident. If so, state the name and address of the
    medical facility or healthcare practitioner that
    provided the treatment and the dates of the treatment.

14. Please state each and every illness, accident,
    hospitalization or treatment you have had for the period
    of ten (10) years prior to the incident.

15. If you claim injuries of a permanent nature, please
    describe exactly the permanent injury you claim.

16. If you claim you will sustain any monetary loss or any
    other expenses or damages as a result of the permanent
    injuries described in the previous answer, please state
    the reason why the loss will be incurred, the amount of
    the loss and the method by which you arrived at the
    amount of the loss.

17. List each job or position of employment, including
    self-employment, held by you for the five (5) years
    before the incident, for the year in which the incident
    occurred and each subsequent year to the present,

000493

5

stating the name and address of your employer and the
date of commencement and termination of employment.

18. If you claim to have lost any time from gainful
    employment as a result of the incident, please state the
    specific condition which you claim caused the loss of
    time, the amount of time lost and if you claim any
    damage as a result of the time lost, the total of such
    damages claimed and your method of computing such
    damages.

19. If you claim that your earning capacity will be impaired
    in the future as a result of the incident, please state
    the nature of the condition that will cause the
    impairment and the manner in which the condition will
    impair your ability to work.

20. Please state when you first returned to work after the
    incident.

21. Please state the names and addresses of your traveling
    companions at the time of the incident.

22. Please state the names and addresses of anyone visiting
    with you on Nantucket Island in the weeks following the
    incident.

23. Please identify those persons whom you believe were
    witnesses to the incident, including those persons who
    were present at the place where the incident occurred
    either shortly before or shortly after, and briefly
    summarize the testimony which you expect will be given
    for each such witness at the trial of this action.

24. Regarding each expert whom you have retained, please
    state the full name and address of the expert, whether
    you expect that expert to testify at the trial of this
    matter, the subject matter on which the expert may be
    expected to testify, the substance of all facts to which
    the expert is expected to testify, the contents of all
    opinions to which the expert is expected to testify, and
    a summary of the grounds for each opinion to which the
    expert is expected to testify.

25. Please state the full name and address of all experts
    you have retained but do not intend to call as a witness
    at the time of trial.

**000494**

6

26. Please state each and every fact in detail upon which you base your allegations contained in Plaintiff's Complaint and Demand for Jury Trial, that the defendant's employees negligently navigated their sailboats.

27. If you have suffered any injuries or have been involved in any other accidents since the incident described in Plaintiff's Complaint and Demand for Jury Trial, please state the date, time and place of the accident, the nature and extent of any injuries sustained as a result, the manner in which the accident happened, the names and addresses of all other persons involved in the accident, and the names and addresses of all other persons who witnessed the accident.

28. State whether you or anyone acting on your behalf is in possession of any statement made by a witness or any of the defendant's personnel concerning the incident. If so, identify the person who provided the statement and the person who obtained the statement, the date the statement was obtained, whether the statement was written or oral, and the name and address of the person who is in possession, custody or control of the statement.

29. If you have ever received disability benefits, worker's compensation payments, or unemployment benefits, please identify the entity that provided the benefits or payments, the dates that the benefits or payments were provided, the amount of benefits or payments received on those dates and the reason for receipt of the benefits or payments.

By its attorneys,

CLINTON & MUZYKA, P.C.

Thomas J. Muzyka
BBO NO: 365540
Terence G. Kenneally
BBO NO: 642124
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each party by hand/mail/overnight mail, facsimile, on

1. Julianne Evans
   200 Jacaranda Drive, #B1
   Plantation, FL 33324

   DOB: 10/23/62
   SS: 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

   I am self-employed as a realtor.  My business address is Coldwell Banker Residential Real Estate, 300 N.W. 82nd Avenue, Suite 150, Plantation, Florida 33324.

2. Realtor with Coldwell Banker Residential Real Estate, 300 N.W. 82nd Avenue, Suite 150, Plantation, Florida 33324.  I also am the owner/designer of Sage, Rosemary and Thyme Garden Design which is a part-time business/hobby.

3. I do not have an hourly or weekly wage. My earnings are 100% commission.

4. Friday July 5, 2002 at approximately 5:30 p.m.

5. The weather was sunny, breezy and about 78 degrees.  The sea had a light chop and played no part in causing the accident.

6. I worked on my book until about 2 p.m.  After that, I called Nantucket Sailing and asked about taking sailing lessons and renting sailboats while in Nantucket and was told that the open Friday night sail began at 8 p.m. and to go to Jettie's Beach at 5 p.m. to use the sailboats.  After that call I went into town and visited with some shopkeepers and the young man at the information booth at Straight Wharf, Peter DeFlorio, before going to Jettie's Beach.
   I arrived at Jettie's Beach about 5 p.m. and met Darragh, who said he was in charge of the Friday night sailing for Nantucket Sailing Club, and a couple sailing instructors. Darragh told me that he and the instructors were from Ireland, that they had sailed since they were 12 years old and that it was their third summer working for the Nantucket Sailing Club.  I told Darragh about my conversation with the girl at NCS.
   Several boats went out sailing and there was one instructor with no one to sail with and Darragh asked me to go with him. I told him no as I hadn't sailed in more than 20 years and that I would watch from shore. Darragh introduced the instructor as Ronan and both of them ribbed me to join Ronan sailing.  After about ten minutes I finally said yes. I put on a life jacket and Ronan and I were the last ones to leave the beach sailing.
   We sailed back and forth in the harbor and almost hit a couple of boats because everyone was going in different directions.  The instructors were yelling at each other that they needed some organization.  We sailed around a guy in a rowboat/dinghy who directed us where to go. By this time we were far away from the other boats and were sailing back and forth in the outer rim of where the other boats were sailing.   Another boat with two instructors sailed near us and Ronan introduced me to them.  One of them was named Donncha. They asked what we were going to do and Ronan told them we were practicing as I hadn't sailed in 20 years.  We continued sailing

