## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

                                                  **CIVIL ACTION**
                                                  **NO. 05-10088-MBB**

**JULIANNE MARIE EVANS**
        **Plaintiff,**

**vs.**

**NANTUCKET COMMUNITY SAILING, INC.,**
**RONAN O'SIOCHRU and DONNCHA KIELY**
        **Defendants.**


### DEFENDANTS' MEMORANDUM OF LAW AND FACT
### IN OPPOSITION TO PLAINTIFF'S
### MOTION TO REVOKE STIPULATION LIMITING CLAIMS
### FOR DAMAGES TO THOSE RELATED TO TASTE AND SMELL


Now come the defendants, Nantucket Community Sailing, Inc., Ronan O'Siochru, and Donncha Kiely, in the above captioned action, by and through their undersigned counsel, and file their ***Memorandum of Law and Fact in Opposition to Plaintiff's Motion to Revoke Stipulation Limiting Claims for Damages to Those Related to Taste and Smell.***

The defendants submit in support of their ***Opposition*** the following grounds for the Court's consideration.

### PROCEDURAL AND FACTUAL BACKGROUND

1.      The plaintiff's injuries were allegedly sustained on July 5, 2002 while she was aboard one of Nantucket Community Sailing, Inc.'s sailboats.

2.      From July 5, 2002 until December 8, 2005, *some 3 years and 5 months*, the plaintiff had been examined, treated, and diagnosed by hospitals, physicians, diagnostic technicians, rehabilitation centers, independent medical examiners, and under legal pleadings addressing her alleged injuries. ***See Exhibit "A" hereto.***

3.      In the histories to the above treatments and in ¶'s 2, 3, and 5 of
        Plaintiff's Affidavit, the plaintiff confirms her knowledge of the injuries
        to her neck, back, taste and smell, and headaches, but also other
        unrelated injuries to her wrist, ankle, and other conditions/maladies.  At
        the time of the incident and subsequent treatments, she reported loss of
        consciousness from 10 to 15 seconds to 20 minutes and concussion.
        She has been treated and examined by no less than 16 different medical
        examiners and providers for related and unrelated conditions.

4.      Prior to the commencement of the subject civil action, plaintiff's counsel
        and Thomas J. Muzyka discussed settlement of this claim.  At all times
        during those discussions, the plaintiff's claim was limited to the loss of
        taste and smell only.  There were no other injuries claimed by the
        plaintiff.

5.      The civil action was commenced in this matter on January 13, 2005 with
        issue joining on February 2, 2005.
            On March 23, 2005, this Court established a Discovery Schedule to
        conclude on September 30, 2005.
            On July 28, 2005, this Court held a Status Conference and extended
        the Discovery Schedule to November 30, 2005.

6.      On November 3, 2005 and in preparation for the Court's Status
        Conference, plaintiff's counsel sent an Email to defense counsel
        confirming that the plaintiff was seeking damages only for her loss of
        taste and smell.  He stated:   *"We are not making a claim for any other
        injury or loss."*  ***See Exhibit "B" hereto.***

7.      On November 4, 2005, this Court held a Status Conference wherein
        plaintiff's counsel reported discovery completed, except for the
        depositions of the plaintiff and Dr. Mann.  Dr. Mann's deposition to be
        completed by the end of January 2006.  The plaintiff filed her Status
        Report with the Court stating in the fifth paragraph *". . . the plaintiff's
        claim is limited to damages for the permanent and irreversible loss of
        her sense of taste and smell, . . ."*  ***See Exhibit "C" hereto.***

8.      On December 8, 2005, the plaintiff's deposition was obtained.  Prior to
        the deposition and *in plaintiff's presence*, a colloquy on the record
        between the Thomas J. Muzyka and Steven D. Miller occurred.  The
        plaintiff's counsel stipulated that [1] the only claim presented in this
        action was for loss of taste and smell; [2] the plaintiff was not seeking
        loss of earning capacity, either past or future; and [3] limited medical
        expenses sought to only those for the examination and treatment of the
        loss of taste and smell.  ***See Exhibit "D" hereto.***

9.      On January 17, 2006, this Court addressed and allowed defendant's Motion for Protective Order concerning Dr. Mann's deposition in Florida.

At almost every hearing designated above, plaintiff's counsel requested an immediate trial reasoning that the plaintiff was only seeking damages for loss of taste and smell.

10.     On January 20, 2006, the plaintiff executed her deposition Errata Sheet and made no contest of the Stipulation.  ***See Exhibit "E" hereto.***

11.     On April 11, 2006, the plaintiff discharged her attorneys and engaged the Law firm of Swartz & Swartz.  On April 13, 2006, Attorney Cantor filed his Notice of Appearance.

12.     On May 19, 2006, this Court entertained arguments on unrelated motions and opened discovery for plaintiff's successor counsel.  The Court established a discovery close date of September 30, 2006.

13.     From July 28 through July 31, 2006, the plaintiff was examined at the Center for Molecular Nutrition and Sensory Disorders' Taste and Smell Clinic, which is operated under the direction of Dr. Robert Henkin, for a second defendants' medical examination.  Following the examination, Dr. Henkin produced a written report which states, in part, the plaintiff "exhibits a significant loss of smell and taste acuity with the presence of smell distortions."   Dr. Henkin further states that "[t]hese findings may be attributed to her head injury.  However, her hypothyroidism, her allergies, and possibly her Charcot Marie Tooth disease could also play a role in these findings."

14.     The plaintiff now seeks to recover for all her pre-Stipulation maladies and to recover for other maladies which were told to her by defendants' examining physician during her examination.

15.     The defendant in defense of this claim and civil action has solely focused on only a loss of taste and smell.  All discovery activities were tailored to this single claim.  The defendant has refrained from investigating other sources of defense, other causes of injury, the engaging of other expert [medical and other], and has relied on the plaintiff's Stipulation representations.

16.     On August 31, 2006, thirty days [30] days, before expiration of discovery, the plaintiff filed the present motion.

## ARGUMENT

The plaintiff's motion seeks to annul a Stipulation which was knowingly entered into, with advice of counsel, and without the necessary "good cause" or any other excusable basis for revocation.   In plaintiff's motion at ¶ 5, the plaintiff grounds her motion on ". . . the advice given to the plaintiff by her prior attorney not to seek recovery for her other injuries was *__misguided and unwarranted__*."  [italicizing and underscore our emphasis]

In Plaintiff's Affidavit at ¶ 3, the plaintiff admits the she knows the nature and extent of her injuries [neck, back, headaches, loss of smell and taste, & other symptoms]. She further offers that her litigation intent was to seek compensation for her injuries.

In Plaintiff's Affidavit at ¶ 4, the plaintiff outlines her and counsel's strategy to seek an early and expeditious settlement.  The plaintiff, an adult without any lack of mental capacity, chose this strategy before the filing of the civil action and has followed it through at all levels of the civil action's prosecution.  She never objected to strategy for over three [3] years while her claim and later her civil action was pending.

In Plaintiff's Affidavit at ¶ 5 and 6, the plaintiff identifies her pre-Stipulation injuries [neck, back, headaches, loss of smell and taste, & other symptoms] and her post-Stipulation injuries [thyroid problems & adrenal and pituitary gland damage].  The post-Stipulation alleged injuries were not discovered until the plaintiff was examined by defendants' *__second__* taste and smell medical expert, Dr. Henkin, on July 28 to 31, 2006. Although the plaintiff now states that she is treating with an endocrinologist for her thyroid, adrenal, and pituitary gland problems, we note that such treatment records/affidavit are conspicuously absent.

Now that the strategy in Plaintiff's Affidavit at ¶ 4 was unsuccessful, the plaintiff, discharges her counsel, engages new counsel, and seeks to annul such strategy and expand her injuries and recoverable damages by moving to revoke the Stipulation.

It should be properly noted that throughout the pendency of this claim and later civil action, the defendant has solely focused on only a loss of taste and smell. All discovery activities were tailored to this single claim. The defendant has refrained from investigating other sources of defense, other causes of injury, the engaging of other expert [medical and other], and has relied on the plaintiff's Stipulation representations.

In our judicial system, "[s]tipulations fairly entered into are favored." ***TI Federal Credit Union v. DelBonis***, 72 F.3d 921, 928 (1st Cir. 1995) *quoting* ***Burstein v. United States***, 232 F.2d 19, 23 (8th Cir. 1956). Factual stipulations tend to "expedite a trial and eliminate the necessity of much tedious proof." ***Id***. As a result, "parties to a lawsuit are free to stipulate to factual matters." ***TI Federal Credit Union*** at 928 *quoting* ***Saviano v. Commissioner of Internal Revenue***, 765 F.2d 643, 645 (7th Cir. 1985).

Litigation stipulations can be understood as the analogue of terms binding parties to a contract. ***TI Federal Credit Union*** at 928 *citing to* ***Marshall v. Emersons Ltd.***, 593 F.2d 565, 569 (4th Cir. 1979). "A party may be relieved of a stipulation for good cause-which means, in a nutshell, that good reason must exist and that relief must not unfairly prejudice the opposing party or the interests of justice." ***American Honda Motor Co., Inc. v. Richard Lundgren, Inc.***, 314 F.3d 17, 21 (1st Cir. 2002).

A change of attorneys does not relieve a party of a stipulation entered into by a previous attorney. ***The People v. James Lee Trujillo***, 67 Cal.App.3d 547, 555 (Cal.App. 1977). "[The new counsel] steps into the place of his predecessor, and stands, with

reference to the case, and to the other party, precisely as did his predecessor, and can repudiate or be relieved from an agreement that had been made by him only to the same extent and in the same manner as could his predecessor." *Id. citing to **Smith v. Whittier***, 95 Cal. 279, 30 P. 529 (Cal. 1892).

In the present circumstances, the plaintiff has *failed to establish the requisite "good cause"*, *has failed to establish the lack of unfair prejudice to the defendants*, and that *the revocation of the Stipulation is in the interest of justice.*

The revocation of the Stipulation will only serve the plaintiff's interests to the detriment of the defendant and the interest of justice. The plaintiff chose a strategy that was not successful. Predecessor counsel's *misguided and unwarranted* advice is not good cause. The plaintiff has failed to show any misrepresentation, mistake of fact, excusable neglect, nor incompetence of counsel. Similarly, the plaintiff is not alleging any basis for discharging predecessor counsel in association with the Stipulation. The Stipulation was a valid strategy, employed by a knowing adult plaintiff with advice of counsel.

The defendants will be unfairly prejudiced because all of their efforts were guided solely to defense of a loss of taste and smell. If the Stipulation is vacated, the defendants will incur significant and additional costs and expenses in further and repeated discovery. It will further extend the discovery and trial of this matter and expose the defendant to additional interest on any recovered award. The most unfair and prejudical effect is that the pecuniary exposure may be substantially increased.

