UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-10088-MBB

**JULIANNE MARIE EVANS**
    Plaintiff,

VS.

**NANTUCKET COMMUNITY SAILING, INC.,
RONAN O'SIOCHRU and DONNCHA KIELY**
    Defendants.

### DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENA OF DR. MICHAEL K. ACKLAND

Now come the defendants, Nantucket Community Sailing, Inc., Ronan O'Siochru, and Donncha Kiely, in the above captioned action, by and through their undersigned counsel, and file their Opposition to plaintiff's Motion to Quash Subpoena of Dr. Michael K. Ackland.

As grounds in support of their opposition, the defendants submit the following for the Court's consideration.

### BACKGROUND

On Tuesday, November 6, 2007, defense counsel prepared and issued a trial subpoena for service upon Michael K. Ackland, M.D. to compel his attendance at trial on Thursday, November 15, 2007 at 9:00 a.m. Service was perfected on Wednesday, November 7, 2007 at Dr. Ackland's office in Sandwich, Massachusetts. See ***Exhibit 'A'*** *attached hereto.*

In anticipation of Dr. Ackland's unwillingness to attend at trial due to the inconvenience of his traveling from Sandwich, Massachusetts to Boston, Massachusetts, defense counsel telephoned his office on Tuesday, November 6, 2007 to advise him of the necessity of his attendance and defense counsel's willingness to obtain his testimony by videotape deposition, if necessary.  Dr. Ackland was unavailable to speak with defense counsel on Tuesday, November 6, 2007 and therefore, defense counsel left a detailed message with Dr. Ackland's receptionist for a return telephone call.

On Wednesday, November 7, 2007, Dr. Ackland telephoned defense counsel and inquired about the necessity of his participation at trial.  Defense counsel explained that Dr. Ackland was not subpoenaed as a medical expert to provide opinions on the plaintiff's orthopedic treatment, but he was subpoenaed as a witness for the purposes of impeaching the plaintiff's prior testimony.  Defense counsel further explained to Dr. Ackland that we obtained the plaintiff's medical records since she previously executed a medical authorization form.  We also inquired whether Dr. Ackland ever spoke with the plaintiff concerning her alleged loss of taste and smell.  Defense counsel never informed Dr. Ackland that we represented the plaintiff in anyway.

Upon learning that defense counsel would require his attendance at trial and he would not be compensated for his time at an hourly rate, Dr. Ackland became upset.  Dr. Ackland stated that if he was compelled to attend at trial he would be a difficult witness.  He also asked if the telephone conversation was being recorded.  He further requested plaintiff's counsel's telephone number, which defense counsel provided to him.  Immediately thereafter, Dr. Ackland terminated his telephone call with defense counsel.

Within an hour of Dr. Ackland's telephone call, plaintiff's counsel telephoned defense counsel to confer about the telephone conversation with Dr. Ackland.  In sum, defense counsel summarized the information detailed herein and advised plaintiff's counsel that if he wished to bring these issues before the Court to file a motion.

### ARGUMENT

The defendants' subpoena served upon Dr. Ackland requires him to appear at trial.  If and to the extent the plaintiff is seeking to quash the defendants' subpoena because the subpoena requires Dr. Ackland to appear at trial this Honorable Court should properly deny her motion. ***Alper v. U.S.***, 190 F.R.D. 281, 283 (D. Mass. 2000).  The

defendants have the right to command that Dr. Ackland appear at trial for any reason. *Id. citing to **Fed.R.Civ.P. 45**.*

The defendants' subpoena also commands that Dr. Ackland produce "[a]ny and all medical notes, records, correspondence and other documents relating to services provided to the plaintiff." See **Exhibit 'A'**. Subpoenas issued pursuant to Fed.R.Civ.P. 45 are utilized to obtain documents from non-parties. See **Hasbro, Inc. v. Serafino**, 168 F.R.D. 99, 100 (D. Mass 1996). **Moore's Federal Practice**, citing the text of Fed.R.Civ.P. 45, states that it "may be used to subpoena any person--party or nonparty--to produce books, documents, or tangible things at the trial." **James Wm. Moore et al.**, **7 Moore's Federal Practice** § 34.02[5][c] (3d ed.1997); *See also* **9 Moore's Federal Practice** § 45.03[1] (noting that "[s]ubpoenas under Rule 45 may be issued to parties or non-parties). Accordingly, Fed.R.Civ.P. 45 permits the defendants to command Dr. Ackland produce "[a]ny and all medical notes, records, correspondence and other documents relating to services provided to the plaintiff" at trial on Thursday, November 15, 2007.