and picked up some wind. Our boat went up on what seemed like a 90 degree angle. I was up high. I was toward the front of the boat manning the front sail. Ronan was in the back manning the other sail and rudder. As we sailed on I heard Ronan yell out a swear word and yell "Jibe!" I looked over my shoulder and saw Donncha's boat about to hit us. Both boats turned left. Ronan was swearing and furiously pulling in his sail which is when I was hit in the back of my neck by the boom of Donncha's boat and was thrown head first into the hull of the boat.

I was unconscious for the next 20 minutes or so. The next thing I remember is being in a jeep on the beach with a paramedic leaning over me. The next thing I remember after that is the doctors asking me questions in the emergency room.

7. I was pulling in the rope of my sail.

8. See complaint. Ronan O'Siochru and Donncha Kiely, the sailing instructors, were apparently racing which I did not know or consent to. As the boats approached one another, Donncha's boat had the right of way and Ronan did not yield. It was supposed to be a nice leisurely sail around the harbor, not a race.

9. I have injuries to my neck which cause pain and spasms every day. I have numbness in my lower arms, jaw and teeth. I have permanent loss of taste and smell. I experienced all injures after the accident.

10. Other than Donncha Kiely and Ronan O'Siochru who were at the scene, the only people I saw or spoke to from Nantucket Commmunity Sailing after the accident were Darragh and the other sailor in Donncha's boat. I don't know his name. I don't recall telling them about my injuries other than I was in pain and in bed for two weeks following the accident.

11. None. The day after the accident Darragh told me that Ronan held me in his arms and kept smacking my face begging me to come to.

12. See medical records and bills of doctors and hospital for specific dates of treatment and expenses. Also, attached hereto is the letter and "Comprehensive Medical History of Julianne Evans" which was sent to Thomas Muzyka on or about March 17, 2005 in response to his request for that information. Following completion of the attached history, I received therapy from Jan Chamberlain, Westerly, Rhode Island and a copy of her initial report is attached.

13. No.

14. See "Comprehensive Medical History of Julianne Evans" attached hereto and previously sent to Thomas Muzyka.

15. The evaluation at the University of Connecticut Taste and Smell Center confirmed that my loss of taste and smell is permanent. I have been receiving therapy for my neck since the accident. My neck pain has not gotten better.

16. I will need physical therapy on my neck in the future. I don't know for how long or at what cost. Treatment at the University of Miami ( Dr. Rosomoff) was estimated to be about $44,000.00. There is no treatment that I am aware of for the loss of taste and smell.

17. I have been self-employed since 1988. For the past five years I have been affiliated with the following companies:

     a. Keagy, Whiddon & Co., 777 N. Federal Highway, Ft. Lauderdale, Florida 33301. I was with them until January 1999.

     b. Since January 1999 I have been with Coldwell Banker Residential Real Estate, 300 N.W. 82nd Avenue, Suite 150, Plantation, Florida 33324.

18. I did not return to Florida until November 15, 2002 and returned to work on November 20, 2002 as a result of neck injuries. I am not claiming lost wages or loss of earning capacity.

19. I am not making a claim for loss of earning capacity.

20. November 20, 2002.

21. None. I was vacationing alone in Nantucket.

22. Julie Anderson, 3003 Oak Bend Drive, Round Rock, Texas 78681 (July 25-29); Julie Bocquest, 2142 Fernlock, Oxford, Michigan 48371 (July 31 - August 8); Joyce Daenzer, 260 Park Island, Lake Orion, Michigan 48362 and Quida Bocquet, 818 Hilberg, Oxford, Michigan 48371.

23. Donncha Kiely and Ronan O'Siochru were present. They told my lawyer that they were racing in a "noncompetitive" manner, that Donncha had the right of way as the boats approached one another, that Ronan did not yield and that they "raced" on and stayed their course. Donncha told my lawyer that at the last possible moment he steered his boat hard to the left causing his boom to swing across his boat and hit me in the head/neck.
    Darragh was there before and I believe he will testify that he encouraged me to sail with Ronan. There were other people around but I do not know their names or what they would say.

24. No experts have been retained by the plaintiff.

25. None.


26. See answers to #8 and #23. Also, copies of the recordings of the statements my lawyer took from Donncha Kiely, Ronan O'Siochru and Darragh Connolly are attached.

27. On August 8, 2002 I was walking down the walkway at the Brant Point Lighthouse and had a back spasm which caused me to fall. I broke my right wrist, left ankle and tore some tendons. I

fell on Quida Bocquet, 818 Hilberg, Oxford, Michigan 48371. Julie Bocquet, 2142 Fernlock, Oxford, Michigan 48371 was present as well.

28. My lawyer is in possession of recorded statements of Donncha Kiely, Ronan O'Siochru and Darragh Connolly which were taken on the phone in April 2005. Copies of the recordings are enclosed.