Lastly, any further delay of the trial is not in the interests of justice. The defendant is entitled to a trial, in reasonable time, and without constant claim alteration by the plaintiff.

WHEREFORE, the defendants pray that this Honorable Court deny *Plaintiff's Motion to Revoke Stipulation Limiting Claims for Damages to Those Related to Taste and Smell* or in the alternative if the motion is allowed, to condition such allowance upon the payment of all fees and costs incurred by the defendants in conducting further and repeated discovery in this action.

Respectfully submitted
By their attorneys,

**CLINTON & MUZYKA, P.C.,**

"/s/Thomas J. Muzyka"
**Thomas J. Muzyka**
**BBO NO. 365540**
**Terence G. Kenneally**
**BBO NO. 642124**
One Washington Mall
Suite 1400
Boston, MA 02108
617-723-9165

Dated:  September 18, 2006

# EXHIBIT "A"

RUN DATE: 07/05/02          Nantucket Hospital Admissions *LiVE*          PAGE 1
RUN TIME: 1934             NCH Patient Demographic Information
RUN USER: NCHGP                                                    02385*

**Patient Information**

Account #: 02257079                    Medical Record #: 472 23
    Name: EVANS,JULIANNE                DOB: 10/23/62    Age: 39    Sex: F

Island Address:                        Off Island Address:
    196 CLIFF ROAD
    NANTUCKET, MA 02554
Home Phone: 508-825-9904               Off Island Phone:
Date of Visit/Time: 07/05/02 1934      Date Leaving this address:
SS#: 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                       Race: WHT        Mar Status: S
Accident/Occurrence Type:              Accident/Occurence Date:
Reason For Visit: NECK TRAUMA

-PERSON TO NOTIFY: NONE,PER PT                      Rel: OTHER
    Home Phone: /                      Work Phone:

-GUARANTOR: EVANS,JULIANNE                          Rel: SAME AS PATIENT
    Address: 200 JACARANDA DRIVE
             PLANTATION,FL 33324
Home Phone: 954-473-8871               Occupation: WRITER
    Employer: SELF EMPLOYED            Emp Phone #:

-INSURANCES:
1. BLUE CROSS OF MASSACHUSETTS         Policy #: 369801103-A
    100 SUMMER STREET BOSTON, MA  02110 Subscriber: EVANS,JULIANNE    Rel: S

-DOCTORS:
ER Doctor: HARTMANN,MARGO              Other Doctor: WEES
Family Doctor: DOCTOR,OUTPATIENT       PCP Phone #:

-MISCELLANEOUS:
Advance Medical Directive: N    On File At NCH? N    Financial Class: BX
Religion: CATHOLIC                                   Discharge Disposition:
Last Inpt:                                           Discharge Time:
Admit Priority: ELE                                  Clerk: NCHGP
Reg Comment:

****************************************************************************
CONSENT TO TREAT:  The undersigned consents to any Nantucket Cottage Hospital
services rendered to the patient at the instruction of the attending ER physician
for the purpose of diagnosis and treatment.  I understand that my consent may be
withdrawn at any time.


_____    _____
Patient signature (If not patient signing state relationship)       Witness


FINANCIAL AGREEMENT:  I agree that I will pay Nantucket Cottage Hospital all charges
for services rendered or to be rendered to the patient.  I also authorize payment
directly to Nantucket Cottage Hospital of all benefits otherwise payable to the
patient by reason of any insurance policies and I hereby irrevocably assign such
benefits to Nantucket Cottage Hospital.


_____    _____
Patient signature (If not patient signing state relationship)       Witness

© 1996 - 2002 T-System, Inc. Circle or check affirmatives, backslash (\) negative

**EVANS, JULIANNE**
MRI#:
DOB: 10/23/62
SS#: 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
ER MD: HAMA

ACT#: 02257079
DOS: 20020705
SEX: F

24

Nantucket Cottage Hospital
# EMERGENCY PHYSICIAN RECORD
## General Adult    (5)

TIME SEEN:_____ ROOM:_____ ____ EMS Arrival

HISTORIAN: (patient) _spouse _paramedics_____
___HX / ___EXAM LIMITED BY:_____

Chief complaint: Struck in
back of neck by
sailboat boom

Started: 30 minutes ago

| time course: | severity: | modifying factors: |
|---|---|---|
| __still present | __mild | __none |
| __better | __moderate | |
| __gone now | __severe | |
| __worse | | |

10 minutes of in and
out of consciousness

Awake and Oriented
during EMS transport

C/o pain in neck

No other injury

___Similar symptoms previously

___Recently seen / treated by doctor

### ROS

CONST.
__fever
__subjective / to _____ °F
__chills

ENT
__sore throat
__nasal drainage / congestion

CVS / PULMONARY
__cough
__sputum
__trouble breathing
__chest pain

GI
__abdominal pain
__nausea / vomiting
__diarrhea
__black / bloody stools

URINARY
__problems urinating
__frequent urination

FEMALE GENITAL
__abnormal bleeding / discharge
LMP
__postmenopausal / hysterectomy

SKIN / MS
__skin rash
__back pain
__leg pain
__foot swelling

NEURO / EYES
__headache
__blackout
__lost feeling / power
__in arm  leg  face  R / L
__difficulty walking
__difficulty with speech
__double vision
__confusion

☐ all systems neg. except as marked

### PAST HX      __negative
__neurological problems
      CVA    seizure disorder

__cardiac disease
      heart attack (MI)    angina
      heart failure

__high blood pressure

__other problems
Neurological problem in feet

__lung disease
      asthma    emphysema

__diabetes
      insulin-dependent    diet-controlled
      oral hypoglycemic

__high cholesterol

Medications __(none) _see nurses note
__ASA  __NSAID __acetaminophen

Allergies __NKDA
__see nurses note

SOCIAL HX      __smoker
__alcohol: (occasional / frequent / recent)

__drugs

FAMILY HX

NANTUCKET COTTAGE HOSPITAL
NURSING TRIAGE ASSESSMENT

EVANS, JULIANNE
MRI#:
DOB: 10/23/62
SS#: 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
ER MD: HAMA

NO. 023858

Date: 9/5/02    Time Triaged: 1515

Primary Care MD: _____

*EVANS 10/23/62*

| ARRIVAL MODE | ACCMP'D BY | FROM |
|---|---|---|
| ☐ Ambulatory | ☐ Self | ☐ Home |
| ☐ Wheelchair | ☐ Employer | ☐ Nrsg. Home |
| ☐ Carried | ☐ Relative | ☐ Other Hosp. |
| ☒ Stretcher | ☒ Ambulance | ☐ Doctor's Ofc. |
| | ☐ Parent/Guardian | ☒ Other |

**TRIAGE PRIORITY**
☐ 1 Emergent    ☒ 2 Urgent    ☐ 3 Non-urgent/Chronic

**CHIEF COMPLAINT**

T ____ P 7 R 18 BP 105/82 WT ____ HT ____

☐ Elev. BP    ☐ Dr. Notified    ☐ Pt. Notified    97²

**TRIAGE NOTES**
Struck By Bumper ?
Fell back — LOC x 10-15 sec
Currently A+O — Pt Remember
Events of accident

Triage R.N. Signature: _____

| MEDICATIONS ☐ None | ALLERGIES ☐ None |
|---|---|
| | Darvon |
| | Darvon |
| | Codene |

**PAST MEDICAL HISTORY**    ☐ None
☐ Smoker ____ PPD    FAM. Hx ____
☐ HBP  ☐ Cardiac  ☐ DM  ☐ IDDM  ☐ Resp  ☐ Seizure  ☐ CVA
☐ Asthma  ☐ Renal  ☐ Other  ☐ Unexplained wt. loss within 6 mos. ____ lbs
Details: ☐ ETOH  ☐ LYME/BAB  ☐ DRUG ____
*Nerve disease in feet*

Immunizations ☐ UTD    ☐ Non-Current    Exposure to ____
Last Tetanus Toxoid ☐ UTD  ☐ >5 yrs.  ☐ >10 yrs.    LRMP ____ WT ____
Last Meal  ☐ N/A    Food @ ____    Fluids @ ____
Language spoken ____ Interpreter needed  Y  N
Other Communication Barriers ☐ N/A    Y ____

**PAIN ASSESSMENT**
Quality – is it sharp, dull, throbbing/constant, intermitting, worsening, etc. ____
Timing – Onset of S/S ____
Pain Modifying Factors ____
Level 0 - >10 ____

**TRIAGE ASSESSMENT**

| AIRWAY | BREATHING | EMOTIONAL | RESPONSE LEVEL |
|---|---|---|---|
| ☒ Patent | ☐ Oximetry | ☐ Calm | ☐ A-Awake |
| ☐ Comprised | ☒ Spontaneous | ☐ Withdrawn | ☐ V-Verbal |
| ☐ Assisted | ☐ Labored | ☒ Anxious | ☐ P-Pain |
| | ☐ Assisted | ☐ Combative | ☐ U-Unconscious |
| | ☐ Absent | ☐ Crying | |

| SKIN | | | CIRCULATION | | |
|---|---|---|---|---|---|
| ☒ Normal | ☐ Warm | ☒ Dry | ☐ Bleeding | | ☒ N/A |
| ☐ Flushed | ☐ Hot | ☐ Moist | Mild | Mod | Severe |
| ☐ Pale | ☐ Cool | ☐ Diaphoretic | | | |
| ☐ Tanned | ☐ Yellow | | | | |
| ☐ Mottled | | | | | |

**PRIOR TREATMENT**
☒ Cerv. Collar    ☐ Sling    ☐ Splint    ☐ Ice
☒ Spine Immob.    ☐ Dressing    ☐ O₂    ☐ Elev.
☐ Eye Flush

**ALLEDGED/SUSPECTED ABUSE ASSESSMENT**

| | | |
|---|---|---|
| Domestic Violence | ☐ Y | ☒ N |
| Elder Abuse/Neglect | ☐ Y | ☐ N |
| Child Abuse/Neglect | ☐ Y | ☐ N |
| Disabled Abuse/Neglect | ☐ Y | ☐ N |

*IF CHECKED – FURTHER DOCUMENTATION REQUIRED.