Finally, defense counsel reiterates that contacting Dr. Ackland before the service of the subpoena was an attempt to assuage any anxieties that he may have upon his receipt of

the trial subpoena.  In no way was defense counsel attempting to obtain expert opinions nor did defense counsel request opinions from Dr. Ackland since the plaintiff's orthopedic injuries and treatment are not issues in this case.

Further, the plaintiff did not identify Dr. Ackland as a medical expert for trial as required under Fed.R.Civ.P. 26.  Dr. Ackland is a material witness concerning the plaintiff's reports of her alleged sensory deficiencies as testified by her at her deposition.  *See* **Exhibit 'B'** *attached hereto.*  The defendants are calling Dr. Ackland to impeach the plaintiff's credibility.  Dr. Ackland's testimony will be probative of the central issue in this case, the plaintiff's alleged loss of taste and smell, and his testimony will not be unfairly prejudicial to plaintiff, confuse the issues before this Court or be needlessly cumulative.

**WHEREFORE**, the defendants pray that the plaintiff's Motion to Quash Subpoena of Dr. Michael K. Ackland be denied whereby this Honorable Court issues an Order requiring that Michael K. Ackland, M.D. attend the trial on November 15 2005 and produce "[a]ny and all medical notes, records, correspondence and other documents relating to services provided to the plaintiff."

>Respectfully submitted
>by their attorneys,
>**CLINTON & MUZYKA, P.C.,**
>
>
>"/s/Thomas J. Muzyka"
>**Thomas J. Muzyka**
>**BBO NO. 365540**
>**Terence G. Kenneally**
>**BBO NO. 642124**
>One Washington Mall
>Suite 1400
>Boston, MA 02108
>617-723-9165

Dated: November 8, 2007

# EXHIBIT A

Case 1:05-cv-10088-MBB    Document 78-2    Filed 11/08/2007    Page 1 of 3

A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON

RECEIVED

AO88 (Rev. 1/94) Subpoena in a Civil Case

NOV 0 8 2007

## Issued by the
## UNITED STATES DISTRICT COURT

FOR THE   DISTRICT OF   MASSACHUSETTS CLINTON & MUZYKA P.C.

JULIANNE MARIE EVANS

V.

NANTUCKET COMMUNITY SAILING, INC.

SUBPOENA IN A CIVIL CASE

Case Number: 05-10088-MBB

TO: Michael Kingsley Ackland, M.D.
449 Route 130, Suite 8
Sandwich, MA 02563

☒ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | U.S. District Courthouse<br>J. J. Moakley U.S. Courthouse<br>1 Courthouse Way<br>Boston, MA 02210 | COURTROOM 25<br>Floor 7 w/Magistrate Judge Bowler |
|---|---|---|
| | | DATE AND TIME<br>Thursday, November 15, 2007<br>at 9:00 a.m. |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): Any and all medical notes, records, correspondence and other documents relating to the services provided to plaintiff, Julianne Marie Evans, 200 Jacaranda Drive, Plantation, FL; DOB: October 23, 1962; SSN: 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

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Defendant<br>Thomas J. Muzyka | DATE<br>November 6, 2006 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
CLINTON & MUZYKA, P.C., One Washington Mall, Suite 1400, Boston, MA 02108
(617) 723-9165

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

NOVEMBER 7, 2007

## RETURN OF SERVICE

*I this day summoned the within named* MICHAEL KINGSLEY ACKLAND MD

*to appear as within directed by delivering to*   SHANNON BAILEY-GATES, RECEPTIONIST, 10:55 AM

**X**   *in hand*
  *leaving at last and usual place of abode, to wit:*

*No.*   449 ROUTE 130, SUITE 8
*in the*  SANDWICH   *District of said*  BARNSTABLE   *County an attested copy of the subpoena together with*   $ 82   *fees for attendance and travel*

| | | |
|---|---|---|
| *Service and travel* | 28 | *it being necessary I actually used a motor vehicle in the distance of* 75 *miles in the service of this process* |
| *Paid Witness* | 82 | |

*John Rymaszewski*
Process Server

# EXHIBIT B

ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 05-10088 MBB

JULIANNE MARIE EVANS,

      Plaintiff

vs.