29. In 1986 I received one unemployment check from the State of Florida. I think it was for $250.00. I was laid off from a job, took one unemployment check and then got another job

Julianne Evans

STATE OF FLORIDA

COUNTY OF BROWARD

SWORN TO AND SUBSCRIBED before me by Julianne Evans who is personally known to me on July ___, 2005.

Notary Public

Luisa A. Torres
#DD356454
EP. 19, 2008
ed Thru
onding Co., Inc.

000507

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088 MBB

JULIANNE MARIE EVANS,

        Plaintiff,

vs.

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA
KIELY,

        Defendants.

_____/

## Response to Request for Production

    Plaintiff responds to the defendant' request for production of documents

propounded on or about June 16, 2005 as follows:

1. The medical records set forth in the attached list (other than UCONN) are enclosed herein and were previously sent to the insurance company for the defendant. Further, plaintiff executed HIPPA and IRS authorizations at the request of defense counsel for the providers set forth in the attached list after providing him with a written history of the plaintiff's healthcare providers throughout her life.

2. Any such documents in possession of the plaintiff or counsel are attached. Plaintiff will execute any authorizations for release of any records not enclosed herein.

3. None.

4. None.

5. None as I am self-employed.

6. IRS authorizations were provided to the defendant on or about April 25, 2005.

7. See #1.

000521

8. None.

9. These records are not in the possession of the plaintiff. She will execute any HIPPA or other authorizations regarding same.

10. See #1. Also, the report of Jan Chamberlain is attached hereto.

11. See #1.

12. None.

13. None.

14. None.

15. Attached.

16. N/A

17. N/A

18. Attached.

19. None.

20. Attached.

21. None.

22. None.

23. None.

24. None.

25. None.

26. None.

27. None.

28. Various correspondences between counsel and third parties regarding injuries sustained in accident are attached.

29. None.

30. Report and supporting documents of Dr. Mann are attached hereto.

31. Copies of recorded statements of Donncha Kiely, Ronan O'Siochru and Darragh Connolly are enclosed.

32. None at this time.

33. See #31.

34. All medical records enclosed and previously provided. Other than the deposition of Dr. Mann from UCONN, it is undetermined what other exhibits and chalks will be offered at trial.

Respectfully submitted,

*/s/ Jeffrey A. Miller.*

_____
Jeffrey A. Miller, Esq.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing and attachments were sent by FEDEX to Thomas J. Muzyka, Esq., One Washington Mall, Suite 1400 Boston, Massachusetts 02108 on July 25, 2005.

"/s/ *Jeffrey A. Miller.*"

_____
Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300
Fax 561.347.7588
Florida Bar No. 308358

and

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel. 954.472.0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

**000523**

and

Michael P. Ascher, Esq. (local counsel)
P.O. Box 667
Hampden, MA 01036
Tel    : 413.566.3878
Fax    : 413.566.3437
Massachusetts Bar No.  022695

Dated:  July 25, 2005

## MEDICAL RECORDS ATTACHED AND PREVIOUSLY PROVIDED.

1. Nantucket Cottage Hospital ( Dr. Timothy Lepore)-Vesper Lane, Nantucket, MA

2. Cape Cod Hospital Rehabilitation Center ( Dr. Robert A. Monighetti)-130 North Street Lower Level Hyannis, MA 02601

3. Ackland Sports Medicine ( Dr. Michael K. Ackland)-100 Independence Drive Hyannis, MA 02601

4. Shields Health Care Group (Dr. Avishai W. Shapiro & Dr. David M. Novick)-365 Westgate Drive, Brockton, MA 02401

5. Micro Surgery Inc.( Dr. Ronald S. Wagner)-2901Clint Moore Road Box, #189, Boca Raton, Florida 33496

6. University Of Miami Comprehensive Pain & Rehabilitation Center ( Dr. Hubert R. Rosomoff)- 600 Alton Road, Miami Beach, Florida 33139