**VISUAL ACUITY**    ☒ PERL
L ____    R ____
☒ N/A    OS ____    OD ____

**TRIAGE INTERVENTION**
☐ None    ☐ Ice Pack    ☐ Splint    ☐ Dressing    ☐ Lab
☐ Clean Catch U/A    ☐ Wnd Cleansed    ☐ C-Collar

**TRIAGE PLAN**    Triage to bed ____
☐ ER    ☐ X-RAY    ☐ EYE    ☐ PEDI
| | ☐ WAIT. RM.    ☐ HALL    ☐ GYN
☐ FAST TRACK    ☐ PSYCH

**DISCHARGE PLANNING ASSESSMENT**

| Condition | Mode | | ☐ Transfer ____ |
|---|---|---|---|
| ☐ Improved | ☐ Ambulatory | ☐ In Custody | ☐ Home  ☐ Morgue |
| ☐ Unchanged | ☐ Wheelchair | ☐ Stretcher | ☐ AMA  ☐ OR |
| | ☐ Carried | ☐ Other | ☐ Nsg. Home  ☐ Police |

**CURRENT SUPPORT SYSTEMS**        **INSTRUCTIONS**
☐ Friend                        ☐ Given to Patient
☐ Family                        ☐ Read to Patient
☐ *Agency                       ☐ Verbal Understanding
  *Referral given to whom        ☐ Return Demo Given
☐ Self                          ☐ Chart Signed by Patient

Time: ____    Initials: ____

R.N. Signature: ____

# PHYSICIAN'S ORDERS

EVANS, JULIANNE
MRI #:
DOB: 10/23/62
SS#: 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
ER MD: HAMA

ACT#: 02257079
DOS: 20020705
SEX: F

PHYSICIAN

| Drug Allergies | |
|---|---|

| Date & Time | Another brand of drug identical in form and content may be dispensed unless checked ☐ | DO NOT USE THIS SHEET UNLESS A RED NUMBER SHOWS ➡ 1 | Nurse's Initials |
|---|---|---|---|
| 2/6 | IV NS | | |
| | C-Spine films | | |
| | Head CT | VA/UCG | |
| | Naced 2 tab PO q 50 | | |
| | | | |
| n/s | norel 2200 500 clear | | |



**Nantucket Cottage Hospital**

| | |
|---|---|
| Name: | **EVANS, JULIANNE** |
| Med Rec #: | |
| Date of Birth: | **10/23/1962** |
| Patient Type: | **ER** |
| Ordering Physician: | **Marc DeBell, M.D.** |
| X-RAY Number: | **184658** |

**X-RAY REPORT**

Exam Date:          **07/05/2002**

---

**HEAD CT**

Reason for exam:  Boom hit on occiput.

Findings:  Axial images were obtained through the head without intravenous contrast.   No comparison studies.

Ventricles and sulci are normal to slightly prominent for age.   No mass effect or midline shift is present.   There is no evidence for intracranial hemorrhage.   No extra-axial fluid collections are present.   No fractures are present.

IMPRESSION:  No evidence for intracranial trauma.

_____          _____
Jessie Chai, M.D.                               Date
Interpreting Radiologist

JC/TL431      Job#:92031
D:07/06/2002   at   08:08:00
T:07/07/2002   at   18:14:26



**Nantucket Cottage Hospital**

| | |
|---|---|
| Name: | **EVANS, JULIANNE** |
| Med Rec #: | |
| Date of Birth: | **10/23/1962** |
| Patient Type: | **ER** |
| Ordering Physician: | **Marc DeBell, M.D.** |
| X-RAY Number: | **184658** |

**X-RAY REPORT**

Exam Date: **07/05/2002**

---

**CERVICAL SPINE**

History:  Boom hit on occiput.

Findings:  Five views are submitted without comparisons. Prevertebral soft tissues are normal.  There is loss of the normal lordosis.  A 2 mm anterolisthesis of C4 on C5 is present.  No fracture is identified.  Disc spaces are well preserved.  The left neural foramina are not well evaluated on one oblique view.  No neural foraminal compromise is present on the right.

IMPRESSION:  A 2 mm anterolisthesis of C4 on C5.  No fracture identified.

_____          _____
Jessie Chai, M.D.                  Date
Interpreting Radiologist

JC/TL431      Job#:92031
D:07/06/2002   at   08:08:00
T:07/07/2002   at   18:25:07

# NANTUCKET COTTAGE HOSPITAL
## MEDICATION ADMINISTRATION RECORD

| INITIALS | SIGNATURE | INITIALS | SIGNAT |
|---|---|---|---|
| JT | James J Jems | | |
| | | | |
| | | | |

EVANS, JULIANNE
MRI#:
DOB: 10/23/62
SS#: 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
ER MD: HAMA

ACT#: 02257079
DOS: 20020705
SEX: F

ADDRESSOGRAPH

DOCTOR:

ALLERGIES:        WEIGHT:

| START/ RENEW | VERI-FIED BY | MEDICATION, DOSE, ROUTE | SCHEDULE | DATE 7/5 | DATE | DATE | DATE | DATE |
|---|---|---|---|---|---|---|---|---|
| 7/5 | | Percocet 7 Abs 2 Po To Se | AM | | | | | |
| | | | PM | dose | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |
| | | | AM | | | | | |
| | | | PM | | | | | |

– LIST SINGLE DOSE MEDICATIONS BELOW –

| DATE | MEDICATION DOSE & ROUTE | TIME | NURSE | DATE | MEDICATION DOSE & ROUTE | TIME | NURSE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

NANTUCKET COTTAGE HOSPITAL EMERGENCY DEPARTMENT
# AFTERCARE INSTRUCTIONS TO THE PATIENT

Name _____    Date _____    Record _____

## DISCHARGE INSTRUCTIONS SHEETS:

| | |
|---|---|
| ☐ Abdominal Pain (Belly Pain) | ☐ Impetigo |
| ☐ Allergic Reactions | ☐ Insect Bites |
| ☐ Back Care | ☐ Kidney Stones |
| ☐ Burn Care | ☐ Motor Vehicle Accident – Trauma |
| ☐ Cast and Splint Care | ☐ Neck Strains |
| ☐ Chest Pain | ☐ Pediatric Fever Control |
| ☐ Conjunctivitis | ☐ Shortness of Breath |
| ☐ Crutches | ☐ Sore Throat |
| ☐ Dizziness | ☐ Sprains, Fractures, and Bruises |
| ☐ Elastic Bandage (Ace Wrap) | ☐ Sunburn |
| ☐ Ear Infection – External | ☐ Tetanus Shot |
| ☐ Ear Infection – Middle | ☐ Urinary Tract Infection |
| ☐ Eye Injuries (Foreign Body, Abrasions) | ☐ Viral Illnesses |
| ☐ Headache | ☐ Vomiting and Diarrhea in Adults |
| ☐ Head Injury | ☐ Vomiting and Diarrhea in Infants |
| ☐ Hemorrhoids | ☐ Vomiting and Diarrhea in Children |
| ☐ High Blood Pressure | ☐ Wound Care |

**GENERAL INSTRUCTIONS:** In the event that your condition requires follow-up care for such things ... removal or cast changes or removal, or if your condition does not improve as expected, you are being referred to the local physician whose listing is checked below. If you already have a local physician, you may, of course, contact him instead.

## EMERGENCY PHYSICIANS OF NANTUCKET, P.C.

[ ] Timothy Lepore, M.D., Vesper Lane, Nantucket, MA. 508-228-4846
[ ] C. Christian Briggs, M.D., 27 Union Street, Nantucket, MA. 508-228-1123
[ ] George Butterworth, M.D., Vesper Lane, Nantucket, MA. 508-228-3200
[ ] Diane Pearl, M.D., Vesper Lane, Nantucket, MA. 508-228-4748
[ ] Greg Hinson, M.D., 57 Prospect Street, Nantucket, MA. 508-325-9981

> NANTUCKET COTTAGE HOSPITAL
> EMERGENCY ROOM
> **508-825-8165**

## SUPPLEMENTARY INSTRUCTIONS:

*Apply ice (5 minutes every 2 hours*
*Use Motrin 4 pills (200 mg) 3 times a day*
*Percial as needed for pain*

I hereby acknowledge receipt of the instructions indicated above. I understand that I have had emergency treatment only, and that I may be released before all medical problems are known or treated. I will arrange for follow-up care as instructed above.

Phone Number to use for follow-up _____ . May a message be left? ☐ Yes ☐ No

_____    _____ (Patient or Representative Signature)    (Date)

Discharge Time    _____ (MD Signature)    (Date)

### EMERGENCY PHYSICIANS OF NANTUCKET, P.C.

**ADDITIONAL SERVICES:**
Social Services: 508-825-8195          Physical Therapy: 508-825-8191
Dietary: 508-825-8141                  Home Health: 508-825-8300

Nantucket Cottage Hospital
Consent & Authorization
Form

EVANS, JULIANNE
MR#
DOB: 10/23/62
SS#: 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
ER MD: HAMA

ACT#: 02257079
DOS: 20020705
SEX: F

## A. CONSENT FOR TREATMENT (Please Circle One):        OUTPATIENT    INPATIENT    ER

I hereby consent to be admitted/treated as a patient at Nantucket Cottage Hospital for the purpose of receiving medical care and treatment and/or diagnostic procedure.

1. I am aware that all attending physicians are given privileges to practice at Nantucket Cottage Hospital but not all physicians are agents or employees of the hospital.

2. I understand that I have the right to consent or revoke consent, in writing, for any proposed procedure or therapeutic treatment and that discussion of the risks, benefits, and alternatives to each procedure is available to me.

DATE: 7-5-02        PATIENT SIGNATURE: Pt Unable to sign

RESPONSIBLE PARTY OTHER THAN PATIENT SIGNATURE:

## B. AUTHORIZATION FOR PAYMENT:

I hereby authorize payment to Nantucket Cottage Hospital of all insurance benefits including but not limited to federal & state programs, VA, and TRICARE and assign my rights thereunder to Nantucket Cottage Hospital. I understand that I am personally responsible to pay to Nantucket Cottage Hospital all amounts billed for the services I receive that are not paid by these insurance benefits as well as deductibles and coinsurance. If my account is not paid, I will pay all costs including, but not limited to, attorneys' fees and court costs expended in collection efforts. I authorize Nantucket Cottage hospital to utilize my Medicare Part A lifetime day coverage and Outpatient Medicare Part B coverage, when necessary. I have received "Medicare Message to Patients."        Initial: _____

## C. AUTHORIZATION FOR RELEASE OF INFORMATION:

1. I understand that there may be times when Nantucket Cottage Hospital is required to give or receive information relating to my hospitalization or my outpatient treatment.

2. I agree that Nantucket Cottage Hospital, and/or their authorized designated record review and processing representatives may give information concerning my hospitalization or my outpatient treatment to my insurance company and/or referring physician(s), including information listed in the section below.

3. I understand there are certain highly confidential records that can not be released without my specific written consent and an authorized release for, under Massachusetts State Law.

4. I agree that Nantucket Cottage Hospital may obtain and/or release all necessary information about me, including highly confidential clinical and coded information to assist in my care or treatment or to appropriately bill me or others who have provided medical care to me or are responsible for this payment of all or part of my bill.

5. I understand that the authorization and consents in this form are on file at the hospital and shall apply to my current admission, on-going outpatient care, and such other services as are required in the continuation of treatment. This authorization shall be valid for the time necessary to process reimbursement claims pertaining to this specific account.