NANTUCKET COMMUNITY SAILING, INC.,
a Massachusetts corporation,
RONAN O'SIOCHRU and DONNCHA KIELY,

      Defendants

DEPOSITION OF:   JULIANNE M. EVANS

CLINTON & MUZYKA

One Washington Mall

14th Floor

Boston, MA 02108

December 8, 2005

Virginia Dodge
Registered Professional Reporter

DUNN & GOUDREAU

APPEARANCES:

Representing the Plaintiff **(Via Telephone)**:

    LAW OFFICE OF STEVEN D. MILLER
    817 South University Drive
    Suite 122
    Plantation, FL 33324
    BY:  STEVEN D. MILLER, ESQ.
    (954) 472-0776

    and

    LAW OFFICE OF JEFFREY A. MILLER
    2424 North Federal Highway
    Suite 314
    Boca Raton, FL 33431
    BY:  JEFFREY A. MILLER, ESQ.
    (561) 392-4300


Representing the Defendants:

    CLINTON & MUZYKA
    One Washington Mall
    14th Floor
    Boston, MA 02108
    BY:  THOMAS J. MUZYKA, ESQ.
         TERENCE G. KENNEALLY, ESQ.
    (617) 723-9165

1  really hurt me here.  It really hurt.
2  Q.    Were you going through physical therapy at all
3  during that month of time --
4  A.    No.  No.  Because I wanted to go home.  I wanted to
5  head home.  So -- they wanted me to go through a six-week
6  physical therapy program, Ackland did, but I didn't want
7  to stay there six more weeks.  I wanted to leave and go
8  back to Florida.
9  Q.    Did you -- you mentioned in your deposition earlier
10 today that the first person you told about your loss of
11 smell or your loss of taste who was a medical professional
12 was Dr. Ackland; is that correct?
13 A.    Correct.
14 Q.    Was that the first time you met him or the second
15 time?
16 A.    No.  That was the first time I ever met him.
17 Q.    And that was in October of 2002?
18 A.    To tell you the truth, I don't -- I think I met him
19 on a separate day than I met the PA.  I don't think it was
20 the same day, but maybe it was.  I don't remember.
21 Q.    Did you complain to him about the loss of taste and
22 loss of smell?
23 A.    Yes.
24 Q.    What did you say to him?

```
 1  A.    I said, "By the way, I can't taste anything.  I
 2  can't smell anything.  When am I getting it back?"
 3        And he goes, "How long has it been?"
 4        I says, "July 5."
 5        And he goes, "It's never coming back."
 6        I said, "What do you mean it's never coming back?"
 7  I said, "There's this kid on the island, and," I said, "he
 8  told me that it's common in head injury."
 9        He said, "Yeah.  It's very common in a head injury
10  to loss your taste and smell."
11        And I said, "He said it will come back."
12        And he goes, "Never coming back."
13        I said, "In like never ever?"
14        And he said, "No.  Never coming back."
15  Q.    Now, Dr. Ackland is an orthopedic man?
16  A.    Yes.  Orthopedic surgeon.
17  Q.    When you heard this from him, did you call up any
18  neurologist or call your primary care physician to see a
19  neurologist immediately?
20  A.    I would have to say no.  At the time, I didn't
21  realize the ramifications of it.
22  Q.    What were the ramifications that you didn't realize
23  at the time that Dr. Ackland told you that?
24  A.    That I'd never -- for some reason, I just thought it
```

```
1   would come back.  I didn't realize what it would be like
2   not to smell a baby, not to smell Christmas trees, not to
3   smell food.  Not to -- I didn't realize what it would be
4   like.  All I knew is I didn't smell my dog's poop when I
5   picked it up.
6   Q.   You left -- how many times did you see Dr. Ackland
7   while you were in Cape Cod?
8   A.   I believe I only saw him twice.
9   Q.   And you saw another doctor at the Cape Cod Rehab
10  Center that Dr. Ackland referred you to; is that correct?
11  A.   I'm not sure if that's what it's called, where he
12  works.  I know it was connected to Ackland, and it was
13  Monighetti or Manighetti, something like that.
14  Q.   How many times did you see him?
15  A.   Once.
16  Q.   Did you ever complain to him about your loss of
17  smell?
18  A.   No.  I was there for my back.
19  Q.   You left the Cape area on October 16; is that
20  correct?
21  A.   Yes.
22  Q.   Now, when you left the Cape on October 16, you still
23  had pain in your neck?
24  A.   Yeah.
```