7. Dr. Alfred A. DeSimone-Weston Town Center, 1600 Town Center Bloulevard, Suite C, Ft. Lauderdale, Florida 33326

8. Neurologic Consultants PA.( Dr. Paul A. Flaten)-1841 N. E. 45th Street Ft. Lauderdale, Florida 33308

9. Comprehensive Therapy ( Dr. Jack M. Trainor)-4701 N. Federal Highway, Suite A-39, Ft. Lauderdale, Florida 33308

10. West Side Regional Medical Center-8201 W. Broward Boulevard. Plantation, Florida 33324

11. West Side Regional Medical Center-8201 W. Broward Boulevard. Plantation, Florida 33324

12. UCONN Medical Group Taste & Smell Center(Dr. Norman M. Mann)-263 Farmington Avenue, Farmington, CT 06030-6228

## BILLS FOR JULIANNE EVANS

| LOCATION | DATE | ACCOUNT NO. | DOCTOR | AMOUNT |
|---|---|---|---|---|
| MICRO SURGERY, INC. | 7-9-03 | NONE | Dr. Ronald S. Wagner | $ 350.00 |
| CAPE COD HOSPITAL | 10-15-02 | 21187 | Dr. Robert A. Monighetti | $ 180.00 |
| ACKLAND SPORTS MEDICINE | 9-18-02 TO 10-15-02 | X203-23795 | Dr. Michael K. Ackland | $ 305.00 |
| NANTUCKET AMBULANCE | 7-5-02 | 04-6001236 | Ambulance | $ 175.00 |
| SHIELDS HEALTH GROUP. | 9-21-02 TO 10-16-02 | 9-2216799 | Dr. Shapiro and Dr. Novick | $ 3,300.00 |
| NANTUCKET COTTAGE HOSPITAL | 8-28-02 | 02334209 | Emergency Room | $ 676.00 |
| NANTUCKET COTTAGE HOPSITAL | 8-8-02 | 02306959 | Emergency Room | $ 692.00 |
| NANTUCKET COTTAGE HOPSITAL | 7-5-02 | 02257079 | Emergency Room | $ 1,702.00 |
| DESIMONE & MOYA M. D. | 12-16-02 | NONE | Dr. Alfred A. Desimone | $ 765.00 |
| UM COMPREHENSIVE PAIN & REHAB CENTER | 4-9-03 | NONE | Dr. Hubert R. Rosomoff | NO BILL |
| NEUROLOGIC CONSULTANTS | 6-12-03 | NONE | Dr. Paul A. Flaten | NO BILL |
| COMPREHENSIVE THERAPY | 5-12-04 TO 6-2-04 | NONE | Dr. Jack M Trainor | NO BILL |
| WESTSIDE REGIONAL MEDICAL CENTER | 6-24-03 | NONE | Emergency Room | NO BILL |

| WESTSIDE REGIONAL MEDICAL CENTER | 11-27-04 | NONE | Emergency Room | NO BILL |
|---|---|---|---|---|
| UCONN MEDICAL GROUP | 10-29-04 | NONE | Dr. Norman M. Mann | NO BILL |

000527

**Comprehensive Medical History of**
**Julianne Marie Evans**
**DOB: 10/23/1962**

**Holy Cross Medical Group (HCMG), 4725 Federal Hwy., Ft. Lauderdale, FL, 33331 (954) 958-4800 - Doctors within the HCMG are as follows:**

Robert Mills, Jr., M.D., Orthopedic Surgeon/Foot Specialist
8/2004 thru 3/2005
Torn Peroneal Tendon - Left Foot; Surgery performed on 11/3/2004 - did debridment and repair to Peroneal Tendon, shaved off a bone, drilled holes into and decompressed Cuboid Bone

Dr. Jose Jackson, M.D., Hand Specialist
3/2004 - Tennis Elbow
11/2004-Injury to Left Wrist, casted Left Arm; cast removed after three weeks; unknown diagnosis (originally thought it was a snuffbox injury)

Holy Cross Medical Group Physical Therapy (954) 267-6390
2/2005 thru 3/2005
Physical Therapy to rehabilitate Left Ankle after surgery

Jennifer Edwards, Podiatrist
3/2005
Orthotics for both feet; Night Splint - Right Foot

Kenneth Burke, M.D., 4004 N. Ocean Blvd., Ft. Lauderdale, FL 33301 (954) 564-1330
11/2003 to 3/2005
Primary Care Physician; Seen for Left Foot injury and referrals to Specialists; X-rays for wrist and foot; MRI on Right Wrist and Left Foot; Neck injury; Left Wrist injury; Back Spasms (spasms since 7/2002)

**End Holy Cross Medical Group**--------------------------

**Rheumatology**

Alan Alberts, M.D., 7431 N. University Drive, Ste. 300, Tamarac, FL 33321 (954) 724-5560
1/2005
Referred by Robert Mills, Foot Surgeon, due to joint pain; Blood work done - everything normal

**End Rheumatologists**-----------------------

**MRI's performed over my lifetime at the following locations:**

Westside Regional Hospital, 8201 W. Broward Blvd., Plantation, FL (954) 473-6600
11/2004 -MRI on Neck (done while in hospital)

South Florida Imaging Center, 8300 W. Sunrise Blvd., Plantation, FL 33322 (954) 577-6000
5/2004 - MRI on Left Ankle
2003 - MRI on Neck/Back

Shields MRI of Cape Cod, 2 Iyannough Road, Hyannis, MA 02601 (508) 778-8555
10/2002 - MRI on Right Wrist; Neck

**MRI's cont'd**

MRI of Pembroke Pines, Pembroke Pines, FL (address/phone unknown)
3/1998 - MRI on head for headaches; Evaluated at University of Miami Sylvan Center, Miami FL
by Headache Specialist; Diagnosis: Isolated Migraine


**End MRI's------------------------**


**Hospitalizations in my lifetime:**

Westside Regional Hospital, 8201 W. Broward Blvd., Plantation, FL (954) 473-6600
11/27/2004 to 11/30/2004
Emergency Room visit and hospital stay for severe Neck Pain and Spasms; MRI done on Neck;
three days intravenous Demorral feed; treated by various doctors including Pain Management
Physician who injected cortisone into Neck. Taken to hospital via ambulance

Holy Cross Hospital 4725 Federal Highway, Ft. Lauderdale, FL 33301 (954) 771-8000
11/2004 - Foot Surgery to repair torn tendon, Left Foot, Dr. Robert Mills
06/1988 - Hospitalized for vaginal hemorrhaging due to cryosurgery, Dr. Irving Lang
12/1986 - Dislocated Left Shoulder and torn ligaments in Shoulder, ER