6. I give/do not give consent to notify clergy of my hospitalization.        Initial: _____

```
RUN DATE: 07/17/02              NANTUCKET *LIVE* ABS                        PAGE 1
RUN TIME: 0921                  ATTESTATION STATEMENT
RUN USER: LRO
```

| NAME: | EVANS, JULIANNE | | ACCT #: | 02257079 |
|-------|-----------------|---|---------|----------|

| ADM DATE: | 07/05/02 | UNIT #: | |
|-----------|----------|---------|---|
| ATTEND PHYS: | HARTMANN, MARGO | SEX: | F |
| DIS DATE: | 07/05/02 | AGE: | 39 |
| DISCH DISP: | HOME-ROUTINE DISCHARGE | DOB: | 10/23/62 |
| LOS: | 1 | FIN CLASS: | BX |
| PT CLASS: | ER | ABS STATUS: | FINAL |

```
DIAGNOSES:
ADMIT:  959.09   INJURY OF FACE AND NECK
PRINC:  920      CONTUSION FACE/SCALP/NCK
SECOND: E917.9   STRUCK BY OBJ/PERSON NEC
```

```
OPERATIONS:
07/05/02 89.39   NONOPERATIVE EXAMS NEC
```

```
DRG:

STATUS    $ REIMB  MIN-LOS  MAX-LOS  STD-LOS      GRP VERS    GRP FC
                                                  19          BX
```

I certify that the narrative descriptions of the principal and secondary diagnoses and the major procedures performed are accurate and complete to the best of my knowledge.

_____        _____ DATE

ACKLAND SPORTS MEDICINE, INC.
100 Independence Drive
Hyannis, Massachusetts
(508) 790-1110

Julianne Evens                                Patient # 60290
DOB: 10/23/62

09/18/02

S: Julianne is a 39 year old author who summers on Nantucket and
spends her winters in Florida. She reports that on July 3rd she was
sailing in a small 20 foot sailboat when her boat was struck by
another 20 footer. She was struck in the back of the neck by the
boom of the other boat. She says she was rendered unconscious for
approximately 20 minutes. She was transported to Nantucket Cottage
Hospital where she was seen and evaluated. She was told that she
had a concussion and released.

She states that since that time she has continued to have pain
along her C-spine which has now gone into her lower back. She says
that approximately August 8th she was walking at the Brant Point
Lighthouse when she slipped and sustained an injury to her left
ankle and right wrist. She says she felt a loud popping noise from
her ankle and was in quite a bit of pain. She was again seen and
evaluated at Nantucket Cottage Hospital where she was told she had
a grade 3 ankle sprain and placed in an air cast boot. She was told
that she would need to be in the boot for approximately six weeks.

She was getting around in the air cast boot with crutches, but she
began developing a lot of pain in her right wrist. She went back to
the Nantucket Cottage Hospital approximately three weeks later and
they took an x-ray of the wrist and found that she had a fractured
styloid process and she was placed in a Velcro wrist splint. At the
same time, she came out of the air cast boot because she was unable
to get around in it.

She says that since that time, she has had continued pain in her
right wrist when she tries to do any lifting or writing with that
hand. She says her ankle still bothers her on a regular basis, as
well as still having pain in her neck and back. She has a history
of type 2 Charcot-Marie-Tooth neurologic disease, which is a slow
developing peripheral neuropathy.

Office Note
RE: Julianne Evens
Patient # 60290
DOS: 09/18/02
Page 2


Otherwise, her review of systems is negative for hepatitis or liver
problems, cancer, HIV risk factors, diabetes, bleeding disorders,
asthma or lung problems, heart problems, hypertension, blood clots
or phlebitis, stomach problems, psoriasis or gout. Current
medications include about a 1000 mg of ibuprofen daily. She has
allergies to Darvocet, Darvon and codeine. She does not smoke
tobacco or drink alcohol.

O: On examination today, she is an age-apparent woman in no acute
distress. She stands 5'9" tall and her weight is 155 pounds.

Examination of her right wrist reveals pain with flexion and
extension against resistance. She also has pain with resistance to
supination and pronation. She locates this pain along the distal
ulna. There is no deformity noted. She is tender along the lateral
aspect of the wrist as well, but there is no laxity noted. Her skin
is intact. Sensory and motor function is intact with respect to the
radial, median and ulnar nerves. She has a +2 radial pulse.

Examination of her left ankle reveals swelling along the lateral
malleolus, with pain to palpation along the lateral and medial
joint lines. She shows no weakness with stressing of the posterior
tibial or peroneal brevis tendons. She is able to fully plantar and
dorsiflex without pain or problem. She has no pain with movement of
the ankle, subtalar or transverse tarsal joints. She does have a
pes cavus deformity. There is some pain along the plantar fascia
with palpation.

Examination of her C-spine shows that she has some decreased range
of motion with left lateral rotation and tilt. There is some
notable crepitus as well. She has no pain over the paracervical
musculature, but she does have some pain over the paralumbar
musculature. She has pain with forward flexion. She has an absence
of deep tendon reflexes and she says this is a result of her
Charcot-Marie-Tooth disease.

X-rays which she brings with her from Nantucket Cottage Hospital
show a fractured styloid of the right wrist.

X-rays obtained and reviewed in the office today for comparison
show that there is some healing. The fracture site has not changed
from previous films. The styloid is slightly angulated with both
films.

Office Note
RE: Julianne Evens
Patient # 60290
DOS: 09/18/02
Page 3

X-rays which she brings with her from Nantucket Cottage Hospital of
the C-spine show some loss of the normal lordotic curve, with some
angulation along C5 and C6.

X-rays which she brings with her of her left ankle are negative for
any bone or joint abnormalities.

A: 1) Right wrist styloid fracture.
   2) C-spine and lower back pain.
   3) Ankle sprain.

P: At this point in time, we are going to send her to Dr.
Monighetti for a consult after she gets an MRI of her C-spine.

For her wrist, we are going to keep her in the wrist splint.

We are going to begin physical therapy for her ankle. We will get
her a soft Neoprene brace as well.

We would like to see her back after about six weeks of physical
therapy.

Dictated by Mark Colucci, PA-C

Reviewed and approved by Michael K. Ackland, M.D.

MKA/MC/jmd

# CONSULTATION REPORT

**An extensive amount of time was needed to thoroughly evaluate and examine this patient. A review of this patient's personal medical history was in hand. A diligent examination and discussion of my findings were warranted to complete this patient's assessment. The pertinent clinical findings and overall diagnosis were discussed. The treatment plan in relation to the patient's long term prognosis was discussed.**

**PATIENT:** Evans, Julianne (W)

**DATE:** December 16, 2002

**CHIEF COMPLAINT:** Neck , back, right wrist, and left ankle pain.

**HISTORY OF PRESENT ILLNESS:** This is a 40-year old female who presents for evaluation of injuries sustained in a boating accident on 7/5/02. This occurred out of state while on vacation. She was taking boating lessons and another boat hit her boat and the mast of her boat ended up hitting the patient in the back of her head. The patient fell forward in a hole. Question initial loss of consciousness. She was taken to an emergency room on Nantucket. CT of her brain was negative. She was initially diagnosed with a concussion. X-rays of her cervical spine were also negative. She was given p.r.n. pain medications. She had initial neck and upper back pain. The patient had a re-exacerbation of symptoms while walking near a lighthouse four weeks later. She felt a sharp spasm in her back causing her to fall. At this time she twisted her left ankle and fell onto her right wrist. She was seen in an emergency room where she was diagnosed with a left ankle sprain, and old fracture to the wrist question acute on chronic injury. She was evaluated by a Dr. Acklund. His opinion of her wrist was also acute on chronic injury. He eventually did order an MRI of her cervical spine. This showed a disc protrusion at C5-6, C6-7. She states during the course of her symptoms, she also lost some of her sense of smell. She was given a removable splint for her wrist to wear with activities. She presents to our office for evaluation of her neck, back, left ankle, and right wrist. She states that her right wrist bothers her with grasping, lifting, and reaching. It occasionally does swell. With regards to her ankle, she notes pain with walking. She has continued neck and back pain with headaches, stiffness, and spasm. She denies any injuries to her neck, back, wrist or ankle prior to the accident.

**PAST MEDICAL HISTORY:** None.

December 16, 2002
Evans, Julianne (W)
Page Two

**PAST SURGICAL HISTORY:** Seven foot surgeries - six on the right foot, one on the left foot.

**ALLERGIES:** None.

**CURRENT MEDICATIONS:** None.

**SOCIAL HISTORY:** Negative drink, negative smoke, negative IV drug abuse.

**FAMILY HISTORY:** Negative diabetes, hypertension or bleeding tendencies.

**REVIEW OF SYSTEMS:** No fevers, chills, nausea or vomiting. Negative constitution complaints.

**PHYSICAL EXAMINATION: Neurologic assessment:** The patient is alert, awake and oriented. **Head and neck:** The patient's visual acuity is grossly intact. Extraocular movements are within normal limits. **Chest:** The patient has normal respiratory efforts with good chest wall excursion. **Musculoskeletal exam:** Clinical examination of her **cervical spine** is with no evidence of infection, erythema, or drainage. Positive bilateral paracervical spasm and tenderness. Positive bilateral trapezius spasm and tenderness. Mild restriction to lateral side bending. Negative distraction, negative compression findings. Motor and sensory intact. Distal pulses intact.

Clinical examination of her **lumbar spine** is with no evidence of infection, erythema, or drainage. Positive bilateral paralumbar spasm and tenderness. Positive bilateral upper gluteal spasm and tenderness. Symmetrical diminished reflexes. Tight hamstrings. Negative straight leg raises. Negative Babinski. Negative clonus.

Clinical examination of her **right wrist** is with no evidence of infection, erythema, or drainage. positive TFCC tenderness. Negative Watson's. Negative Finkelstein's. Equivocal snuff-box. Equivocal circumduction. Negative impingement signs. Mild restriction to palmar flexion.

**X-RAY:** X-rays flexion/extension views show no fractures or subluxations. X-rays of her right wrist show question old non-union of the ulnar styloid. MRI of the right wrist shows an old healed Colles' fracture with non-united slightly medially displaced fracture of the distal unlar styloid and a widened scapholunate interval.

**ASSESSMENT:**     1.     Post traumatic cervicalgia/lumbago
                           2.     Ankle pain deferred to Dr. Sheinberg
                           3.     Post traumatic right wrist pain, question acute on chronic injury, deferred to Dr. Gellman

December 16, 2002
Evans, Julianne (W)
Page Two

**PLAN:** We will defer the patient's wrist evaluation to Dr. Gellman. We will also defer her ankle
to Dr. Sheinberg. She will be sent for an MRI of her lumbar spine. She will also be referred to
Dr. Bodner for evaluation of her cervical and lumbar spine. We will watch the patient closely.
Follow up in one month.

The patient was seen by Dr. DeSimone and Matthew Dovie.