Nantucket Cottage Hospital, 57 Prospect St., Nantucket, MA 02554 (954) 825-8100
7/2002 - Brought to ER via ambulance for injury to Neck sustained in boating accident
8/2002 - ER visit for broken Left Ankle; Tore Peroneal Tendon at this time
        but went undiagnosed until 8/2004 by Dr. Robert Mills
8/2002 - ER visit for broken Right Wrist (sustained in earlier accident of 8/2002,
        but went undiagnosed by hospital personnel)

William Beaumont Hospital, 3601 W. 13 Mile Road, Royal Oak, MI 48073 (248) 551-2019
1976 - Surgery, Right Foot, for supposed Charcot-Marie-Tooth (CMT) Disease-Type II – (See
notes under "Miscellaneous Doctors in my Lifetime" down below); Rerouted 80% of my tendons
and lengthened Achilles Tendon; removed bone and tendons
1980 - Surgery, Right Foot, to remove first knuckles in first four toes
1981 - Surgery, Right Foot, to shave off protruding bone, remove second knuckle of 4th toe
1983 - Surgery, Left Foot, to remove big toe first knuckle
1984 - Surgery, Right Foot, to redo fourth toe, second knuckle removal

Sterling Heights Medical Center, Sterling Heights, MI (address and phone unknown)
12/1984 - D & C due to miscarriage of twins

Warren Medical Center, Warren, Michigan
1965 - Appendectomy

**End Hospitals----------------------------**

**Primary Care Physicians**

Kenneth Burke, M.D., HCMG, 4004 N. Ocean Blvd., Ft. Lauderdale, FL 33331 (954) 564-1330
11/2003 to 3/2005

Steven Cimerberg, D.O., 10063 Cleary Blvd., Plantation, FL (954) 473-8787
1/1996 to 10/2003

**End Primary Care Physicians---------------**

**Physical Therapy**

Holy Cross Medical Group, 4725 Federal Highway, Ft. Lauderdale, FL 33301 (954) 958-4800
2/2005 to 3/2005 - PT on Left Ankle due to Tendon Surgery by Dr. Mills

Holy Cross Hospital, 4725 Federal Highway, Ft. Lauderdale, FL 33301 (954) 771-8000
12/2004 - PT on Neck for Neck Spasms

Home Health ordered by Westside Regional Hospital, Plantation, FL 33324
12/2004 - Four, home visits for Neck Spasms

Comprehensive Orthopedic Physical Therapy, Oakland Park Blvd., Oakland Park, FL 33331
(954) 564-1994
2/2004 to 7/2004 - PT on Left Ankle due to severe ankle pain

HealthSouth Sports Medicine, 350 N. Pine Island Rd., Plantation, FL 33324 (954) 474-2525
4/2003 to 9/2003
Neck and Back Physical Therapy due to boating accident injuries

William Beaumont Hospital Physical Therapy (See above for address & phone)
1976 - Right Foot, Physical Therapy due to foot surgery

**End Physical Therapy**------------------------

**Gynecologists**

Dr. Kenneth Selbst, 10045 Cleary Blvd., Plantation, FL 33324 (954) 474-2229
1997 to 2005
Annual Well Visits; Never treated for anything significant other than one UTI

Dr. Grover Cleveland, Retired, Broward Blvd., Plantation, FL 33317 (Phone N/A)
1989 to 1997
Annual Well Visits; Never treated for anything significant

Dr. Irving Lang, Deceased, Federal Hwy., Ft. Lauderdale, FL 33301 (Phone N/A)
1985 to 1989
Annual Well Visits; Treated for abnormal Pap Smear in 1988 with biopsy and cryosurgery

Unknown Gynecologist, Rochester, MI (Address, phone number unknown)
12/1984 – Treated for pregnancy/miscarriage; Performed D & C at Medical Center

Dr. Elizabeth Evans, Novi, Michigan (Phone and address unknown)
1980-1983
Annual Well Visits; Never treated for anything significant

**End Gynecologists**-------------------------------------

**Dentists**

John Ohlsson/Donald Ohlsson, (Father/Son), 1460 Walton Blvd., Ste. 204, Rochester Hills, MI
48309 (248) 651-1613
1975 to 2005
Wisdom teeth removed in 1980 by Oral Surgeon (Name, address, phone unknown)

**End Dentists**----------------------------------

**Eye Doctor**

C.J. LoParo, Optometrist, 12801 W. Sunrise Blvd., #931, Sunrise, FL 33323 (954) 851-1373
1992 to 2002
Annual Eye Exams/Contact Lens'

**End Eye Doctor**------------------------------

**Miscellaneous Doctor Visits in my Lifetime**

Jack Trainor, M.D., 2151 Commercial Blvd., Ft. Lauderdale, FL 33301 (954) 771-8177
1/2004 to 7/2004 - Treated for severe ankle pain - Left Ankle; Doctor couldn't diagnose problem;
sent to Dr. Robert Mills, Foot Specialist after six months of physical therapy didn't help to
improve any of my symptoms

Dr. Hubert Rosomoff, Neck Specialist/Medical Director, University of Miami Comprehensive
Pain and Rehabilitation Clinic, Miami Beach, FL (305) 532-7246
4/2003 - One time visit (allowed by Insurance) for evaluation of all injuries sustained in boating
accident and in Nantucket 2002 (examination was 3 and 1/2 hours long); wanted to commence
treatment at $52,800 (patient pays); declined treatment due to cost of care to me

Dr. Ronald Wagner, Neurologist, 440 E. Sample Rd., Pompano Beach, FL 33064 (954) 782-5757
7/2003 – One time visit for neurological exam of Back and Neck