Alfred A. DeSimone, M.D./Matthew Dovie, PA-C
Sports Medicine

MD/ar

cc:    Steve Miller

University of Miami
# COMPREHENSIVE PAIN AND REHABILITATION CENTER
at
South Shore Hospital and Medical Center



**C P R C**

Hubert L. Rosomoff M.D., D. Med. Sc.
Medical Director

Reneé Steele Rosomoff, R.N., B.S.N., M.B.A.
Programs Director

*A CENTER OF EXCELLENCE SINCE 1974*

April 9, 2003

**Pain Medicine
Physician Specialties**

Neurological Surgery

Physical Medicine
and Rehabilitation

Anesthesiology

Psychiatry

**Treatment Services**

Multidisciplinary Evaluations

Inpatient and outpatient
Therapy Services

Comprehensive Pain and
Rehabilitation Program

Headache Management

Back Surgery Program:
Pre- and Post-operative

Post-surgical Rehabilitation
Program

Geriatric Rehabilitation
Program

Occupational Therapy

Physical Therapy

Psychological Services

Vocational Services

**Ergonomic Services**

Functional Capacity
Evaluation

Job Site Analysis/Design

Occupational Safety
and Health

SUBJECT:  EVANS, JULIANNE

NEUROSURGICAL CONSULTATION

CHIEF COMPLAINT:  Neck pain.

HISTORY OF PRESENT ILLNESS:  This is a 40-year-old realtor who was sailing in Nantucket on July 5, 2002, when there was boat collision and the boom struck her neck posteriorly, causing her to fall into the cockpit, face first. She was unconscious for 20 minutes, and when she awakened, and was pulled back onto her knees, she could not talk or move her legs or arms. She did recover and she was told she had a cerebral concussion, but in fact she sustained a loss of smell, which so far has persisted, and therefore she really had a closed head injury, cerebral contusion. She was told to rest at home for a week, but as she was doing so, she began to develop posterior cervical pain and neck soreness. She was bruised about the buttocks and, therefore, also had low back pain and was unable to stand. She fell in August 2002, fracturing her right wrist and spraining her left lower extremity. She was casted. In September she had an orthopedic consultation and an MRI was done. Physical therapy was ordered, but never accomplished. She essentially has had no treatment since. She has gained 18 pounds. She had used ibuprofen 200 mg 4 to 6 times a day, but she is not currently on medication. She did return to work in January 2003. She can sit 60 minutes, stand only two minutes, and walk 500 feet, but slowly. She is 5 feet 9 inches tall and weighs 175 pounds.

PAST MEDICAL HISTORY:  Finds a hereditary, familial disease called Charcot-Marie-Tooth. She had early surgery to her right ankle and foot for reconstruction. She indicates that there were at least six procedures, and she has always had difficulty in ambulation because of the abnormal foot configuration. She cannot clearly state as to whether there has been any advance in this condition, but clearly this injury does aggravate those circumstances.

FAMILY HISTORY:  Indicates the strain of the Charcot-Marie-Tooth disease.

SOCIAL HISTORY:  Is noncontributory.



*Joint Commission*
an Accreditation of Healthcare Organizations

http://www.um-cprc.com    E mail: cprc@um-cprc.com
600 Alton Road, Miami Beach, Florida 33139
Tel: (305) 532-7246    Fax: (305) 534-3974
E mail: hrosomof@med.miami.edu



UNIVERSITY OF
# Miami
SCHOOL OF MEDICINE

EVANS, JULIANNE                2                    April 9, 2003

REVIEW OF SYSTEMS:   As above.

PHYSICAL EXAMINATION

General Systemic Examination:  Confirms the past medical history. The heart sounds are good, the lungs are clear, and there are no abdominal masses.

NEUROLOGIC EXAMINATION

Gait is abnormal and there is difficulty with heel and toe walking.

Coordination and equilibrium are impaired in both lower extremities.

Motor system is intact to manual muscle testing.

Sensory system shows absence of vibration sense in the feet and hypesthesia through the foot up into the lower one third of the left leg.

Reflexes are absent throughout.

Cranial nerves are unremarkable.

Mental examination is grossly intact.

Examination of the head and neck finds a slightly decreased range of motion with tenderness over both bicipital tendons and right levator scapulae. In the lumbar area there is a slightly decreased range of motion without tender/trigger points. The hamstrings are 90 degrees bilaterally, but the hip rotators are tight with an 8-inch composite on the right and 6 inches on the left. She has pes cavum bilaterally with the high arch, which is consistent with the Charcot diagnosis.

RADIOLOGICAL STUDIES: A review of the radiological studies submitted goes back to a brain CT of July 5, 2002, which is unremarkable. Studies of August 8, 2002, include views of the feet, which show the high arch, cervical spine x-rays, which are unremarkable, and the right wrist, which shows a chip fracture in the right ulnar styloid.

IMPRESSION: Ms. Evans has sustained an injury in which she had a closed head injury with cerebral contusion and loss of smell, which is likely permanent. She further has myofascial syndromes in both the cervical and lumbar areas, which are competent causes of her type of painful complaints. She does not have any signs of active nerve root, spinal

EVANS, JULIANNE                    3                    April 9, 2003

cord compression, or instability. She is a candidate for the pain and back rehabilitation program, which can be managed on an outpatient basis.

Hubert L. Rosomoff, M.D., D.Med.Sc., F.A.A.P.M.
Medical Director. University of Miami
Comprehensive Pain and Rehabilitation Center
Professor and Chairman Emeritus, U/M Med Sch
Department of Neurological Surgery
Vice-Chairman, State of Florida Pain Management Commission

HLR/lm/041103/evajulnceoff

EVANS, JULIANNE                    4                    April 9, 2003

cc:    Julianne Evans
       200 Jacaranda Dr, #B1
       Plantation, FL 33324

       Steve Miller, Esq.
       817 University Drive, #122
       Plantation, FL 33324

# NEUROLOGIC
# CONSULTANTS PA

PAUL A. FLATEN, M.D.

H. MURRAY TODD, M.D.

THOMAS C. HAMMOND, M.D.

MARC A. SWERDLOFF, M.D.

JONATHAN O. HARRIS, M.D.

SETH C. TARRAS, M.D.

TODD A. ROSENZWEIG, M.D.

DONALD E. NORMAN, M.D.*
*EMERITUS


Neuropsychology:

MARK E. TODD, Ph.D.

AIMEE N. STALEY, Psy.D.

Research, Clinical Coordinator:

MARGARET SCOTT, R.N.

June 12, 2003

RE:  EVANS, JULIANNE
Chart #: 183269IME          REF:  Brian G. Morrissey

## INDEPENDENT MEDICAL EXAMINATION

Julian Evans is a 40-year-old lady whose independent medical examination has been requested by Brian Morrissey.

Multiple medical records have been made available for this examination, which will be summarized chronologically in the body of this report.

On 07/05/02, Julian Evans was on a sailboat when another sailboat impacted the boat in which she was riding and the boom from this other sailboat swung in such a manner that it struck her in the back part of her neck and she was thrown forwards, headfirst into the bottom of the boat.  She reports that she was rendered unconscious and remained unconscious for 20 minutes.  She was taken to the Nantucket Cottage Hospital and reports that after she had regained consciousness and while still in the emergency room, she found herself unable to feel or to move her extremities.  She was in and out of consciousness during this time of paralysis, of some 5 1/2 hours.

In the hospital, they kept asking her if she could move her arms or legs.  She had a CT scan of her brain and was told that she had sustained a concussion.  She recovered well enough so they would allow her to be discharged. She was given Percocet for pain.  With subsequent headache and neck pain, she spent the next 10 days in bed.  There were two young people that cared for her during this time.  She even called the emergency room and advised them of her neck pain and headache.  They told her that she just needed to take Percocet and to anticipate that her symptoms were all because of the concussion that she suffered.

FORT LAUDERDALE
1841 N.E. 45th STREET
FORT LAUDERDALE, FLORIDA 33308
954 / 776-5010
FAX: 776-6055

POMPANO BEACH
MARIETTA BLDG., SUITE 200
50 EAST SAMPLE ROAD
POMPANO BEACH, FLORIDA 33064
954 / 942-3891
FAX: 941-4804

REPLY TO:

Fort Lauderdale
Office

continued...

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Two

Some 3 weeks later, she was out walking and twisted her ankle and fell. She returned to the Nantucket Cottage Hospital, where x-rays were taken and she was advised she had sustained a severe sprain of her left foot. She was given crutches and put in a soft ankle cast. She subsequently developed severe pain in her right wrist, so, about 3 weeks later she went to the Nantucket Cottage Hospital emergency room and had an x-ray and was said to have had a wrist fracture. She was placed in a right wrist cast. Sometime during this ordeal, she began to experience low back and sometimes midback pain, along with her persistent pain in the left ankle and of her right wrist. She went to see a neurologist in Cape Cod, on the mainland, and was seen on 09/19/02. An MRI scan study of her neck and of her right wrist were taken. She put back in her right wrist splint. She was told she had bulging discs in her neck and that she needed physical therapy.

She did not receive any physical therapy and left in the middle of October and returned to Michigan. Having driven to Michigan, her neck was much worse.

She was finally able to get here to South Florida and was finally seen by an orthopedist, who told her that he primarily worked with knees and he reportedly could not help her. Being very frustrated at the inability to get medical care and especially the physical therapy that was advised, she saw Dr. Rosomoff at the University of Miami, where he too felt she needed extensive physical therapy. To this date, this has not been possible. She has seen no other doctors since April and she remains with her symptom complex. Her only medications have been Ibuprofen.

Other then the flare-ups of her neck pain when she drove from Cape Cod to Michigan, and then from Michigan to Florida, where she transiently had increased neck discomfort, she has found that as long as she does not bike ride or do any other strenuous activity that her levels of pain are less severe.

Her symptoms are quite variable and tend to be dependent upon her level of activity; but she does have chronic posterior cervical neck pain, which when severe, causes her to develop her headaches that seem to initially be occipital and radiate anteriorly throughout her cranium. She will have periods of spasms of the mid thoracic spine, about the level of her bra line. She will have periods of low back pain, which when more severe will limit her bending and lifting activity. Her inactivity has resulted in an 18 pound weight gain over this past year. There has been no radicular pain in either her upper or lower extremities. She will, on occasion, awaken at night with her arms and hands numb. She has to move them quickly and as she does so, the feelings return. There have been no arm or hand paresthesias that occur during the day.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Three

She has not had any shocks of pain or paresthesias in relationship
to her head and neck movements.  Her lower extremities are without
pain.  Her mild gait disturbance, related to her
Charcot-Marie-Tooth disease and the multiple surgeries that she has
had on her feet, do tend to cause some mild gait disturbance but
basically are unchanged from that prior to her injury on 07/05/02.