Dr. Alfred DeSimone, Orthopedist, 1600 Town Center Blvd., Weston, FL 33326 (954) 389-5900
12/2002 – One time visit for Neck injury, Back Spasms/Injury, Left Ankle Pain, Evaluation

Dr. Michael Ackland, Orthopedic Medicine, Ackland Sports Medicine, 100 Independence Drive,
Hyannis, MA 02601 (508) 790-1110
9/18/2002 thru 10/15/2002
Treated for Neck Injury; Physical Therapy Solutions; Back Spasms; Back Pain; Left Ankle injury;
Right Wrist injury; Loss of taste and smell-He told me then loss of taste and smell would never
come back; Dr. Ackland referred me to Back doctor, Dr. Robert Monighetti

Dr. Robert Monighetti, 130 North St., Lower Level, Hyannis, MA 02601 (508) 771-9600
10/2002 - One time visit for Back injury evaluation

Waterman Dermatology, 600 S. Pine Island Rd., Plantation, FL (954) 473-5999
4/2002
Skin rash

Robert Selkin, M.D., Selkin Lasik Eye Institute, Dallas, TX (Address and phone unknown)
2/2002
Lasik Eye Surgery – Corrected vision to 20/20

Dr. Stankostanisavljevic, Orthopedic Surgeon, Deceased, Royal Oak, MI 48073
1976-1983 - Performed foot surgeries as listed above at William Beaumont Hospital; Four on
Right Foot and One of Left Foot; Saw various Neurologists and Foot Doctors in 1975-1976 (names
unknown) before seeing and choosing Dr. Stanko to perform surgery. After surgeries were
performed Dr. Stanko said he wasn't sure I ever had Charcot-Marie-Tooth Disease (CMT)

Unknown Doctor, Union Lake, MI (Name, address, phone unknown)
1974 – Treated for stomach pain; Diagnosed with and treated for ulcer and hemorrhoids

**End Miscellaneous Doctor Visits**-------------------------------

**END**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.: 05-10088 MBB

JULIANNE MARIE EVANS,                    *
                                         *
               Plaintiff,                *
                                         *
                                         *
vs.                                      *
                                         *
                                         *
NANTUCKET COMMUNITY                      *
SAILING, INC., a Massachusetts           *
Corporation, RONAN O'SIOCHRU             *
and DONNCHA KIELY,                       *
                                         *
               Defendants.               *

## AFFIDAVIT OF JULIANNE M. EVANS

I, Julianne M. Evans, being duly sworn, hereby depose and say as follows:

1.    I am the plaintiff in this action.

2.    I am providing this Affidavit in support of my Motion to Revoke Stipulation
      Limiting Claims for Damages to Those Related to Loss of Taste and Smell.

3.    I have suffered from neck and back pain since the time I was injured on July 5,
      2002. It was always my intention to seek compensation for these injuries and I
      am aware that prior to this action being filed, my attorneys provided defendants'
      insurer and defendants' counsel with records relating to these injuries. Also
      before suit was filed, I was examined by a physician selected by defendants
      related to all of my injuries. In addition, I have had headaches and other
      symptoms since the time of the incident.

4.    In October 2004, I was examined by a second physician retained by the
      defendants, Dr. Norman Mann of the U. Conn. Taste and Smell Center. The bulk
      of Dr. Mann's reports were received by my former attorney, Steven Miller
      ("Miller") in April 2005. After that, Miller advised me to waive all of my claims
      other than those related to my loss of taste and smell. I was extremely reluctant to
      do so. However, Miller told me that if I agreed to waive my other damage claims,
      he would get my case settled fairly and expeditiously. He also told me that if I

did not agree to waive my claims for other damages, the resolution of my case would be delayed for years. Based on the fact that Dr. Mann had documented my complete loss of taste and smell on a permanent basis and on Miller's advice, I agreed to waive my claims for damages other than those related to loss of taste and smell.

5.    On July 28-31, 2006, after Dr. Mann's disqualification, due to Miller's direct contact with him, I underwent a battery of tests by another physician selected by the defendant, Dr. Robert Henkin, at the D.C. Taste and Smell Center. Dr. Henkin told me I had post-concussion syndrome, which accounted for many of my symptoms since the accident, and problems with my thyroid. Since that examination, I have had an appointment with a treating endocrinologist who believes that my adrenal and pituitary glands were damaged in the incident. I am currently undergoing treatment for these problems.

6.    It is obvious to me now that the injuries I sustained in the incident are much more serious than only the loss of taste and smell. In addition to the neck and back pain, I suffer from headaches, thyroid problems and damage to my pituitary and adrenal glands. These latter problems were only diagnosed after I agreed to waive my other claims for damages.

7.    If the court allows my motion, I will agree to reappear in Boston for further deposition related to my other claims for damages, to produce all additional relevant medical records related to these claims and to be examined by a physician of defendants' choosing relating to these claims. To the extent necessary to allow the defendants full discovery on these claims, I have authorized my attorneys to join in a motion to extend discovery if such a motion is acceptable to the court.

Further affiant sayeth not.

Signed under the pains and penalties of perjury this 30th day of August, 2006.