Although there have been headaches associated with her episodes of
severe neck pain, she feels that her overall thinking, her memory,
her ability to concentrate, to speak, read, write and understand
have been unaffected.  She has been aware that she has lost the
sense of smell and taste since the accident of 07/05/02.  She
denies symptoms of any visual disturbance, such as diplopia,
blurring or scintillating scotomas.  There has been no vertigo, no
lightheadedness, tinnitus, nor hearing loss.  Her speech and
swallowing have been unaffected.

She has never been involved in any prior accidents, no prior head
injuries.  She reports that her only other history includes that of
six foot surgeries, five on the left and one on her right foot,
done when she was at the ages of 15 to 20.  She otherwise feels
that she is in excellent health.  There is no history of syncope or
seizures.  She works in real-estate and goes to Nantucket, where
she writes.

There is a familial history of two members of her family that have
Charcot-Marie-Tooth disease.

### REVIEW OF PROVIDED MEDICAL RECORDS:

o   07/05/02 - Emergency room, Nantucket Cottage Hospital, where
the patient is recorded to have been struck on the back of her neck
by a sailboat boom, some 30 minutes ago.  She was said to have been
in and out of consciousness for 10 minutes.  She was awake and
oriented during EMS transport.  She complained of pain in her neck
and had no other injuries.  She had a known neurological problem
involving her feet.  She was said to be alert and anxious.  The
left side of her neck muscles were tender.  She was removed from
the board and her collar.  Her neck exam was said to have been
normal.  She remained alert times 3.

According to another emergency room note, she had been struck by
the boom of a sailboat.  She had loss of consciousness for 10 to 15
seconds.  She remembered the events of the accident.  A head CT
scan was performed.  She had been struck on the occiput by the
sailboat boom.  There was no abnormality identified.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Four

REVIEW OF PROVIDED MEDICAL RECORDS: (continued ......)

o   07/05/02 - Emergency room, Nantucket Cottage Hospital
    (continued)....

She had an x-ray of her cervical spine.  There was loss of normal
lordosis.  A 2mm anterolisthesis of C4 on C5 disc spaces, etcetera,
were well observed.  The impression was a 2mm anterolisthesis of C4
on C5, with no fracture identified.  She was to be discharged, to
apply ice and to use Percocet for pain.  She was discharged with a
diagnosis of neck contusion.

o   08/08/02 - Emergency room visit in Nantucket Cottage Hospital.
She reportedly presented with pain in her left foot and ankle,
which occurred just prior to her arrival.  She twisted this on the
sand and heard a pop and had pain in the ankle, which was
moderately severe.  She could not bear weight.  She had swelling of
the lateral aspect of the left ankle.  She was put in an air cast
and provided crutches.  She refused the need for pain medicine.
One other note indicated that she had slipped on the sand and felt
a snap in her left ankle and heel with swelling.  She complained of
numbness of her left foot and pain under her left heel.  An x-ray
of her left foot showed evidence of bony fusion of the first digit
interphalangeal joint.  Hallux valgus, metatarsus adductus was
present.  There was no displaced fracture seen.  X-ray of the left
ankle showed no displaced fracture.  After the air cast and
crutches were given, she was allowed to be discharged.

o   08/28/02 - Emergency room record, Nantucket Cottage Hospital.
Patient presented with pain in her right wrist.  She gave a history
of having fallen 3 weeks earlier and sustained an ankle sprain.
Over the past 10 days, she complained of pain in the wrist,
secondary to that fall.  An x-ray of the right wrist was read as
showing a small fracture involving the ulnar styloid process.  Soft
tissue swelling was seen.  The joint space was intact, etcetera.
The impression was an ulnar styloid fracture.  The patient was
placed in a cock-up wrist splint and was allowed to be discharged.

o 09/18/02 - At the Ackland Sports Medicine, Inc. in Hyannis
Massachusetts.  The patient was seen by Michael K. Ackland, M.D.
As dictated by Mark Colucci, PA-C, where they reported her
accident.  Subsequent to that time, she had continued to have pain
along her cervical spine, which had now gone into her lower back.
She gave a history that on 08/08/02, she slipped and injured her
left ankle and right wrist and at the Nantucket Cottage Hospital,
was told she had an ankle sprain.  She had been getting around on
the air cast boot with crutches, then began to develop a lot of
pain in her right wrist.  Back at Nantucket Cottage Hospital, an
x-ray of the wrist was said to show a fractured styloid process and
she was placed in a Velcro wrist splint.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Five

REVIEW OF PROVIDED MEDICAL RECORDS: (continued ......)

o 09/18/02 - Ackland Sports Medicine, Inc. (continued)....
At the same time she came out of the air cast boot, as she was
unable to get around in it. Since that time, she continued to have
her right wrist pain. Her ankle was still bothering her on a
regular basis, as well as still having neck and back pain. Her
current medication included 1000mg of Ibuprofen daily. On exam she
had right wrist pain with flexion and extension against resistance.
She also had pain with resistance to supination and pronation. She
located this pain along the distal ulna. She had tenderness along
the lateral aspect of the wrist, as well. She had some swelling
involving the left ankle, with pain to palpation. She had no pain
with movement of the ankle. She did have a pes cavus deformity.
There was some pain along the plantar fascia with palpation. On
cervical spine exam she had decreased range of motion on left
lateral rotation and tilt. There was some notable crepitus, as
well. She had some pain over the paralumbar musculature and had
pain with forward flexion. There was absent deep tendon reflexes.

X-rays, as viewed from Nantucket Cottage Hospital showed a
fractured styloid of the right wrist. They took x-rays on that
exam, which showed some healing. The fracture site had not
changed. The styloid was slightly angulated, with both films.
X-rays from Nantucket Cottage Hospital of the cervical spine,
showed some loss of normal lordotic curve, with some angulation
along C5 and C6. X-rays of the left ankle were negative. The
impression was: 1) right wrist styloid fracture; 2) cervical
spine and lower back pain and 3) ankle sprain. At that point, they
felt she should have an MRI scan study of her cervical spine and to
keep the right wrist in a splint, to begin physical therapy for her
ankle, and she was to wear a soft Neoprene brace, as well.

o   09/21/02 - An MRI scan study of the cervical spine was
obtained. The conclusion was a small right paracentral disc
protrusion at the C5-6 level. Minimal effacement of the thecal
sac, but no significant mass effect on the cord or canal. Tiny
protrusion centrally at C6-7. Normal canal. Normal spinal cord
morphology.

o   10/16/02 - An MRI scan study of the right wrist was read as
showing: 1) deformity of the distal radius, suggesting an old
healed colles fracture with associated ununited, slightly medially
displaced fracture through the distal ulnar styloid; 2) possible
slight widening of the scapholunate distance, suggesting a possible
injury of the scapholunate ligament. Correlation with stress
x-rays with the wrist in ulnar and radial deviation was recommended
to assess for dorsal intercalated segmental instability; 3)
probable ulnar collateral ligament injury; 4) extensor carpi
ulnaris tendonopathy.

Continued......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Six

**REVIEW OF PROVIDED MEDICAL RECORDS:**  (continued ......)

o   12/06/02 - Consultation with Alfred A. DeSimone, M.D./Matthew
Dovie, PA-C, where she presented with neck, back, right wrist and
left ankle pain.  They reported again, the history of her present
illness, but reported that there was a questionable initial loss of
consciousness.  She reported the injury of her left wrist and her
left ankle.  The MRI scan study had been done.  Her right wrist
bothered her with grasping, lifting and reaching.  It would
occasionally swell.  She noted ankle pain with walking.  She
continued to have neck and back pain, with headaches, stiffness and
spasms.  Physical exam revealed positive bilateral paracervical
spasm and tenderness.  Positive bilateral trapezius spasm and
tenderness.  Mild restriction to lateral side bending.  There was
positive bilateral paralumbar spasm and tenderness.  Positive
bilateral upper gluteal spasm and tenderness.  Negative straight
leg raising.  Exam of the wrist showed positive TFCC tenderness.
Mild restriction to plantar flexion.  X-rays of the right wrist
showed questionable old non-union of the ulnar styloid.  MRI of the
right wrist showed an old healed Colles' fracture with non-united,
slightly medially displaced fracture of the distal ulnar styloid
and a widened scapholunate interval.  Assessment was:  1) post
traumatic cervicalgia/lumbago;  2) ankle pain, deferred to Dr.
Sheinberg;  3) post traumatic right wrist pain, question acute or
chronic injury, deferred to Dr. Gellman.  He was to send her for
an MRI scan study of her lumbar spine.  She was to be referred to
Dr. Bodner for evaluation of her cervical and lumbar spine.

o   04/09/03 - Neurosurgical consultation with Herbert Rosomoff,
M.D., in which her chief complaint was that of neck pain.  She
related the accident of 07/05/02, where he reported her being
unconscious for 20 minutes and when she awakened, she could not
talk or move her legs or arms.  She did recover and was told she
had a cerebral concussion but, in fact, because she sustained a
loss of smell, which had persisted, he felt she had a closed head
injury, cerebral contusion.  He reported her fall, her injury to
the right wrist and left ankle.  Her MRI scan study, her gain of
weight, her taking of Ibuprofen, her ability to return to work in
January of 2003, but limited.  Her general neurological examination
revealed she had difficulty with heel and toe walking.  Her
coordination and equilibrium were impaired in both lower
extremities but her motor system was intact.  Sensory showed
absence of vibratory sense in the feet and hypesthesia through the
foot up into the lower one third of her leg.  Reflexes were absent
throughout.  Examination of the head and neck showed a slight
decrease in range of motion with tenderness over both bicipital
tendons and the right levator scapulae.  In the lumbar area, there
was a slight decrease range of motion without tender/trigger
points.  The hip rotators were tight.  she had pes cavum
bilaterally with the high arch.

Continued........

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Seven

REVIEW OF PROVIDED MEDICAL RECORDS:  (continued ......)

He reviewed the CT scan of the brain, said to be unremarkable.  She
had x-rays of the feet, showing high arches and a cervical spine
x-ray, which was unremarkable and the right wrist, which showed a
chipped fracture involving the right ulnar styloid.

The impression was that Ms. Evans had sustained an injury in which
she had a closed head injury with cerebral contusion and loss of
smell, which is likely permanent.  She further has myofacial
syndromes in both the cervical lumbar areas, which are competent
causes of her type of painful complaints.  She did not have any
signs of active nerve root, spinal cord compression or instability
and was felt to be a candidate for the pain and back rehabilitation
program, which could be managed on an outpatient basis.