___s/Julianne M. Evans_____
JULIANNE M. EVANS

2

## CERTIFICATE OF SERVICE

I, Alan L. Cantor, Esq. do hereby certify that the foregoing document was served on the following counsel on this date and in the manner specified herein:

Electronically Serviced Through ECF:

Steven D. Miller, Esq.
817 S. University Drive, Suite 122
Plantation, FL 33324

Richard A. Gargiulo, Esq.
Gargiulo, Rudnick & Gargiulo
66 Long Wharf
Boston, MA 02110

Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, FL 33431

Thomas J. Muzyka, Esq.
Clinton & Muzyka, P.C.
One Washington Mall, Suite 1400
Boston, MA 02108

This 31st day of August, 2006.

                              s/Alan L. Cantor
                              Alan L. Cantor

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088 MBB

JULIANNE MARIE EVANS,

Plaintiff,

vs.                                                   **Status Report**

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA
KIELY,

Defendants.

Plaintiff files this status report in anticipation of tomorrow's status conference.

The Irish defendants have filed answers. The case is at issue and ready to be set for trial,
which should take no more than 2 full trial days.

Plaintiff's counsel has received amended returns of service from Ireland and will file the
originals with the court tomorrow.

The defendants have asked to depose the plaintiff. She is presently in the Boston area
(visiting since this past Monday) and available to be deposed. We offered to make her available
tomorrow, but that was inconvenient for the defendants. She is willing to stay on in Boston so
that she can be deposed, and we have offered to make her available to the defendants any time the
next two weeks (although the sooner the better is preferred). We are awaiting word from the
defendants on that.

It is unlikely the defendants will need any further discovery to be ready for trial, in that
the plaintiff's claim is limited to damages for the permanent and irreversible loss of her sense of
taste and smell, which diagnosis has been established by defendants' own expert, Dr. Norman
Mann, from UConn's Taste and Smell Center.

Dr. Mann's deposition is in the process of being scheduled, and hopefully will take place sometime within the next 2 or 3 weeks, schedule's permitting. Dr. Mann has advised that he is available for deposition on November 10th , 11th or 15th at 11:00 a.m.

Plaintiff plans on calling only one live witness at trial, herself. She will offer Dr. Mann's testimony by deposition. Plaintiff has short taped statements (and transcripts) from the Irish defendants, copies of which have been provided to the defendants, and may offer them.

Plaintiff has provided all medical records to the defendant on multiple occasions and has answered all discovery requests. The case is simple, factually. Plaintiff took a ride on a sailboat, which was supposed to have been a leisurely sail that, unbeknownst to her, turned out to be a race between the 2 Irish defendants, both employees (sailing instructors) of the defendant, Nantucket Sailing Club. The boats nearly collided as they made their way to a "racing mark" and, in an effort to avoid colliding, the boom on one boat swung around, banging plaintiff in the head, the trauma causing her injuries. This case will not take long to try.

Defendants have suggested mediation. Plaintiff feels that there is not much chance of a settlement; however, is willing to have the case mediated by this court, any other magistrate judge or a private mediator. It is requested that mediation take place at or about the time plaintiff is deposed; either just before or right after. Defendants and their insurance carrier know all they need to know about the case to have evaluated its merits and settlement prospects. There is no need to force plaintiff back for mediation in the future.

Plaintiff requests that trial be set on the court's earliest trial docket, preferably in December, 2005, or soonest thereafter.

Respectfully submitted,

"/S/ *Jeffrey A. Miller*"

Jeffrey A. Miller, Esq.

## CERTIFICATE OF **SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by U.S. Mail and facsimile to Thomas J. Muzyka, Esq., One Washington Mall, Suite 1400 Boston, Massachusetts 02108 on November 3, 2005.

"/s/ *Jeffrey A. Miller*"

Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300
Fax 561.347.7588
Florida Bar No. 308358

and

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel. 954.472.0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

and

Michael P. Ascher, Esq. (local counsel)
P.Q. Box 667
Hampden, MA 01036
Tel    : 413.566.3878
Fax    : 413.566.3437
Massachusetts Bar No. 022695

Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-10088 MBB

JULIANNE MARIE EVANS,

    Plaintiff

vs.

NANTUCKET COMMUNITY SAILING, INC.,
a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA KIELY,

    Defendants


DEPOSITION OF:  JULIANNE M. EVANS
CLINTON & MUZYKA
One Washington Mall
14th Floor
Boston, MA 02108
December 8, 2005


Virginia Dodge
Registered Professional Reporter

---

Page 3

1            I N D E X
2
3  WITNESS:    JULIANNE M. EVANS
4
5      DIRECT  CROSS  REDIRECT  RECROSS
6  By Mr. Muzyka     4
7
8
9

10  EXHIBIT                  PAGE
11  Exhibit 1A, Interrogatories Propounded by the
        Defendant to Be Answered Under Oath
12        by the Plaintiff............................4
13  Exhibit 1B, Notice of Filing Answers to Interrogatories..4
14  Exhibit 2, Transcribed Statement of Julianne Evans.......4
15  Exhibit 3, Color photocopies of photographs.............4
16  Exhibit 4, Drawing.....................................106
17
18
19
20
21
22
23
24

---

Page 2

1  APPEARANCES:
2
3  Representing the Plaintiff (Via Telephone):
4     LAW OFFICE OF STEVEN D. MILLER
      817 South University Drive
5     Suite 122
      Plantation, FL 33324
6     BY: STEVEN D. MILLER, ESQ.
      (954) 472-0776
7
      and
8
     LAW OFFICE OF JEFFREY A. MILLER
9     2424 North Federal Highway
      Suite 314
10    Boca Raton, FL 33431
      BY: JEFFREY A. MILLER, ESQ.
11    (561) 392-4300
12
13  Representing the Defendants:
14    CLINTON & MUZYKA
      One Washington Mall
15    14th Floor
      Boston, MA 02108
16    BY: THOMAS J. MUZYKA, ESQ.
      TERENCE G. KENNEALLY, ESQ.
17    (617) 723-9165
18
19
20
21
22
23
24