REVIEW OF IMAGING STUDIES:

The studies were brought in by the patient, were reviewed and were
returned back to her.  The studies included:

o   07/05/02 - X-rays of the cervical spine showed straightening of
the cervical lordotic curve.

o   07/05/02 - A CT scan of the brain included bone and soft
structure exam, which were all within normal limits.

o   08/08/02 - An x-ray of the left ankle.

o   08/20/02 - An x-ray of the right wrist.

o 09/21/02 - An MRI scan study of the cervical spine included
multi-slice mid and parasagittal T1 and T2-weighted sequence, along
with T2 transaxial images, which showed mild disc bulging at C4-5,
C5-6 and C6-7, creating a slight ventral impression on the thecal
sac with no extension or involvement of the cervical spinal cord.
There was no evidence of transaxial images showing central cervical
canal stenosis or lateral extension into the nerve roots or neural
foramina.

o   10/16/02 - An MRI scan study of the right wrist.

PHYSICAL EXAMINATION:
GENERAL:  Well-developed, well-nourished, pleasant, and cooperative
patient who is in no acute distress.
VITAL SIGNS:  Blood pressure was 118/70 in the right and left arms.
Pulse was 80 and regular.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Eight

**PHYSICAL EXAMINATION**: (continued).......
**HEENT**: Her head was atraumatic and normocephalic.  She had no orbital nor cranial bruits.  Tympanic membranes and oral pharynx were benign.
**NECK**:  She had full mobility and range of motion movements of her neck, except for a questionable degree of mild limitation of full hyperextension but she did have full forward flexion, rotational and side to side flexion movements without limitation.  She had no tenderness in her posterior cervical paraspinal muscles nor was there spasm.  There was no tenderness in the cervical spinous process areas
**BACK/EXTREMITIES**:  but she had mild tenderness involving the upper thoracic paraspinal muscles but with no obvious spasm.  There was no tenderness involving the spinous processes or the paraspinal muscles of her lumbar spine.  She also had full side to side flexion, hyperextension, as well as forward flexion in her back.  Her straight leg raising was sitting and recumbent at 90 degrees without pain.  She had full thigh flexion onto the abdomen.  She also exhibited full shoulder shrugs and scapular abduction and adduction movements.  There is marked pes cavus deformity of her feet with marked high arches.  She had well-healed scars involving both of her feet and ankle areas.  There was no edema or tenderness.  She had movements and performed them without pain equally.  The only area of discomfort of the right wrist was immediately lateral to the distal thyroid area and she exhibited full wrist extension and flexion, as well as pronation and supination at the wrist level.
**VASCULAR STATUS**: Her peripheral pulses were all present and palpable.  She had no carotid or supraclavicular artery bruits.

**NEUROLOGICAL EXAMINATION**
**MENTAL STATUS**:  She is right-handed, alert, awake, and fully oriented with seemingly intact intellect and symbolic function.
**CRANIAL NERVES**:  Pupils were equal and reactive.  Discs and fundi were benign.  Extraocular eye movements were full.  There was no nystagmus.  Visual fields were full to finger counting.  There was no focal facial hypalgesia nor facial paresis.  Gag reflex was present.  Uvula was in the midline.  She had no tongue deviation or fasciculations.
**MOTOR**:  She exhibited no arm drift.  There was no focal motor weakness involving proximal and distal muscles of the upper extremities.  Of her lower extremities, she had mild limitation of dorsiflexion of her feet and atrophy of the foot muscles, but in reality her motor strength of the feet seemed intact.  There was no atrophy nor fasciculations involving her distal leg muscles.
**SENSORY**:  She had mild loss of vibratory but intact position sense in the feet with a mild stocking hypalgesia to pinprick and to light touch.
**COORDINATION**:  Rapid alternating and repetitive movements were performed without dysmetria or ataxia.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Nine

NEUROLOGICAL EXAMINATION: (continued).......
DEEP TENDON REFLEXES:  Absent throughout.  Her plantar responses
were none the less flexor.
GAIT:  She walked with a mild broad based component to her gait.
There was equal swing and she could perform the ability to get up
on her heels and on her tiptoes.  Her tandem was intact, as was her
Romberg.

IMPRESSION:  Subsequent the trauma to the neck and posterior head
area, on 07/05/02, the patient had prolonged loss of consciousness,
according to her history;  but at the Nantucket Cottage Hospital,
she had very brief loss of consciousness.  Her only subsequent
symptoms and findings are her historical loss of taste and smell,
which would indicate shearing  disruption of the olfactory
filaments of the olfactory nerve.

She has had persistent symptoms, consistent with variable sprain
and strain of the cervical, thoracic and lower back.  She had no
evidence of spinal cord injury or of cervical, lumbar or thoracic
radiculopathy.

She had mild Charcot-Marie-Tooth disease and inherited
polyneuropathy of mixed sensorimotor dysfunction to her feet.
This polyneuropathy was unaffected by the accident of 07/05/02, as
was the fall that occurred and the subsequent injury to her left
ankle and right wrist.

In response to the questions, as posed by Brian Morrissey.

1.  Ms. Evans sustained a cerebral contusion injury with disruption
    of the filaments of her olfactory nerves and thereby shearing
    the nerve filaments causing her the loss of smell and taste.
    She also sustained a cervical strain and sprain with subsequent
    muscular pains in the mid and lower lumbar areas of her back.

2.  She should have no permanent physical restrictions, as a result
    of the 07/05/02 accident.

3.  The patient's unrelated Charcot-Marie-Tooth disease with its
    mild peripheral neuropathy and deformity of her feet does and
    will have mild impairment of her gait.

4.  The patient's failure to receive therapy treatment has delayed
    her recovery of the cervical midthoracic and lumbar
    musculoskeletal involvement.

5.  I would agree with Dr. Rosomoff's conclusion that the patient
    has sustained a permanent loss of smell and taste.

Continued.......

INDEPENDENT MEDICAL EVALUATION

EVANS, JULIANNE
Chart #: 182269IME

Page Ten

6.  Recommendation for future treatment should include a course of
    physical therapy, which can be performed on an outpatient
    basis.

7.  Diagnosis is stated above.  Prognosis should be one of full
    recovery, except for her loss of smell and taste.


PAUL A. FLATEN, M.D.                 Signed in my absence
PAF:jlr                                 Without Review
T: 06/26/03                              to avoid delay

cc:   Marine Safety consultants, Inc.
      10 Mazzeo Drive
      Suite 217
      Randolph, MA 02368-3433

Attn:  Brian G. Morrissey

# EXHIBIT "B"

**Terence G. Kenneally**

| | |
|---|---|
| **From:** | BiteTheHook@aol.com |
| **Sent:** | Thursday, November 03, 2005 10:51 AM |
| **To:** | Terence G. Kenneally |
| **Cc:** | Sdm1059@aol.com |
| **Subject:** | Re: Evans vs. Nantucket Community Sailing et al. |

Terrence,

Sorry you aren't available to depose Ms. Evans tomorrow.  It
would have been helpful.  Good news, though.  I will make
her available to you in Boston any time next week, or the
week after.
Please look at your schedule and let me know which days are
best for you/Tom.

We have a call into Dr. Mann's office for dates to depose
him.  We'll let you know on that, hopefully later today.
I'd like to do his depo sometime the next couple of weeks,
as well, schedules permitting, and would like to firm that
up with you today or tomorrow, too.  His office needs to
check with him, but indicated that he may have time to
accomodate us.

We are in receipt of the returns of service from Ireland.  I
will try to email them to you today or bring copies
tomorrow.

Your proposed discovery/trial schedule is not acceptable.
Please consider a more advanced schedule or let me know why
you need so much time.  What discovery do you need other
than Ms. Evans' depo (I doubt you really need even that, but
we surely will make her available to you) that hasn't been
available to you for years?

Ms. Evans is not treating with any doctor for the permanent
loss of her senses of taste and smell.  We are not making a
claim for any other injury or loss.  You have all of her
medical records and have for eons.  You aren't going to be
deposing any of her doctors.  We are agreeable to
stipulating to the authenticity of the records, which I
assume you, too, do as a matter of course.  If I am wrong,

9/11/2006

let me know.

As far as mediation is concerned, I am a big proponent of alternative dispute resolution and have attended 80 hours of mediation training to become a certified mediator by the Florida Supreme Court.  The problem I see, though, with mediating this dispute is that our clients are so far apart that I do not see how we ever could come close enough to find common ground (your last word was that your research showed the value of the loss at something less than $100k, but would not share that research with me so I could show it to my client, who believes her loss is worth in excess of $1 million, which explains our current demand of policy limits.  i wouldn't expect your client to pay more than it thinks its exposure is, as I wouldn't expect my client to accept substantially less than what she feels it's worth. However, we do believe a jury will award something in excess of policy limits and will, therefore, be seeking an excess judgment against your carrier for its bad faith in not making a good faith settlement offer after receiving Dr. Mann's report, as we have discussed earlier).  Some cases just need to be tried.

Having said that, if your client is settlement minded I will recommend to my client that we participate in a mediation. I suggest we do that at the same time as her deposition, or right after.  We should have no trouble finding a suitable mediator (magistrate judge, even Judge Bowler would be ok, or private) on short notice.  Your carrier knows everything it needs to know to make the decision, so there is no reason to put it off if it sincerely desires a settlement.  Let me know today or tomorrow on that.

I will be attending tomorrow's status conference and understand Judge Bowler has moved it up to 10:00 a.m.  I look forward to seeing you then.

Best,

Jeff

# EXHIBIT "C"

Case 1:05-cv-10088-MBB    Document 61-4    Filed 09/18/2006    Page 2 of 5
Case 1:05-cv-10088-MBB    Document 57    Filed 08/31/2006    Page 1 of 4
Case 1:05-cv-10088-MBB    Document 27    Filed 11/04/2005    Page 1 of 4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO. 05-10088 MBB

JULIANNE MARIE EVANS,

    Plaintiff,

vs.                                                          **Status Report**

NANTUCKET COMMUNITY
SAILING, INC., a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA
KIELY,

    Defendants.

_____

Plaintiff files this status report in anticipation of tomorrow's status conference.

The Irish defendants have filed answers. The case is at issue and ready to be set for trial, which should take no more than 2 full trial days.

Plaintiff's counsel has received amended returns of service from Ireland and will file the originals with the court tomorrow.

The defendants have asked to depose the plaintiff. She is presently in the Boston area (visiting since this past Monday) and available to be deposed. We offered to make her available tomorrow, but that was inconvenient for the defendants. She is willing to stay on in Boston so that she can be deposed, and we have offered to make her available to the defendants any time the next two weeks (although the sooner the better is preferred). We are awaiting word from the defendants on that.

It is unlikely the defendants will need any further discovery to be ready for trial, in that the plaintiff's claim is limited to damages for the permanent and irreversible loss of her sense of  taste and smell, which diagnosis has been established by defendants' own expert, Dr. Norman Mann, from UConn's Taste and Smell Center.

Case 1:05-cv-10088-MBB    Document 61-4    Filed 09/18/2006    Page 3 of 5
Case 1:05-cv-10088-MBB    Document 57    Filed 08/31/2006    Page 2 of 4
Case 1:05-cv-10088-MBB    Document 27    Filed 11/04/2005    Page 2 of 4

Dr. Mann's deposition is in the process of being scheduled, and hopefully will take place sometime within the next 2 or 3 weeks, schedule's permitting. Dr. Mann has advised that he is available for deposition on November 10th, 11th or 15th at 11:00 a.m.