---

Page 4

1      (Exhibits 1 through 3 premarked for
2    identification.)
3
4      (Deposition commenced at 11:03 a.m.)
5
6    JULIANNE M. EVANS, Deponent, having first been duly
7  sworn, deposes and states as follows:
8
9     DIRECT EXAMINATION BY MR. MUZYKA:
10
11  Q.  Julianne, I'm going to ask you a number of
12  questions, and as you probably already know, I represent
13  the Nantucket Community Sailing defendant in this case.  I
14  also represent the two Irish gentlemen who've been named
15  as additional defendants in the amended complaint.
16     The questions I'm going to ask you have to do with
17  your personal background, your personal history, your
18  medical condition.  Some may be cut short, if we can
19  stipulate after we go through your identification, but if
20  at any time I ask you a question and you don't understand
21  it, let me know.
22  A.  Okay.
23  Q.  Because if you answer the question, I will assume
24  that you understood the question.  If I ask a question

Page 5

1  that is confusing or you need more definition in it, I'll
2  rephrase it so we're on the same wavelength, okay?
3  A.  Mm-hmm.
4  Q.  Since your attorney's appearing by phone, if at any
5  time you want to take a break and talk to your attorney,
6  let us know.  The only time I would object to that is if I
7  have a question pending to you and you haven't answered
8  it.
9  A.  Okay.
10  Q.  I would request that you answer it first.  Then you
11  can speak your lawyer.
12  A.  Okay.
13  Q.  If at any time I ask you a question that requires a
14  yes or no answer, you have to say "yes" or "no."  You
15  cannot say "uh-huh" or nod your head.  The stenographer
16  has to take down the answer for clarity.
17     I would ask you as a matter of procedure to wait
18  till I complete asking the question before you start
19  responding.  It will be easier for the stenographer to
20  take down my question first and then your answer and be
21  accurate, okay?
22  A.  Okay.
23  Q.  If at any time you want to take a break because
24  we're going into a long deposition, let me know, and we'll

Page 6

1  make the appropriate arrangements.
2     MR. MUZYKA:  Steve, usually what we do up
3  here is we have stipulations in the beginning
4  concerning the deposition, which all objections
5  are reserved and motions to strike are reserved
6  to the time of trial except as to form.
7     And as far as reading, signing the
8  deposition, usually that's made by -- that's a
9  determination made by the deponent or yourself
10  at the conclusion of the deposition.  Is that
11  okay with you?
12     MR. STEVEN MILLER:  Yes.
13     MR. MUZYKA:  Before we start the
14  deposition, you and I spoke earlier.  And I
15  just want to see if we can eliminate areas of
16  inquiry so that we can expedite the deposition.
17     In the past when I have spoken with Jeffrey
18  Miller and in court, he made representations
19  that the only claims that are being presented
20  in this litigation are for the loss of taste
21  and loss of smell, that there would be no other
22  personal injury claims made.  Can we stipulate
23  to that?
24     MR. STEVEN MILLER:  Yes.

Page 7

1     MR. MUZYKA:  Okay.  In addition to that,
2  Jeff has also agreed that there will be no
3  claims made here for loss of earning capacity,
4  either past or future.  Can we --
5     MR. STEVEN MILLER:  Yes.
6     MR. MUZYKA:  And lastly, with regard to
7  medical expenses, although we did not discuss
8  it specifically, we would be willing to limit
9  only those medical expenses that are related to
10  loss of smell and taste.  Is that satisfactory
11  to you?
12     MR. STEVEN MILLER:  Well, to the extent
13  that she has some medical bills from the
14  emergency room and doctors and initial
15  treatment and consultations following, but
16  nothing in the future with regards to anything
17  other than taste and smell.  That's correct.
18     MR. MUZYKA:  With regard to --
19     MR. STEVEN MILLER:  We've given you that
20  lien information, the Blue Cross stuff, Tom.
21  So it's not significant anyway.
22     MR. MUZYKA:  It isn't?
23     MR. STEVEN MILLER:  No.
24     MR. MUZYKA:  With regard to that then, I

Page 8

1  will limit my examination with regard to just
2  the claim for loss of smell and taste.
3     MR. STEVEN MILLER:  That's fine.
4  Q.  (By Mr. Muzyka) Ms. Evans, would you please state
5  your full name?
6  A.  Julianne Marie Evans.
7  Q.  And your residence?
8  A.  200 Jacaranda Drive.
9  Q.  Could you spell that, please?
10  A.  J-A-C-A-R-A-N-D-A.
11  Q.  And where is that located?
12  A.  It's in Plantation, Florida.
13  Q.  And how long have you been living there?
14  A.  Fourteen years.
15  Q.  Is that a house, or is it a condo, or is it an
16  apartment?
17  A.  It's a condo.
18  Q.  And do you own it?
19  A.  Yes.
20  Q.  Could you please give me your date of birth?
21  A.  10/23/62.
22  Q.  And your Social Security number, please?
23  A.  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.
24  Q.  Where were you born?

2 (Pages 5 to 8)