Plaintiff plans on calling only one live witness at trial, herself. She will offer Dr. Mann's testimony by deposition. Plaintiff has short taped statements (and transcripts) from the Irish defendants, copies of which have been provided to the defendants, and may offer them.

Plaintiff has provided all medical records to the defendant on multiple occasions and has answered all discovery requests. The case is simple, factually. Plaintiff took a ride on a sailboat, which was supposed to have been a leisurely sail that, unbeknownst to her, turned out to be a race between the 2 Irish defendants, both employees (sailing instructors) of the defendant, Nantucket Sailing Club. The boats nearly collided as they made their way to a "racing mark" and, in an effort to avoid colliding, the boom on one boat swung around, banging plaintiff in the head, the trauma causing her injuries. This case will not take long to try.

Defendants have suggested mediation. Plaintiff feels that there is not much chance of a settlement; however, is willing to have the case mediated by this court, any other magistrate judge or a private mediator. It is requested that mediation take place at or about the time plaintiff is deposed; either just before or right after. Defendants and their insurance carrier know all they need to know about the case to have evaluated its merits and settlement prospects. There is no need to force plaintiff back for mediation in the future.

Plaintiff requests that trial be set on the court's earliest trial docket, preferably in December, 2005, or soonest thereafter.

Respectfully submitted,

"/s/ Jeffrey A. Miller"

Jeffrey A. Miller, Esq.

Case 1:05-cv-10088-MBB   Document 61-4   Filed 09/18/2006   Page 4 of 5
Case 1:05-cv-10088-MBB   Document 57   Filed 08/31/2006   Page 4 of 4
Case 1:05-cv-10088-MBB   Document 27   Filed 11/04/2005   Page 4 of 4

"/s/ *Jeffrey A. Miller*"

Jeffrey A. Miller, Esq.
2424 North Federal Highway, Suite 314
Boca Raton, Florida 33431
Tel. 561.392.4300
Fax 561.347.7588
Florida Bar No. 308358

and

Steven D. Miller, Esq.
817 South University Dr., Suite 122
Plantation, Florida 33324
Tel. 954.472.0776
Fax 954.472.0875
Florida Bar No. 508187
Massachusetts Bar No. 560862.

and

Michael P. Ascher, Esq. (local counsel)
P.O. Box 667
Hampden, MA 01036
Tel   : 413.566.3878
Fax   : 413.566.3437
Massachusetts Bar No. 022695

Case 1:05-cv-10088-MBB    Document 61-4    Filed 09/18/2006    Page 5 of 5
Case 1:05-cv-10088-MBB    Document 57    Filed 08/31/2006    Page 3 of 4
Case 1:05-cv-10088-MBB    Document 27    Filed 11/04/2005    Page 3 of 4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent by
U.S. Mail and facsimile to Thomas J. Muzyka, Esq., One Washington Mall, Suite 1400
Boston, Massachusetts 02108 on November 3, 2005.

# EXHIBIT "D"

ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-10088 MBB

JULIANNE MARIE EVANS,

      Plaintiff

vs.

NANTUCKET COMMUNITY SAILING, INC.,
a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA KIELY,

      Defendants

DEPOSITION OF:   JULIANNE M. EVANS

CLINTON & MUZYKA

One Washington Mall

14th Floor

Boston, MA 02108

December 8, 2005

Virginia Dodge
Registered Professional Reporter

DUNN & GOUDREAU

6

```
 1    make the appropriate arrangements.

 2             MR. MUZYKA:  Steve, usually what we do up

 3         here is we have stipulations in the beginning

 4         concerning the deposition, which all objections

 5         are reserved and motions to strike are reserved

 6         to the time of trial except as to form.

 7             And as far as reading, signing the

 8         deposition, usually that's made by -- that's a

 9         determination made by the deponent or yourself

10         at the conclusion of the deposition.  Is that

11         okay with you?

12             MR. STEVEN MILLER:  Yes.

13             MR. MUZYKA:  Before we start the

14         deposition, you and I spoke earlier.  And I

15         just want to see if we can eliminate areas of

16         inquiry so that we can expedite the deposition.

17             In the past when I have spoken with Jeffrey

18         Miller and in court, he made representations

19         that the only claims that are being presented

20         in this litigation are for the loss of taste

21         and loss of smell, that there would be no other

22         personal injury claims made.  Can we stipulate

23         to that?

24             MR. STEVEN MILLER:  Yes.
```

DUNN & GOUDREAU

1        MR. MUZYKA:  Okay.  In addition to that,

2    Jeff has also agreed that there will be no

3    claims made here for loss of earning capacity,

4    either past or future.  Can we --

5        MR. STEVEN MILLER:  Yes.

6        MR. MUZYKA:  And lastly, with regard to

7    medical expenses, although we did not discuss

8    it specifically, we would be willing to limit

9    only those medical expenses that are related to

10   loss of smell and taste.  Is that satisfactory

11   to you?

12       MR. STEVEN MILLER:  Well, to the extent

13   that she has some medical bills from the

14   emergency room and doctors and initial

15   treatment and consultations following, but

16   nothing in the future with regards to anything

17   other than taste and smell.  That's correct.

18       MR. MUZYKA:  With regard to --

19       MR. STEVEN MILLER:  We've given you that

20   lien information, the Blue Cross stuff, Tom.

21   So it's not significant anyway.

22       MR. MUZYKA:  It isn't?

23       MR. STEVEN MILLER:  No.

24       MR. MUZYKA:  With regard to that then, I

1          will limit my examination with regard to just

2          the claim for loss of smell and taste.

3               MR. STEVEN MILLER:  That's fine.

4    Q.    (By Mr. Muzyka)  Ms. Evans, would you please state

5    your full name?

6    A.    Julianne Marie Evans.

7    Q.    And your residence?

8    A.    200 Jacaranda Drive.

9    Q.    Could you spell that, please?

10   A.    J-A-C-A-R-A-N-D-A.

11   Q.    And where is that located?

12   A.    It's in Plantation, Florida.

13   Q.    And how long have you been living there?

14   A.    Fourteen years.

15   Q.    Is that a house, or is it a condo, or is it an

16   apartment?

17   A.    It's a condo.

18   Q.    And do you own it?

19   A.    Yes.

20   Q.    Could you please give me your date of birth?

21   A.    ████████

22   Q.    And your Social Security number, please?

23   A.    ██████████.

24   Q.    Where were you born?

DUNN & GOUDREAU

1    Q.    (By Mr. Muzyka)    After going to UConn, have you been

2    treated by any doctor for loss of smell or loss of taste?

3    A.    No.

4    Q.    Other than having treated or having been examined by

5    Dr. Rosomoff in April of 2003, have you had anybody else

6    examine you other than Dr. Flaten for loss of taste or

7    loss of smell?

8    A.    I don't know -- when I saw Wagner, I don't know if I

9    told him about that or not, but I haven't actively sought

10    anybody except for UConn because originally, I was

11    supposed to go to UConn in March.    And they kept

12    cancelling, and I didn't get set up till the end of

13    October.

14         So when I was told originally I had to go there, I

15    was going there like the end of March.    And then they

16    changed it to June, and then June got changed to August,

17    and then August got changed to October.    So I never sought

18    anything because I figured I was going to UConn.

19    Q.    I understand that, but since -- let me make it

20    really simple.    Since July 15 of 2002, you've mentioned

21    that you've had a loss of taste or smell to various

22    doctors --

23    A.    Right.

24    Q.    -- but you never sought any treatment for it?

# EXHIBIT "E"

Deposition of Julieanne M. Evans

Errata Sheet

Instructions:  You are entitled to read and correct your deposition.  Please carefully read
your testimony and make any necessary changes or corrections to your deposition on this
errata sheet.  Identify those changes/corrections by page and line number, give the
correction/change desired and state the reason.  **Please do not mark the actual
transcript.**  After completing this procedure, date and sign the bottom of this page where
indicated as well as the witness signature page at the end of the transcript and return to
your lawyer or the court reporter, as instructed.

Page No.  Line No.

| Page No. | Line No. | | |
|---|---|---|---|
| COVER | 1 | Change | JULIEANNE  M.  EVANS |
| | | To | JULIANNE  M.  EVANS |
| | | Reason | SP |
| 15 | 22 | Change | STANKOSTANISLAVIC |
| | | To | S-T-A-N-K-O-S-T-A-N-I-S-A-V-L-J-E-V-I-C |
| | | Reason | Sp |
| 21 | 3 | Change | Dr Stanko's name |
| | | To | see above |
| | | Reason | SP |
| 36 | 5 | Change | Keaddy |
| | | To | Keaggy |
| | | Reason | Sp |
| 36 | 7 | Change | Keaddy |
| | | To | Keaggy |
| | | Reason | Sp |
| 55 | 13 | Change | Every doctor |
| | | To | Several doctors |
| | | Reason | Because I don't see the gynecologist - eye doctor, dentist, etc |
| 64 | 3 | Change | even smell perfume |
| | | To | even smell my perfume |
| | | Reason | Sometimes I think I smell perfume (that's unbearable to smell) |
| 70 | 8 | Change | X X 11 |
| | | To | |
| | | Reason | |
| 77 | 13 + 14 | Change | The whole line |
| | | To | That's a very good question. I ended a 30 year friendship over it = |
| | | Reason | Because that's not what I said & I remember how I answered that question |

Date:  1/20/06   Deponent's Signature:

Deposition of Julieanne M. Evans

Errata Sheet

Instructions: You are entitled to read and correct your deposition. Please carefully read your testimony and make any necessary changes or corrections to your deposition on this errata sheet. Identify those changes/corrections by page and line number, give the correction/change desired and state the reason. **Please do not mark the actual transcript.** After completing this procedure, date and sign the bottom of this page where indicated as well as the witness signature page at the end of the transcript and return to your lawyer or the court reporter, as instructed.

Page No.  Line No.

9<u>0</u>   13   Change   Garden
              To   Gardens
              Reason   It is incorrect

96   17   Change   "Kind of"
              To   omit & change to "I was sitting on."
              Reason

120   5   Change   put
              To   threw
              Reason   it didn't "put" me there & I don't think I would have said "put."

124   9   Change   I was try
              To   I was trying
              Reason

143   16   Change   Till today
              To   I said "From July 5th, 2002 till today."
              Reason   I remember specifically how I answered this question.

_____   _____   Change   _____
              To   _____
              Reason   _____

_____   _____   Change   _____
              To   _____
              Reason   _____

_____   _____   Change   _____
              To   _____
              Reason   _____

_____   _____   Change   _____
              To   _____
              Reason   _____

Date: _____   Deponent's Signature: _____